**United States District Court**
For the Northern District of California

1
2
3
4
5                      UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8    TASION COMMUNICATIONS, INC.,              No. C-13-1803 EMC

9                Plaintiff,
                                              **ORDER GRANTING IN PART AND**
10         v.                                 **DENYING IN PART DEFENDANT'S**
                                              **MOTION TO DISMISS**
11   UBIQUITI NETWORKS, INC.,
                                              **(Docket No. 10)**
12               Defendant.
     _____/
13

14

15                          **I.    INTRODUCTION**

16         Pending before the Court is Defendant's motion to dismiss the complaint for failure to state a

17   claim.  In this case, Plaintiff brings claims for negligence and negligent misrepresentation on behalf

18   of a putative class of all persons who purchased Defendant's TOUGHCable, a shielded ethernet

19   cable advertized as being appropriate for use in harsh outdoor conditions.  Plaintiff alleges that the

20   TOUGHCable was in fact unsuitable for such use, and that it broke down under outdoor conditions.

21   Defendant brings this motion to dismiss, arguing (1) that Plaintiff's negligence and negligent

22   misrepresentation claims fail because Plaintiff has not alleged non-economic damages, as is required

23   under California law; and (2) the complaint must be dismissed because California does not have a

24   substantial interest in this action.

25                  **II.    FACTUAL & PROCEDURAL BACKGROUND**

26         Plaintiff is a Canadian corporation that offers high speed internet connectivity for business

27   and residential subscribers in locations around the world, including Panama and Canada.  Compl. ¶

28   20.  Defendant is a communications technology company headquartered in San Jose, California that

**United States District Court**

For the Northern District of California

1   designs, manufactures, and sells broadband wireless products, including high performance radios,

2   antennas, software, and programming tools to manage the hardware.  Compl. ¶ 1, 21.  Many of these

3   products are designed to permit companies to provide high speed wireless connections to customers

4   in difficult to serve locations, such as mountainous regions, rural areas, islands, and underdeveloped

5   locations.  *Id.*  In late 2010, Defendant announced a new shielded cable product, called

6   TOUGHCable, which was designed to provide wire connections necessary for the installation of its

7   radio transceiver equipment.  Compl. ¶ 2.  Defendant heavily promoted this cable to its customers,

8   and represented that it was "built to perform even in the harshest weather and environments" and

9   that it was appropriate for outdoor use in even "the most brutal environments."  Compl. ¶ 4.

10         Plaintiff alleges that these representations were false, and that TOUGHCable was "entirely

11   unsuited for any outdoor use whatsoever."  Compl. ¶¶ 5-6.  Due to defective manufacturing,

12   TOUGHCable's outer shielding would begin to corrode, crack, and split within a year, and

13   sometimes within months of installation.  Compl. ¶ 7.  Plaintiff alleges on information and belief

14   that the source of the defect was a lack of ultraviolet protection in the cable's coating.  Compl. ¶ 36.

15   When the cable's outer coating would crack and split, the cable would wick up water from the

16   outside, drawing it into the cable, and providing a channel for the water to flow into sensitive and

17   delicate radio equipment, often destroying the equipment.  Compl. ¶ 7, 36.  Plaintiff alleges that

18   because of this defect in TOUGHCable, its use "poses an unreasonable and completely foreseeable

19   risk of harm to the expensive radio transceiver equipment it is connected to."  Compl. ¶ 11.

20         Plaintiff brings a putative class action on behalf of all persons and entities that purchased

21   TOUGHCable and sustained a loss or damage as a result of the defective nature of the product.

22   Compl. ¶ 13.  The complaint alleges that Defendant's customers

23             have been forced to expend significant sums of money on an item that
                never should have cost them anything beyond the initial investment,

24             and will be forced to expend additional sums in the future, until all of
                the defective Ubiquiti TOUGHCable has been replaced.

25

26   Compl. ¶ 12.  Plaintiff alleges that between May 2012 and March 2012, at least 48 of its customers

27   lost internet service because of problems with defective TOUGHCable.  Compl. ¶ 60.  It appears that

28   all such damage occurred at various locations in Panama.  Compl. ¶ 68.  Six radios were destroyed

by water wicked through corroded TOUGHCable; though the complaint does not specify who owned the radios, it does state that they all "had to be replaced at [Plaintiff's] cost." *Id.* Plaintiff alleges that it has thus far expended 204 hours of employee time fixing the damage caused by TOUGHCable and replacing defective cable, and an additional 429 employee hours traveling to the often remote customer locations to perform such work. Compl. ¶¶ 61-62. Plaintiff has lost customers, and expended additional employee hours re-wiring its own broadcast towers, which had used TOUGHCable. Compl. ¶¶ 63-65.

Defendant at no point issued a recall of the TOUGHCable, but did allow purchasers to request replacements for the defective cable at no cost. Compl. ¶ 67. Even though Defendant did not charge for the shipment of new, non-defective cable, however, Plaintiff had to incur expenses in connection with this shipment, such as shipping costs and customs duties. Compl. ¶ 68. Defendant has not offered or agreed to pay for damage caused by the defective cable, the cost of replacing the cable, or other consequential damages incurred by Plaintiff as a result of the installation of the defective TOUGHCable. Compl. ¶ 69.

Plaintiff brings a claim of negligence against Defendant, alleging that Defendant breached its duty to exercise reasonable care in the formulation, testing, design, manufacturing, production, marketing, and distribution of TOUGHCable. Compl. ¶¶ 97-112. The complaint alleges that as a result of such negligence, Plaintiff and members of the putative class suffered damages "in the form of purchasing defective TOUGHCable, installing the TOUGHCable, repairing damages caused by the TOUGHCable, addressing the costs of removing and replacing the TOUGHCable, including replacement costs, transportation costs, import duties, worker and employee hours, travel time, and lost business due to equipment failures." Compl. ¶ 113.

Plaintiff additionally brings a claim for negligent misrepresentation, alleging that Defendant had no reasonable grounds for believing its representations regarding the suitability of TOUGHCable for use in extreme outdoor environments to be true, or in the alternative that Defendant failed to ascertain if the representations were true before making them. Compl. ¶¶ 115-118. Plaintiff alleges that Defendant thus breached its duty to use reasonable care in preparing and ensuring the accuracy of information about TOUGHCable for use in advertisements and marketing

1   materials.  Compl. ¶ 120-25.  As a result of this breach, Plaintiff relied on Defendant's

2   representations, purchased TOUGHCable, and suffered the damages identified above.  Compl. ¶¶

3   127-29.

4          In its motion, Defendant represents that it has already fulfilled its obligations under the

5   TOUGHCable warranty by replacing the product, and that the one-year warranty has already

6   expired.  Docket No. 10 at 3.  Plaintiff does not dispute this fact.

7                              **III.   <u>DISCUSSION</u>**

8          Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon

9   which relief may be granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6)

10  challenges the legal sufficiency of the claims alleged.  *See Parks Sch. Of Bus. Symington*, 51 F.3d

11  1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of

12  material fact as true and construe them in the light most favorable to the nonmoving party, although

13  "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6)

14  dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not

15  contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

16  plausible on its face.'" *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content

17  that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

18  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S.

19  544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

20  more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting

21  *Twombly*, 550 U.S. at 556).

22  A.      <u>Application of Economic Loss Rule to Negligence Claim</u>

23         Defendant argues that Plaintiff's negligence claim is barred by the economic loss rule.  The

24  California Supreme Court has recognized that "[t]he economic loss rule requires a purchaser to

25  recover in contract for purely economic loss due to disappointed expectations, unless he can

26  demonstrate harm above and beyond a broken contractual promise."  *Robinson Helicopter Co., Inc.*

27  *v. Dana Corp*., 34 Cal. 4th 979, 988 (2004); *In re iPhone Application Litig*., 844 F. Supp. 2d 1040,

28  1064 (N.D. Cal. 2012) ("Purely economic damages to a plaintiff which stem from disappointed

United States District Court

For the Northern District of California

1  expectations from a commercial transaction must be addressed through contract law; negligence is

2  not a viable cause of action for such claims.").  "Economic loss consists of damages for inadequate

3  value, costs of repair and replacement of the defective product or consequent loss of profits –

4  without any claim of personal injury or damages to other property."  *Id.* (internal citations omitted).

5  The purpose of the rule is to prevent "the law of contract and the law of tort from dissolving one into

6  the other."  *Id.*  Thus, a plaintiff may recover in tort only where he or she can allege personal injury

7  or "damage to 'other property,' that is, property *other than the product itself.*"  *Jimenez v. Superior*

8  *Court*, 29 Cal. 4th 473, 483 (2002) (emphasis in original).  In *Jimenez*, for example, the Court held

9  that the economic loss rule did not bar recovery in tort for damage that a defective window caused to

10  other parts of the home in which it was installed.  *Id.* at 484.

11          The California Supreme Court has explained the rationale for the economic loss rule:

12              The distinction that the law has drawn between tort recovery for
               physical injuries and warranty recovery for economic loss is not
13              arbitrary and does not rest on the 'luck' of one plaintiff in having an
               accident causing physical injury.  The distinction rests, rather, on an
14              understanding of the nature of the responsibility a manufacturer must
               undertake in distributing his products.  We concluded that the nature
15              of this responsibility meant that a manufacturer could appropriately be
               held liable for physical injuries (including both personal injury and
16              damage to property other than the product itself), regardless of the
               terms of any warranty.  But the manufacturer could not be held liable
17              for the level of performance of his products in the consumer's business
               unless he agrees that the product was designed to meet the consumer's
18              demands.

19  *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482, 58 P.3d 450, 455-56 (2002) (internal citations and

20  alterations omitted) (quoting *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)).  *See also Robinson*

21  *Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 997 (2004) ("The function of the economic loss

22  rule is to prevent tort law from shifting back to sellers a specific risk that better rests with buyers –

23  the risk that a product will not perform to a particular level beyond that warranted by the seller.  If a

24  buyer desires protection against this risk, she can and should negotiate for a higher warranty or seek

25  it out from other sellers in the marketplace.") (Werdegar, J., dissenting) (citing *Seely*, 63 Cal. 2d at

26  18-19).  Consumers can thus protect themselves from economic losses by negotiating the terms of

27  the contract, including any warranties about the product's performance.  They are not, however,

28

United States District Court

For the Northern District of California

1    expected to anticipate and allocate liability with respect to the possibility that the product may cause

2    physical injury or damage to property other than the product itself.

3         Plaintiff argues that it has sufficiently alleged non-economic damages in that it has alleged

4    damages to six radios that shorted out when water was wicked through the TOUGHCable attaching

5    them to other equipment.  Compl. ¶ 60.  Defendant offers several arguments as to why this allegation

6    is not sufficient to allow Plaintiff's negligence claim to go forward.

7         1.    Plaintiff Did Not Own Radios

8         First, Defendant argues that there is no allegation that Plaintiff actually owned the radios in

9    question.  Defendant argues that Plaintiff can get around the economic loss rule only by alleging

10   damage to property that Plaintiff itself owned.  Def.'s Reply at 2-3.  It is true that the complaint is

11   vague about the ownership of the radios.  Compl. ¶ 60.  At the hearing on this motion, however,

12   Plaintiff clarified that it did in fact own the radios, which were apparently leased to customers for

13   the duration of their contract with Plaintiff.

14        In any case, even if it were assumed the radios belonged to third parties, none of the cases

15   Defendant cites support its argument, and two of the cases actually suggest that a plaintiff may assert

16   non-economic damages sufficient to support a tort claim based on damage to a third-party's property

17   where the plaintiff has some responsibility for and has incurred the expense of remediating the

18   property damage.  In *KB Home v. Superior Court*, for example, the plaintiff was a company that had

19   built homes that were equipped with defective furnaces manufactured by the defendant.  112 Cal.

20   App. 4th 1076, 1081 (2003).  Though the plaintiff had subsequently sold the homes, when it became

21   aware of safety defects in the furnaces' emissions control component, it initiated a program to

22   identify and inspect homes it had sold with the affected furnaces.  *Id.* at 1081.  The plaintiff

23   ultimately spent over $3 million in replacing defective or damaged furnaces.  *Id.*  The plaintiff then

24   brought suit against the furnace's manufacturer alleging a variety of claims, including tort claims for

25   negligence and strict liability.  *Id.*  Though the main concern in this case was whether there was the

26   damage to "other property" necessary to avoid the application of the economic loss rule, nothing in

27

28

United States District Court

For the Northern District of California

this case indicates that the fact that the plaintiff no longer owned the homes at the time the damage occurred was a bar to recovery.[1] *Id.* at 1084-87.

Similarly, in *Transwestern Pipeline Co. v. Monsanto Co.*, the court found negligence claims were not barred by the economic loss rule, even though the plaintiff in that case was alleging damage to property it did not own. 46 Cal. App. 4th 502 (1996). The plaintiff there was in the business of transporting natural gas from Texas and Oklahoma to California, where its pipes connected with pipes owned by a third party gas company. *Id.* at 509. In one of its natural gas compression stations, plaintiff used a lubricant made by the defendant, which ultimately caused the third-party's pipes to become contaminated with a hazardous chemical found in the lubricant. *Id.* The plaintiff and the third party had reached a settlement agreement whereby the plaintiff would pay for much of the remediation efforts to address the contamination of the pipes. *Id.* at 510-11. The plaintiff then brought suit seeking equitable indemnity from the defendant, bringing claims for negligence and strict liability. *Id.* at 511. The court in this case was faced with the issue of whether the contamination of the pipes constituted property damage, and did not explicitly address the effect of the fact that the pipes were owned not by plaintiff, but by the third party gas company. *Id.* at 523-32. As with *KB Home*, however, the result in this case suggests that a plaintiff may overcome the economic loss rule even where it did not own the damaged property if it has some connection to or responsibility for the damaged property.

On the other hand, one case Defendant cites does indicate that the plaintiff may not bring a negligence suit where it had alleged no damage to its own property. *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292 (2006). In *County of Santa Clara*, the plaintiffs were various governmental entities acting for themselves and as class representatives who brought suit against lead manufacturers alleging various tort claims stemming from the dangers of lead paint. *Id.* at 298. The court noted that though individuals who had been sickened by the lead paint might be able to assert negligence and strict liability claims, the plaintiffs were not authorized to sue on behalf of any

---

[1] The issue here was whether the defective product was the furnace as a whole, in which case there was no damage to other "property," or whether the defective product was the emissions control component, in which case the "other property" damaged was other parts of the furnace. *Id.* at 1082,

United States District Court

For the Northern District of California

1    such individuals, and thus they could only assert those claims based on damage to their own

2    property.[2] *Id.* at 318, 325. Though this case does suggest that a plaintiff may not avoid the

3    economic loss rule simply by alleging that an unrelated third party has experienced personal injury

4    or property damage, it is factually distinguishable from the instant case. The *County of Santa*

5    *Clara* plaintiffs did not request damages caused by physical injury to any person harmed by lead

6    paint, and did not seem to have raised specific, concrete allegations about any individuals who had

7    been so harmed. *Id.* at 320-21. There is no indication that the plaintiffs had any particular

8    relationship to any harmed individual, nor that they assumed the costs associated with any harm

9    such individuals experienced due to contact with lead paint.

10       Defendant also cites to *Zamora v. Shell Oil Co.*, which is similarly distinguishable. In that

11   case, a group of homeowners brought negligence claims against the manufacturer of defective pipes

12   that had caused leaking and damage in some of their homes. 55 Cal. App. 4th 204, 211 (1997)

13   (disapproved on other grounds in *Goodman v. Lozano*, 47 Cal. 4th 1327, 1330, 223 P.3d 77, 79

14   (2010)). The court found that the homeowners who had not experienced leaking could not state a

15   cognizable negligence claim based on the "micro-cracking" in the pipes that had not yet caused any

16   damage to their homes. *Id.* at 208. No party in that case raised, and so the court did not consider,

17   any argument that the homeowner who had not experienced leaks could bring suit based on damage

18   to the other plaintiff's homes. In *Zamora*, the plaintiffs who had not suffered property damage had

19   no special relationship or connection to those that had suffered property damage, other than that they

20   had been put at risk for similar damage in the future.

21       In contrast, even if Plaintiff's complaint does not sufficiently allege that it owns the radios, it

22   certainly indicates that Plaintiff had a clear connection to, and responsibility for, the radios. Even if

23   the radios were owned by Plaintiff's customers, the damage was caused by wiring performed by

24   Plaintiff. Plaintiff does allege that it has replaced such property at its own expense. Compl. ¶ 60.

25   Thus, assuming, *arguendo*, that the allegations of ownership in the complaint are insufficient, this

26

27       [2] The court then noted that the plaintiffs' allegations were likely not sufficient to show that
     their property had been damaged within the meaning of the economic loss rule, but remanded on this
28   question as the parties had not fully briefed it before the trial court. *Id.* at 326.

case is analogous to *Transwestern* or *KB Home*, where the owners of the damaged property were customers of the plaintiffs (or had some other type business relationship), and where the plaintiffs had unwittingly caused the damage to the property through their use of the defendant's defective product.  In those cases, as here, the plaintiffs had assumed responsibility for repairing the damaged property, and then sought to recover from the defendants.  The results in those cases indicates that Plaintiff's claims are not barred by the economic loss rule here, even if it has not sufficiently alleged that it owned the radios in question.

2.       Sufficiency of Plaintiff's Allegations of Damage from Radios

Defendant's second argument as to why the damage to the radios is not sufficient to avoid the motion to dismiss is that Plaintiff has not sufficiently alleged that it suffered any actual damages as a result of the destroyed radios.  Part of this argument seems simply repetitive with the first argument: that when the damaged property is owned by a third party, Plaintiff's expense in replacing it is mere economic loss.  Def.'s Reply at 4.  This Court rejects this argument for the reasons discussed above.

Defendant also argues, however, that Plaintiff has not alleged that it lost any money due to the damaged radios.  It points to the section in the complaint where Plaintiff alleges that, "Six radios were destroyed by wicking water through the TOUGHCable, all of which had to be replaced at [Plaintiff's] cost."  Compl. ¶ 60.  Defendant argues that it is a "plausible reading" to interpret this sentence as alleging that Plaintiff "did not add a markup to the radios, but simply passed them along at its 'cost.'" Def.'s Reply at 4.  The Court finds this to be a tortured reading of the allegations in the complaint, rejects it.  Defendant also argues that the various paragraphs in the complaint enumerating damages Plaintiff experienced do not explicitly list the cost of replacing the radios.  This sections of the complaint, however, seek to recover for, *inter alia*, the expense of "repairing damages caused by the TOUGHCable," which clearly seems to encompass damage caused to the radios.  Compl. ¶¶ 113, 129.  The Court thus finds Defendant's arguments on this front to be based on a misreading of the allegations in the complaint.

United States District Court

For the Northern District of California

3.   Were Radios "Other Property"?

Defendant's third argument is that the radios should not be considered "other property" because they were part of the same system as the TOUGHCable.  It points to *KB Home*, which dealt with a furnace component that had damaged other parts of the furnace.  112 Cal. App. 4th at 1086-87.  The defendant in that case argued that there was no damage to "other property" because the component and the rest of the furnace should be considered one product.  *Id.*  Considering the proper test for distinguishing what constituted "other property," the court announced the following test:

> we believe distinguishing between "other property" and the defective product itself in a case involving component-to-component damage requires a determination whether the defective part is a sufficiently discrete element of the larger product that it is not reasonable to expect its failure invariably to damage other portions of the finished product. If that is the case, permitting tort recovery when the defective part causes physical injury to other components is consistent with the underlying principle recognizing a manufacturer's liability in tort "by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm."  (*Seely, supra*, 63 Cal.2d at p. 18, 45 Cal. Rptr. 17, 403 P.2d 145.)  If not, it is fair to impose upon the consumer (in this case, KB Home) "the risk that the product will not match his economic expectations unless the manufacturer agrees that it will" (*ibid.*), and thus to limit damages to those recoverable under the law of contractual warranty.

*Id.* at 1087.  The court identified a number of factors that could be considered in determining when damaged property could be considered "other property" for the purposes of the economic loss rule, including: (1) whether the component formed an integral function in the operation of the larger product; (2) whether the component had any independent use to the consumer; (3) how related the property damage was to the inherent nature of the defect in the component; (4) whether the component was placed into the stream of commerce separately from the larger product; (5) whether the component came from the same manufacturer; (6) whether the larger product always included the component; (7) whether the component could be readily detached from the larger product; (8) whether the component has uses in other applications; and (9) whether the component is listed as a separate product by the manufacturer.  *Id.* at 1086-87.

On balance, these factors favor a finding that the TOUGHCable was a distinct and separate product, and not part of one integrated system for the purposes of the economic loss rule.  While the TOUGHCable appears to have performed an integral function in the larger system, it was also sold

1   separately from the radios, could be used with a variety of different types of products, and could be

2   readily detached from the radios.  While the radios needed to be connected by some kind of cable in

3   order to function, they did not need to be connected by TOUGHCable specifically, and indeed had

4   been connected using other cable before Defendant began its various policies requiring the use of

5   TOUGHCable.  In short, the radio and cable are two distinct parts, each performing discrete

6   functions, and each having independent value.  Finally, the damage to the cable – the splitting and

7   cracking of its casing – is distinct from the damage caused to the radios when water wicked through

8   the damaged cable.  The cable could have been defective in many ways without causing damage to

9   the radios.  Thus, the TOUGHCable "is a sufficiently discrete element of the larger product that it is

10  not reasonable to expect its failure invariably to damage other portions of the finished product."  *Id.*

11  Plaintiff thus sufficiently alleges damage to "other property" in the complaint.

12      4.   Plaintiff's Ability to Recover Economic Damages

13          Finally, Defendant argues that even if Plaintiff may recover damages for the destruction of

14  the radios, this does not allow Plaintiff to recover for the economic damages it suffered (i.e. the cost

15  of replacing the TOUGHCable).  This is in response to an argument Plaintiff raised in its opposition

16  that once it can identify any non-economic damages, then the economic loss rule is entirely

17  inapplicable, and Plaintiff can recover for all economic and non-economic damages.  Pl.'s Opp. at 6.

18  Plaintiff's argument, however, runs afoul of the rule recognized by the California Supreme Court

19  that "[e]ven in actions for negligence, a manufacturer's liability is limited to damages for physical

20  injuries and there is no recovery for economic loss alone."  *Robinson Helicopter*, 34 Cal. 4th at 997

21  (quoting *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)).  This rule is recognized even in many

22  of the cases that Plaintiff cites for its argument that it may recover all damages once it has alleged

23  some form of non-economic damages.  *See KB Home*, 112 Cal. App. 4th at 1084 (quoting *Seely*);

24  *San Francisco Unified*, 37 Cal. App. 4th at 1329 ("We have seen that *Seely* precludes recovery for

25  economic loss in a strict liability or negligence cause of action."); *Greystone Homes, Inc. v. Midtec,*

26  *Inc.*, 168 Cal. App. 4th 1194, 1215 (2008) (noting that "entities generally have no duty to prevent

27  purely economic loss to a potential plaintiff" absent a special relationship).

28

**United States District Court**

For the Northern District of California

1   In *Casey v. Overhead Door Corp.*, the court applied the economic loss rule to uphold the

2   exclusion of evidence of economic loss.  74 Cal. App. 4th 112, 123 (1999) *disapproved of on other*

3   *ground by Jimenez v. Superior Court*, 29 Cal. 4th 473, 484 (2002).  There, the plaintiffs were

4   bringing suit against the manufacturers of defective windows that had been incorporated into their

5   homes, and the trial court had ruled that while they could introduce evidence of non-economic losses

6   (e.g. damage to other parts of their home) resulting from the defective windows, they could not

7   introduce evidence of economic loss damages (*e.g.*, replacement of the defective windows).  *Id.* at

8   117.  The appeals court affirmed this ruling, but noted that the plaintiffs were nonetheless "entitled

9   to present evidence of damages that did not constitute economic losses."[3]  *Id.* at 123.  The California

10  Supreme Court followed *Casey* and upheld a trial court ruling excluding evidence of non-economic

11  loss in *Aas v. Superior Court*, 24 Cal. 4th 627, 634 (2000), *superseded by statute on other grounds*

12  *as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1079-80 (2003).  The Court

13  noted that "Courts routinely apply Seely in strict liability and negligence cases alike to distinguish

14  recoverable damages for physical injury from unrecoverable damages representing the benefit of a

15  contractual bargain." *Id.* at 640.  This result is consistent with the rationale of the economic loss

16  rule.  The risk of contractual damages may be fairly allocated by contract through negotiation.

17  Damages from tortious conduct may not.

18  Plaintiff bases its arguments on misreadings of cases, or on selective and misleading quotes.

19  Some of the cases Plaintiff cites only state that a plaintiff must allege non-economic loss in order to

20  avoid the economic loss rule and state a tort claim, but do not discuss what damages are recoverable

21  on that cause of action.  *See Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1079 (2003)

22  ("under the economic loss rule, appreciable, nonspeculative, present injury is an essential element of

23  a tort cause of action"); *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th

24  1318, 1329-30 (1995) ("Once physical injury to property occurs-assuming that damage is the last

25

26

27      [3] The court in *Casey* ultimately upheld the dismissal of the plaintiffs negligence cause of

28  action, however, because the plaintiffs had admitted that they had no evidence of non-economic loss.
    *Id.* at 123-24.

element of the tort cause of action to occur-the cause of action accrues and the limitations period commences.").

Still other cases Plaintiff cites hold that the fact that non-economic damages can be measured in economic terms (e.g. seeking damages for property damage based on the cost of repair) does not render those damages non-compensable. *See Collins Dev. Co. v. D.J. Plastering, Inc.*, 81 Cal. App. 4th 771, 779 (2000) ("The fact that damages for this physical damage were calculated on the basis of the cost of repairing the stucco so that the damage to the other parts of the building would abate did not change the nature of the damage UCW suffered."); *Transwestern*, 46 Cal. App. 4th at 531 ("While economic loss is measured by repair costs, replacement costs, loss of profits or diminution of value, the measure of damages does not determine whether the complaint is for physical harm or economic loss. In other words, the fact that the measure of the plaintiff's damages is economic does not transform the nature of its injury into a solely economic loss. Physical harm to property may be measured by the cost of repairing the buildings to make them safe."); *Cnty. of Santa Clara*, 137 Cal. App. 4th at 339 ("In deciding whether out-of-pocket costs represent economic loss or property damage in a given case, it is important to avoid confusing 'the measure of the damages with the nature of the damage.'") (McAdams, J., concurring). Plaintiff seems to misread this rule as meaning that otherwise non-compensable economic damages are transformed into damages compensable if any non-economic damages are alleged, but the cases themselves do not so hold.

At the hearing, Plaintiff cited for the first time two additional authorities in support of its argument. Plaintiff points to California Civil Code § 3333, which states: "*For the breach of an obligation not arising from contract*, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." This statute is unhelpful, as the very point of the economic loss rule is to distinguish when a plaintiff may recover in contract, and when in tort. Section 3333 does not aid in making this distinction. The Court in *Aas* rejected the argument that § 3333 made economic losses recoverable in tort. 24 Cal. 4th at 643. The Court there held that a "person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Id.*

1       Plaintiff also cites *Stearman v. Centex Homes*, which does not directly address the question

2  of whether a plaintiff who has alleged both economic and non-economic losses may recover

3  damages for both.  78 Cal. App. 4th 611 (2000).  *Stearman* has two main holdings, though neither is

4  helpful to Plaintiff's position.  The court first considered the question of when a construction defect

5  in a home can be said to have damaged "other property" by damaging other parts of the home.  *Id.* at

6  617-23.  The court's discussion on this point is unhelpful, as it ultimately concludes that "the

7  physical damages to plaintiffs' property are entirely distinct from economic losses and are thus

8  recoverable in strict liability."  *Id.* at 618.  There was thus no occasion for the *Stearman* court to

9  consider whether alleging non-economic losses necessarily makes a plaintiff's economic losses

10  compensable as well.  Later in the opinion, *Stearman* addressed the question of whether the

11  plaintiffs could recover the cost of experts they had retained to estimate the cost of repairs to their

12  home.  *Id.* at 624-25.  Relying on § 3333, the court determined that they could.  *Id.*  This holding is

13  also unhelpful to Plaintiff in this case, because there the court had already determined that the cost

14  of repair constituted a non-economic loss, and the retention of experts was part of the cost of making

15  the repairs.  *Id.*

16       The Plaintiff has thus offered no convincing authority that it may escape the general rule

17  announced in *Seely*, *Robinson Helicopter*, and related cases: that a plaintiff may not recover in tort

18  for its economic losses.  Thus, though Plaintiff's allegations of damage to the radios is sufficient to

19  avoid dismissal of its claims outright, this does not mean that it may recover for the costs incurred in

20  replacing the defective TOUGHCable.  This analysis also applies to the negligent misrepresentation

21  claim, though Plaintiff raises an additional issue specific to that claim that is discussed below.

22  B.    <u>Application of Economic Loss Rule to Negligent Misrepresentation Claim</u>

23       In addition to the question of alleging damage to other property discussed above, Plaintiff

24  raises another issue specific to its negligent misrepresentation claim.  Specifically, Plaintiff argues

25  that the economic loss rule does not apply to claims for negligent misrepresentation.  As an initial

26  matter, the California Supreme Court has articulating the economic loss rule broadly to bar tort

27

28

United States District Court

For the Northern District of California

1    liability generally (subject to certain exceptions).[4]  *Robinson Helicopter*, 34 Cal. 4th at 988 ("Simply

2    stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated

3    because the product he bought is not working properly, his remedy is said to be in contract alone, for

4    he has suffered only 'economic' losses.") (internal quotation marks and alterations omitted).

5            Plaintiff argues that the economic loss rule is inapplicable because physical injury is not an

6    element of a negligent misrepresentation claim.  While this is true,[5] courts have nonetheless

7    dismissed negligent misrepresentation claims as barred by the economic loss rule where the

8    complained-of misrepresentations were simply those made in the course of forming the contract. *See*

9    *Astrium S.A.S. v. TRW, Inc*., 197 F. App'x 575, 577 (9th Cir. 2006) (finding district court did not err

10   in holding negligent misrepresentation claim to be barred by economic loss rule); *United Guar.*

11   *Mortgage Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184-85 (C.D. Cal. 2009)

12   (finding negligence and negligent misrepresentation claims barred by the economic loss rule where

13   "the alleged misrepresentations are not conceptually distinct from the contract"); *JMP Sec. LLP v.*

14   *Altair Nanotechnologies Inc*., 880 F. Supp. 2d 1029, 1042-43 (N.D. Cal. 2012) (finding fraud and

15   negligent misrepresentation claims barred by the economic loss rule where "[t]he tort claims consist

16   of nothing more than [the defendant's] alleged failure to make good on its contractual promises");

17   *Vavak v. Abbott Laboratories, Inc*., SACV 10-1995 JVS RZX, 2011 WL 10550065 (C.D. Cal. June

18   17, 2011) (finding negligent misrepresentation claim barred by the economic loss rule because

19   "[w]here damages are purely economic, recovery may only be in contract"); *Lincoln Gen. Ins. Co. v.*

20   *Access Claims Adm'rs, Inc*., CIV. S071015LKK/EFB, 2007 WL 2492436 (E.D. Cal. Aug. 30, 2007)

21   (finding negligence and negligent misrepresentation claims barred by the economic loss rule where

22   "[t]he allegations made with regard to the breach of contract claim closely parallel those made with

23   _____

24           [4] Other than the exceptions discussed elsewhere in this order, the remaining exceptions are
     inapplicable here, and no party argues otherwise.  *See Robinson Helicopter*, 34 Cal. 4th at 989-90
25   (discussing various exceptions that are inapplicable here).

26           [5] "Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a
     misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it
27   to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of
     the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed,
28   and (5) damages."  *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (Ct. App. 1986).

**United States District Court**
For the Northern District of California

1    regard to the negligence and negligent misrepresentation claims."); *Frye v. Wine Library, Inc.*,

2    06-5399 SC, 2006 WL 3500605 (N.D. Cal. Dec. 4, 2006) ("As Plaintiff's negligent

3    misrepresentation claim can be characterized as relating to Defendant's inducement of Plaintiff to

4    contract, there is also no question of it being barred by the economic loss rule"). *See also Mod*

5    *Craft, Inc. v. Am. Ready Mix, Inc.*, F038907, 2003 WL 1090376 (Cal. Ct. App. Mar. 12, 2003) ("We

6    find no exception [to the economic loss rule] where the action is based on negligent

7    misrepresentation as opposed to simple negligence.").

8            The cases Plaintiff cites in support of its position that the economic loss rule is never

9    applicable to negligent misrepresentation claims are not persuasive.  Plaintiff points to *Castro Valley*

10   *Union 76, Inc. v. Vapor Sys. Techs., Inc.*, 2012 U.S. Dist. LEXIS 151734 (N.D. Cal. Oct. 22, 2012).

11   In that case, the court denied a motion for class certification, and found that the record on that

12   motion was not sufficient to determine whether the plaintiff's tort claims were barred by the

13   economic loss rule.  *Id.* at *10-12.  In dicta, the court noted that "at most, the 'no economic loss' rule

14   may bar the claim of negligent products liability, though not the claim of negligent

15   misrepresentation." *Id.* at *12.  The court cited no authority for this statement, and provides no

16   further discussion on this point.  The other case Plaintiff cites does not differentiate between the

17   plaintiffs' negligence and negligent misrepresentation claims, but finds that both are not barred by

18   the economic loss rule because "Plaintiffs could arguably prove, consistent with the allegations in

19   the Complaint, personal injury or damage to other property." *Rejects Skate Magazine, Inc. v.*

20   *Acutrack, Inc.*, 2006 U.S. Dist. LEXIS 63157, at *15 (N.D. Cal. Aug. 22, 2006).

21           Though Plaintiff appears to base its argument on a line of cases finding that the economic

22   loss rule does not bar torts claims where the plaintiff alleges a breach of duty independent of and

23   distinct from the breach of contract.  Courts have found exceptions to the economic loss rule under

24   certain circumstances where the defendant's conduct breached a tort duty independent of the breach

25   of contract. *Robinson Helicopter*, 34 Cal. 4th at 989-93.  For instance, in *Robinson Helicopter*, the

26   Court found that the plaintiff's fraud and intentional misrepresentation claims were not barred by the

27   economic loss rule because they were based on allegations that the defendant had not just delivered

28   defective helicopter parts, but had also falsely certified those parts to comply with certain safety

United States District Court

For the Northern District of California

1   standards and failed to provide information that would have allowed the plaintiff to sooner discover

2   and replace the defective parts. *Id.* at 990-91. The court thus found that the defendant's "tortious

3   conduct was separate from the breach itself, which involved [the defendant's] provision of the

4   nonconforming clutches," and thus the economic loss rule did not bar the claims based on the

5   conduct that went beyond mere breach of contract. *Id.* The court noted the policy rationale for this

6   exception to the economic loss rule:

7         While parties, perhaps because of their technical expertise and
        sophistication, can be presumed to understand and allocate the risks

8         relating to negligent product design or manufacture, those same parties
        cannot, and should not, be expected to anticipate fraud and dishonesty

9         in every transaction.

10   *Id.* at 993 (internal citation omitted).

11         This exception to the economic loss rule does not apply to the instant case. The

12   misrepresentations Plaintiff identifies in its complaint are simply representations that Defendant

13   made in various marketing materials about the qualities of TOUGHCable. Compl. ¶¶ 71-79

14   (identifying misrepresentations made in advertising brochures, on Defendant's website, and in

15   internet advertisements). The misrepresentations in this case are far less specific than those

16   identified in *Robinson Helicopter*, where the defendant had provided a certificate that attested to the

17   product's conformity with specific safety standards set by the FAA. 34 Cal. 4th at 989-91. They

18   consist simply of standard advertising copy touting the advantages of a product: attesting that

19   TOUGHCable would "[p]rotect your networks from the most brutal environments," that it would

20   "[d]ramatically improve your Ethernet link states, speeds, and overall performance," that it was

21   "built to perform in even the harshest weather and environments," and that it would "[p]rotect your

22   networks from devastating electrostatic discharge (ESD) attacks." Compl. ¶ 77. In essence,

23   Plaintiff's negligent misrepresentation claims allege nothing more than the product it purchased was

24   defective and did not live up to the expectations that had been created by Defendant's advertising.

25         As the alleged misrepresentations at bar were contained in advertisements and similar

26   materials, and the complaint alleges that all class members saw and relied upon these

27   misrepresentations, Compl. ¶¶ 78-79, such misrepresentations became a part of the sales contract.

28   *See Gherna v. Ford Motor Co.*, 246 Cal. App. 2d 639, 652 (1966) (holding that when a manufacturer

United States District Court

For the Northern District of California

1  engages in advertising in order to bring his goods and their quality to the attention of the public and

2  thus to create a consumer demand, the representations made constitute an express warranty running

3  directly to a buyer who purchases in reliance thereon"); *Lane v. C. A. Swanson & Sons*, 130 Cal.

4  App. 2d 210, 215 (1955) ("The representation in the newspaper advertisements may be considered a

5  part of the contract of sale."). Thus, the representations fall fairly within the scope of contract terms

6  including product warranties contained therein. They do not constitute misrepresentations collateral

7  to and outside the scope of contractual promises as in *Robinson Helicopter*. Hence, the claimed

8  misrepresentation here does not place Plaintiff's claim outside the economic loss rule.[6]

9      The Court therefore finds that Plaintiff's negligent misrepresentation claim is governed by

10 the same rule as the negligence claim. Plaintiff may seek to recover under this claim for the damage

11 to the radios, but may not seek recovery of its economic losses.

12 C.  California's Interest in the Instant Suit

13     Defendant argues that this case must be dismissed for the additional reason that California

14 has no substantial interest in the adjudication of the issues raised in the complaint and thus its law

15 does not apply. It argues that as a Canadian corporation bringing claims based on damages suffered

16 in Panama, Plaintiff may not bring causes of action in California, despite the fact that Defendant is a

17 California corporation. Defendant rests its argument on *Mazza v. Am. Honda Motor Co., Inc.*, which

18 applied a choice of law analysis to a nationwide class action, and found that California law did not

19 apply to the non-California class members. 666 F.3d 581 (9th Cir. 2012).

20     "A federal court sitting in diversity must look to the forum state's choice of law rules to

21 determine the controlling substantive law." *Mazza*, 666 F.3d at 589. Under California law, courts

22 use a three-step governmental interest analysis for approaching choice of law questions. *McCann v.*

---

24  [6] There are cases that have found that this exception applies to claims for fraud in the
25  inducement. *Krzyzanowsky v. Orkin Exterminating Co., Inc.*, C 07-05362 SBA, 2009 WL 481267,
at *11-12 (N.D. Cal. Feb. 24, 2009) (denying motion for summary judgment on breach of duty to
warn and negligent training and supervision claims where reasonable fact finder could have found
26  elements of fraud in the inducement based on the defendant's false advertising and false statements
in presentation to the plaintiff). As Plaintiff does not allege that Defendant knew its statements to be
27  false at the time that Defendant made them, however, the complaint does not adequately allege fraud
in the inducement. *Id.* at *11 (fraudulent inducement requires knowledge that inducing statements
28  were false); *see* Compl. ¶¶ 111, 118 (alleging only that Defendant should have known statements to
be false and that Defendant should have ascertained whether they were true before making them).

1   *Foster Wheeler*, 48 Cal. 4th 68, 87-88 (2010).  This analysis begins by determining whether the laws

2   of each relevant jurisdiction differ on the applicable points of law; then examines each jurisdiction's

3   interest in the application of its own law to the circumstances in the case; and finally weighs the

4   interests of the various jurisdictions to determine "which state's interest would be more impaired if

5   its policy were subordinated to the policy of the other state."  *Id.*  "The fact that two or more states

6   are involved does not in itself indicate there is a conflict of laws problem."  *Washington Mut. Bank,*

7   *FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001).  If there are no material differences in the

8   laws of the different jurisdictions, "there is no problem and the trial court may find California law

9   applicable to class claims."  *Id.*  The proponent of the other forum's law bears the burden of

10  establishing that the other forum's law differs materially from California's, and demonstrate how

11  applying that law will further the interest of that jurisdiction.  *Garamendi v. Mission Ins. Co.*, 131

12  Cal. App. 4th 30, 41 (2005).

13         In this case, Defendant fails to meet its burden at the first step in the choice of law analysis.

14  It has offered no evidence of the relevant law in Panama, Canada, or any other relevant jurisdiction,

15  and thus has not established that there is any material difference in the relevant law.  Defendant's

16  reliance on *Mazza* in support of its argument that Plaintiff cannot bring claims under California law

17  is misplaced.  *Mazza* recognized that "with respect to regulating or affecting conduct within its

18  borders, the place of the wrong has the predominant interest," but it did so only *after* concluding that

19  California law differed materially from the law of the other jurisdictions there at issue.  666 F.3d at

20  590-92.  Since Defendant has not met its burden on this preliminary question (of the difference

21  between California and *e.g.*, Panama or Canadian law), this Court does not reach the issue of which

22  jurisdiction has the greatest interest in applying its law to Plaintiff's claims.

23         In any case, it is not true that California has no discernible interest in the resolution of this

24  matter.  Defendant is a California corporation, and it appears that some or all of the design and

25  manufacture of the TOUGHCable occurred within California.  Compl. ¶ 15, 17.  As the California

26  Supreme Court has recognized, states have an interest "in regulating conduct that occurs within its

27  borders" and applying its laws to corporations operating within its borders.  *McCann*, 48 Cal. 4th at

28  98.

Additionally, even if Defendant had met its burden on the choice of laws issue, Defendant offers no explanation for why the fact that California law did not apply would necessarily require dismissal of Plaintiff's claims in this forum.  Defendant offers no argument that venue is improper in this District, and this Court routinely applies the law of other jurisdictions in cases pending before it.

As Defendant has not met its burden of showing that California law does not apply, and as such a conclusion would not in any case require dismissal of Plaintiff's claims, this Court **DENIES** Defendant's motion to dismiss on this ground.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's request to recover its economic losses associated with the failure of the TOUGHCable, such as the cost of shipping replacement cable, the cost of replacing the TOUGHCable, and any lost business as a result of the TOUGHCable's failure.  Defendant's motion is otherwise **DENIED.**

This order disposes of Docket No. 10.


IT IS SO ORDERED.


Dated:  August 26, 2013

_____
EDWARD M. CHEN
United States District Judge