**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                        NORTHERN DISTRICT OF CALIFORNIA
7
8   TASION COMMUNICATIONS, INC., *et al.*,        No. C-13-1803 EMC
9               Plaintiffs,
                                                  **ORDER DENYING DEFENDANTS'**
10        v.                                      **MOTION TO STRIKE; AND**
                                                  **GRANTING DEFENDANTS' MOTION**
11  UBIQUITI NETWORKS, INC., *et al.*,             **TO DISMISS**
12              Defendants.                        **(Docket Nos. 56, 57)**
    _____/
13
14                       **I.    INTRODUCTION**
15        Before the Court are the motions to dismiss filed by Defendants Ubiquiti Networks, Inc.
16  ("Ubiquiti") and Streakwave Wireless, Inc. ("Streakwave").  In these motions, the Defendants seek
17  to dismiss various warranty-based causes of action brought by Plaintiffs Tasion Communications
18  Inc. ("Tasion"), International Power Systems, LLC (d/b/a Freeway Networks) ("Freeway
19  Networks"), and Fundamental Holdings, Corp. (d/b/a Peak Internet) ("Peak Internet") in their First
20  Amended Complaint.  Defendants have also moved to strike various allegations contained in
21  Plaintiffs' First Amended Complaint.  For the following reason, the motion to strike is **DENIED** as
22  procedurally improper and the motion to dismiss is **GRANTED**.
23                    **II.    PROCEDURAL BACKGROUND**
24        On August 26, 2013, this Court granted in part and denied in part Ubiquiti's motion to
25  dismiss Tasion's original complaint.  *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C -
26  13-1803 EMC, 2013 WL 4530470 (N.D. Cal. Aug. 26, 2013).  The original complaint asserted only
27  causes of action for negligence and negligent misrepresentation, and the Court dismissed the
28

United States District Court
For the Northern District of California

1  complaint to the extent Tasion sought economic losses.  *Id.* at *12.1 .  In December 2013, the Court

2  granted Tasion leave to file an amended complaint.  The amended complaint alleges as follows.

3       Tasion is a Canadian corporation which offers high speed internet connectivity for business

4  and residential subscribers in locations around the world.  First Amended Complaint ("FAC") ¶ 26.

5  International Power Systems is an Arizona limited liability company which provides installation

6  services for wireless internet systems.  *Id.* ¶ 27.  Fundamental Holdings Corp. is a Delaware

7  corporation that does business in Colorado as "Peak Internet" and provides internet and telephone

8  connectivity for both home and business customers.  *Id.* ¶ 28.

9       Defendant Ubiquiti Networks is a communications technology company that "designs,

10  manufactures, and sells broadband wireless products including high performance radios, antennas,

11  software, and programming tools to manage the hardware."  *Id.* ¶ 29.  Ubiquiti's products permit

12  companies to provide high speed wireless connections to customers in a variety of locations –

13  including markets that are difficult to service (such as mountainous, rural, or island regions).  *Id.*

14  Defendant Streakwave Wireless is a seller and distributor of wireless products, including Ubiquiti's

15  products.  *Id.* ¶ 30.

16       In late 2010, Ubiquiti announced a new shielded ethernet cable product – named

17  TOUGHCable – which was designed to provide the wire connections necessary for the installation

18  of Ubiquiti radio transceiver equipment.  *Id.* ¶ 3.  Ubiquiti heavily promoted this cable to its

19  customers, and represented that it was an "[o]utdoor carrier class shielded Ethernet cable" that was

20  "built to perform even in the harshest weather and environments" and would protect networks "from

21  the most brutal environments."  *Id.* ¶ 5.  Plaintiffs allege that these representations were false, and

22  that the TOUGHCable product was "entirely unsuited for any outdoor use whatsoever."  *Id.* ¶¶ 6-7.

23  Rather, within  a year of installation, TOUGHCable would begin to corrode, crack, and split.  *Id.* ¶ 8.

24  Plaintiffs allege, on information and belief, that this was caused by a "complete lack of UV

25  (ultraviolet) protection."  *Id.*  ¶ 44.  Once the outer shielding failed in this way, "the cable . . .

26  became a sponge, wicking up water from the outside, drawing it inside the cable, and, like a straw,

27  providing a channel for the water to flow down directly into sensitive and delicate radio equipment,

28  often destroying the equipment."  *Id.* ¶ 8, 44-47.  As a result of TOUGHCable's flaws, Plaintiffs

2

United States District Court
For the Northern District of California

1    allege that numerous customers lost their internet connection.  *Id.* ¶ 51.  Replacing the

2    TOUGHCable product required each customer's location to be completely rewired in order to

3    protect the sensitive radio equipment at each location.  *Id.* ¶ 52.

4          Around 2011, Ubiquiti began notifying its customers (including the Plaintiffs in this action)

5    that in order for Plaintiffs' Ubiquiti broadcast and receiving equipment to be covered under

6    warranty, they would need to use shielded ethernet cables and earth grounding.  *Id.* ¶ 56.

7    Contemporaneous with this announcement, Ubiquiti introduced TOUGHCable as a product which

8    would satisfy Ubiquiti's new warranty conditions.  *Id.* ¶ 57.

9          Tasion, doing business as Planet Telecom, placed its first order of TOUGHCable in March

10   2011, ordering four boxes of TOUGHCable at 1,000 feet per box.  *Id.* ¶ 58.  Over the next year,

11   Tasion purchased a total of 22 boxes, paying $109 to $119 per box.  *Id.* ¶ 59.  The President of

12   Tasion made these purchases over the phone by contacting Defendant Streakwave.  *Id.* ¶ 60.  From

13   March 2011 on, Tasion began using TOUGHCable in all of its outdoor installations.  *Id.* ¶ 64.  Less

14   than a year later, Tasion first received word that one of its customers in a remote location had lost its

15   internet connection.  *Id.* ¶ 65.  Investigation revealed that the customers' radio receive had shorted

16   out and that the TOUGHCable had become brittle, cracked, and discolored and allowed water to

17   drain into the radio, shorting it out.  *Id.* ¶ 67.  Ultimately, between May 2012 and March 2013, 48

18   Tasion customers lost internet service due to TOUGHCable corrosion.  *Id.*  ¶ 70.

19         Plaintiff Freeway Networks purchased three boxes of TOUGHCable over the phone.  *Id.* ¶¶

20   81-82.  Freeway Networks installed TOUGHCable in locations within the State of Arizona.  *Id.* ¶ 84.

21   Fundamental Holdings, doing business as Peak Internet, purchased 15 boxes of TOUGHCable and

22   installed the product in locations in the State of Colorado and the country of Costa Rica.  *Id.*  ¶¶ 89,

23   92.  Both Plaintiffs allege, like Tasion, that the shielding on the TOUGHCable products they

24   installed disintegrated, resulting in damage and requiring replacement.  *Id.* ¶¶ 85, 93.

25         Ubiquiti stopped shipping the TOUGHCable products at issue in this case sometime in 2012.

26   *Id.* ¶ 77.  Notably, even when the manufacturer is aware of the defect, notice must be given.  *See,*

27   *e.g.*, *Vinson v. J.M. Smucker Co.*, No. CV 12-4936, 2013 WL 6987087 (C.D. Cal. Mar. 25, 2013)

28   ("[T]he filing of a complaint may not provide sufficient notice even if the defendant had 'actual

**United States District Court**
For the Northern District of California

1   notice' of the alleged breach."); *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332 (1972) ("Where the

2   merchandise was sold under circumstances which indicate the seller acted in bad faith and was

3   aware of the breach at the time of the sale, demand for notice of the breach from each and every

4   member of the class may be a meaningless ritual.  Nevertheless, the statutory demand for notice

5   applies . . . .").  These products were replaced with new products called TOUGHCablePro and

6   TOUGHCable Carrier.  *Id.*  Plaintiffs allege that Ubiquiti has "authorized previous purchasers of

7   TOUGHCable . . . to obtain its new cable products without charge, box for box, to replace the

8   defective TOUGHCable products."  *Id.*  ¶ 78.  Nonetheless, Plaintiffs allege a number of economic

9   and consequential damages resulting from the TOUGHCable defect.

10      Plaintiffs seek to assert their claims on behalf of themselves as well as on behalf of class

11  members scattered throughout the world.  *Id.* ¶ 22.

12      The amended complaint alleges twelve causes of action: (1) Negligence; (2) Negligent

13  Misrepresentation; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Breach of

14  Express Warranty (against Streakwave); (6) Breach of Implied Warranty (against Streakwave); (7)

15  Breach of Written Warranty under the Magnuson-Moss Warranty Act; (8) Breach of Express

16  Warranty (asserted by Plaintiff Fundamental Holdings on behalf of Colorado class members); (9)

17  Breach of Implied Warranty (asserted by Plaintiff Fundamental Holdings on behalf of Colorado

18  class members); (10) Breach of Express Warranty (asserted by Plaintiff Freeway Networks on behalf

19  of Arizona class members); (11) Breach of Implied Warranty (asserted by Plaintiff Freeway

20  Networks on behalf of Arizona class members); and (12) Violation of Colorado's Consumer

21  Protection Act.  Defendants have moved to dismiss the third, fourth, seventh, eighth, ninth, tenth,

22  and eleventh causes of action.  In addition, Defendants have moved to strike certain allegations from

23  the amended complaint.

24                          **III.    DEFENDANTS' MOTION TO STRIKE**

25      In their motion to strike, Defendants seek to strike the class allegations in Count Twelve –

26  violation of Colorado's Consumer Protection Act – and class allegations to the extent the Plaintiffs

27  are seeking to assert a claim for implied warranty of fitness for a particular purpose.

28

United States District Court

For the Northern District of California

Defendants have failed to cite even a single case interpreting Federal Rule of Civil Procedure 12(f) or even stating the applicable legal standard.  Under Federal Rule of Civil Procedure 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Courts have held previously that, in rare circumstances, class allegations may be struck where "the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); *see also Kiliuk v. ADT Sec. Servs., Inc.*, 263 F.R.D. 544, 547 (C.D. Cal. 2008).

However, the Court finds that the viability of this case law is questionable in light of the Ninth Circuit's decision in *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010).  In that case, the defendant brought a motion to strike under Rule 12(f) arguing that "Whittlestone's claim for lost profits and consequential damages should be stricken from the complaint, because such damages are precluded as a matter of law." *Id.* at 974.  The Ninth Circuit reversed the district court's grant of the motion to strike.  The Court noted under the plain text of the rule, a motion to strike may only be granted where the allegations in question are "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Id.* at 973-74.  Significantly, the Court found that the defendant's argument – that the substantive law barred the damages – did not fit into any of these categories.  Rather, the Ninth Circuit stated:

> Handi-Craft's 12(f) motion was really an attempt to have certain portions of Whittlestone's complaint dismissed or to obtain summary judgment against Whittlestone as to those portions of the suit – actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion. . . .  Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading (as Handi-Craft would have us do here), we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion . . . already serves such a purpose.

*Id.* at 974.  Relying on *Whittlestone*, more recent district courts have stated that Rule 12(f) motions to strike are not the proper vehicle for seeking dismissal of class allegations.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, C10-4387 PJH, 2011 WL 2111796, at *15 (N.D. Cal. May 26, 2011); *Swift v. Zynga Game Network, Inc.*, C09-05443SBA, 2010 WL 4569889, at *10 (N.D. Cal. Nov. 3, 2010).

1    Notwithstanding Defendants' procedural misstep, the Court will consider Defendants'

2 arguments regarding the class action allegations under Count 12 in connection with their pending

3 motion to dismiss, *infra*. The Court does this solely because combining the argument section of

4 Defendants' motion to strike and the argument section of their motion to dismiss results in a total

5 argument length that would be under the 25 page limit for motions under this Court's local rules.

6 *See* Local Civ. R. 7-2(b). The Court, however, discourages needless filings which serve no purpose

7 but to waste paper and clog the Court's docket. Accordingly, the Court advises the parties to be

8 more cognizant of the Federal Rules of Civil Procedure in the future and to avoid the filing of

9 redundant or procedurally improper motions.

10    In addition to seeking to strike the class action allegations as to Count Twelve, Defendants

11 seek to strike various allegations in light of Plaintiffs' concession that it is not seeking to assert a

12 claim for "breach of implied warranty for fitness for a particular purpose. Specifically, Defendants

13 argue that the Court should strike Plaintiffs' allegations that they "relied on Defendant Ubiquiti's

14 reputation and brand name in selecting Ubiquiti TOUGHCable" and that they believed Ubiquiti

15 "would exercise skill and judgment to design, manufacture and place in the stream of commerce

16 cable suitable for the purposes for which they were advertised." FAC ¶ 186.

17    Defendants' motion to strike is **DENIED**. These allegations are not redundant, immaterial,

18 impertinent, or scandalous even if legally insufficient to state a claim. *Whittlestone*, 618 F.3d at

19 973-74. Further, as Plaintiffs state in their opposition, the allegations in question may be relevant to

20 Plaintiffs' claim for breach of implied warranty of merchantability.

21                           **IV.    DEFENDANTS' MOTION TO DISMISS**

22    Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to

23 dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch.*

24 *of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). In considering such a motion, a court must

25 take all allegations of material fact as true and construe them in the light most favorable to the

26 nonmoving party, although "conclusory allegations of law and unwarranted inferences are

27 insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th

28 Cir.2009). While "a complaint need not contain detailed factual allegations . . . it must plead

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

'enough facts to state a claim to relief that is plausible on its face.' " *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal,* 129 S.Ct. at 1949.

A.      Plaintiffs Concede the Fourth Cause of Action for Breach of Implied Warranty Under California Law (Against Defendant Ubiquiti) Fails

Under California law, privity is required in order to pursue a claim for breach of the implied warranty of merchantability. *See, e.g.*, *Paramount Farms, Int'l LLC v. Ventilex B.V.*, 500 F. App'x 586 (9th Cir. 2012) ("Vertical privity, or in other words, privity of contract, is required to sustain an implied warranty claim in California."). Plaintiffs have conceded that they are not in vertical privity with Ubiquiti, that they do not fit into any recognized exception, and that they therefore cannot pursue a cause of action against Ubiquiti. *See* Pl. Opp. at 14-15 ("Plaintiffs concede that their claim for breach of implied warranty against defendant Ubiquiti (only) cannot be sustained."). Accordingly, the fourth cause of action is **DISMISSED** with prejudice.

B.      Plaintiffs' Third and Fifth Causes of Action for Breach of Express Warranty Against Defendants Under California Law Fail

1.      Plaintiffs Failed to Provide Adequate Notice to Either of the Defendants

Under the California Commercial Code, a buyer must, "within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Cal. Comm. Code § 2607(3)(A). Courts have interpreted this provision as requiring a plaintiff asserting warranty claims to have provided the seller with pre-suit notice before instituting a lawsuit. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" (citation omitted)). The purpose of this rule is to "allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate

United States District Court

For the Northern District of California

1   settlements." *Cardinal Health 301 v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 135 (2008).

2   Given the purpose of the rule, courts have expressly held that the notice must be provided before the

3   lawsuit – notice that is after, or contemporaneous with, the filing of the lawsuit is insufficient.  *See*

4   *Alvarez*, 656 F.3d at 932.

5          The parties do not dispute that Tasion did not provide Ubiquiti with pre-suit notice.

6   Plaintiffs argue, however, that because Ubiquiti is the manufacturer of the TOUGHCable product

7   and Plaintiffs did not deal directly with Ubiquiti, notice is not required.  Further, Plaintiffs argue that

8   Tasion provided adequate pre-suit notice to Defendant Streakwave before the complaint was

9   amended to add Streakwave as a defendant to this action.  Finally, Plaintiffs argue that Freeway

10  Networks and Peak Internet have sufficiently provided pre-suit notice to both Defendants.  The

11  Court disagrees.

12              a.    Tasion Did Not Provide Required Notice to Ubiquiti

13         As to Defendant Ubiquiti, the Court finds that Tasion's failure to provide notice requires

14  dismissal of its express warranty claims.  In *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57

15  (1963) (in bank), the California Supreme Court, interpreting a prior notice provision, found that

16  "[t]he notice requirement . . . is not an appropriate one for the court to adopt in actions by injured

17  consumers against manufacturers with whom they have not dealt."  *Id.* at 61.  The Court noted that

18  the purpose of the notice requirement would not be served in such circumstances:

19              "As between the immediate parties to the sale (the notice requirement)
                is a sound commercial rule, designed to protect the seller against
20              unduly delayed claims for damages.  As applied to personal injuries,
                and notice to a remote seller, it becomes a booby-trap for the unwary.
21              The injured consumer is seldom steeped in the business practice which
                justifies the rule, and at least until he has had legal advice it will not
22              occur to him to give notice to one with whom he has had no dealings."

23  *Id.* at 61 (quoting William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the*

24  *Consumer)*, 69 Yale L.J. 1099, 1130 (1960)).  On the basis of this case, the federal district courts in

25  California have routinely held that plaintiffs are not required to provide pre-suit notice to a remote

26  seller/manufacturer with whom they have not dealt.  *See, e.g.*, *Rosales v. FitFlop USA, LLC*, 882 F.

27  Supp. 2d 1168 (S.D. Cal. 2012) ("However, when claims are against a defendant in its capacity as a

28  manufacturer, not as a seller, plaintiff is not required to give notice."); *Sanders v. Apple Inc.*, 672 F.

1   Supp. 2d 978 (N.D. Cal. 2009) ("However, timely notice of a breach of an express warranty is not

2   required where the action is against a manufacturer and is brought by injured consumers against

3   manufacturers with whom they have not dealt." (citation omitted)).

4       Ubiquiti argues, however, that this exception to the notice requirement is not applicable

5   because the concerns underlying the rule – ensuring that unwary consumers do not have their rights

6   foreclosed – do not apply in this action, because the Plaintiffs are not consumers but rather business

7   entities.  There is support for this position in California law.  *See Fieldstone Co. v. Briggs Plumbing*

8   *Products, Inc.*, 54 Cal. App. 4th 357 (1997), *superseded by statute on other grounds as recognized*

9   *by Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194 (2008).  In *Fieldstone*, plaintiff – a

10  home builder – sued the manufacturer of bathroom sinks that were installed in homes plaintiff built.

11  Plaintiff did not deal directly with the manufacturer, but rather purchased the sinks through a third

12  party.  *See id.* at 369.  The Court rejected plaintiff's argument that notice was not required.  After

13  citing *Greenman*'s discussion of the risks the notice requirement would present to unwary

14  consumers, the court stated, "[t]hat is hardly the situation where, as here, plaintiff is a sophisticated

15  development company which has built many thousands of homes over the last two decades."  *Id.*

16  The few courts that have cited *Fieldstone* for this proposition have noted that its holding appears to

17  have turned on the "sophistication" of the plaintiff.  *See In re HP Inkjet Printer Litigation*, No. C05-

18  3580JF, 2006 WL 563048, at *5 n.4 (N.D. Cal. Mar. 7, 2006).  *Cf. In re Ford Motor Co. E-350 Van*

19  *Prods. Liability Litigation (No. II)*, No. C03-4558 (HAA), 2008 WL 4126264, at *11 (Sept. 2, 2008)

20  (finding that a not-for-profit religious organization that purchased one Ford van to transport church

21  members to community functions was more like a consumer in *Greenman* than a "sophisticated"

22  business entity in *Fieldstone*).

23      Plaintiffs argue, however, that the facts in this case are closer to *Corp. of Presiding Bishop of*

24  *Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492 (1963), than they

25  are to *Fieldstone*.  There, plaintiff, a Mormon bishop, had a heating system installed by a contractor.

26  The system, however, "would not pass the pressure test or hold any pressure or heat the building . . .

27  because the materials used and which had been purchased by the defendant Cavanaugh from the

28  [contractor] were unsuited for radiant heating when embodied in concrete."  *Id.* at 497.  The

9

1    California Court of Appeal stated that the notice requirement did not apply because the plaintiff had

2    not dealt directly with the manufacturer and would not have been aware of the manufacturer's

3    participation in the chain of events which caused him damage.  *Id.* at 515.  The *Fieldstone* decision

4    came out subsequent to that case and expressly distinguished that *Presiding Bishop* by noting the

5    different levels of sophistication between a bishop and a commercial entity:

> *Presiding Bishop v. Cavanaugh* upon which Fieldstone also relies . . .
> is factually dissimilar, as there, a "person in the position of the
> [Bishop] ordinarily would not be aware of his rights as against the
> manufacturer until he had received legal advice predicated upon an
> adequate investigation of the facts as to the manufacturer's
> participation in the chain of events culminating in damage to the
> plaintiff."  Again, such is not the situation here, and we accordingly
> conclude the notice provision applies.

11   *Fieldstone*, 168 Cal. App. 4th at 370 (quoting *Cavanaugh*, 217 Cal. App. 2d at 515).

12         The Court begins by noting the apparent incongruity between (1) imposing notice

13   requirements on a plaintiff as to a manufacturer with whom it has not dealt and (2) the language of

14   the statute which speaks of a "buyer" providing notice to a "seller" – language which facially

15   appears to contemplate a direct commercial relationship between the parties.  Nonetheless, the Court

16   is bound by the California Court of Appeal's holding on this point in *Fieldstone*, absent a clear

17   showing that the California Supreme Court would not follow it.  *See In re Cathode Ray Tube (CRT)*

18   *Antitrust Litig.*, MDL No. 1917, 2013 WL 4505701, at *9 (N.D. Cal. Aug. 21, 2013) ("[F]ederal

19   courts are bound by that state's highest court's decision, but if that court has not decided an issue,

20   the federal court is to follow relevant intermediate appellate precedent unless the federal court finds

21   convincing evidence that the state's supreme court would not follow it.").  Plaintiffs have not made

22   such a showing in this case.

23         Tasion argues, however, that it is not a "sophisticated" entity and thus *Fieldstone* does not

24   apply.  Pl. Opp. at 7.  Specifically, it states that Tasion "is a small company with a single operations

25   person, who manages a small workforce in the newly developing field of wireless

26   telecommunications."  *Id.*  The Court disagrees.  First, the amended complaint is completely devoid

27   of any allegations regarding the size of Tasion's operations.  Second, the allegations regarding

28   Tasion in the complaint directly undermine an argument that Tasion is not "sophisticated."

United States District Court

For the Northern District of California

1   Plaintiffs allege that Tasion is a Canadian corporation which provides "high speed internet

2   connectivity for business and residential subscribers in locations *around the world*, including

3   Panama." FAC ¶ 26 (emphasis added). Their services include installation and servicing of

4   equipment – including in remote locations. *Id.* ¶¶ 53, 54. Further, Plaintiffs allege interactions with

5   Ubiquiti – for example, they allege that "Ubiquiti began to place customers (the purchasers of

6   Ubiquiti's broadcast and receiving equipment) on notice that, in order for the Ubiquiti equipment to

7   be covered under Ubiquiti's warranty" shielded ethernet cables would need to be used. *Id.* ¶ 56.

8   Under these circumstances, the Court holds that Tasion is sufficiently "sophisticated" such that

9   *Fieldstone* applies rather than *In re Ford Motor Co. E-350 Van Prods.* and *Presiding Bishop*. Thus,

10  Tasion was required to provide Ubiquiti with notice prior to instituting this lawsuit.

11          Accordingly, the Court will dismiss Tasion's breach of express warranty claim against

12  Ubiquiti. The question thus becomes whether this dismissal should be without prejudice and with

13  leave to amend, or with prejudice. Leave to amend should be "freely given when justice so

14  requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has instructed that the same factors used to

15  assess a motion for leave to amend apply in determining whether to dismiss a complaint without

16  leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of

17  amendment; and (5) whether plaintiff has previously amended his complaint. *See Schmier v. U.S.*

18  *Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002).

19          At the hearing on the instant motion, Plaintiffs claimed that Tasion had, in fact, provided

20  Ubiquiti with oral notice at some point prior to institution of this suit by employing the return

21  merchandise authorization ("RMA") process. The Court is deeply concerned that Plaintiffs waited

22  until the eleventh hour before raising this fact. This fact is not alleged in either the original

23  complaint nor the FAC. At no point in their opposition to Defendants' motion to dismiss – which

24  squarely raised these notice questions – did Plaintiffs ever contend that pre-suit notice had been

25  provided to Ubiquiti. Rather, they simply argued that notice was not required. In the FAC, besides

26  a boilerplate assertion that "prior complaints by Plaintiffs and all other purchasers of TOUGHCable

27  sufficed to give Defendant Ubiquiti notice and an opportunity to cure," the only reference to

28  Ubiquiti being provided notice by Tasion is reference to letters sent in October 2013 – well after this

**United States District Court**
For the Northern District of California

1  suit was filed.  Instead, it was not until the hearing on this motion, after the Court had indicated its

2  belief that Tasion was, in fact, required to have provided notice to Ubiquiti, that Plaintiffs' counsel

3  raised this new allegation.  This is particularly troubling because the fact in question – Tasion's

4  alleged notice to Ubiquiti – is one that has been in Tasion's possession since the institution of this

5  suit.

6          While the Court finds that this conduct begins to raise the spectre of "bad faith," the Court is

7  not willing on this record to ascribe unethical behavior on the part of Plaintiffs or their counsel.

8  Rather, it appears that Plaintiffs have inexplicably, and unduly, delayed asserting this new fact.

9  However, undue delay is itself an insufficient ground for denying leave to amend, and the Court

10  finds that the simple fact that Defendants were required to file a motion to dismiss on notice grounds

11  is insufficient "prejudice."  *See Home Savings of Am. v. Felipe*, No. C12-01419LB, 2013 WL

12  1856502, at *5 (N.D. Cal. May 2, 2013) ("[D]elay alone is insufficient to justify denial of leave to

13  amend.").  Without Plaintiffs alleging in detail the putative notice Tasion allegedly provided

14  Ubiquiti, the Court cannot assess whether Plaintiffs' amendment will be futile.  Accordingly, the

15  Court will not employ the harsh remedy of foreclosing a possibly meritorious claim based on this

16  record.

17          The Court will permit Plaintiffs one final opportunity to assert a breach of express warranty

18  claim against Tasion.  Accordingly, Plaintiffs' breach of express warranty claim against Ubiquiti is

19  **DISMISSED** with leave to amend.  However, had Plaintiffs timely alleged the one fact on which its

20  breach of express warranty claims now hang, the need for at least part of the prior motion practice

21  may have been obviated.  Accordingly, Plaintiffs' counsel is **ORDERED** to **SHOW CAUSE** why

22  this Court should not order counsel and/or Plaintiffs to pay Defendants' attorneys fees incurred in

23  drafting that portion of their prior motion to dismiss which addressed *Tasion*'s breach of express

24  warranty claim against Ubiquiti.  Plaintiffs' response shall be filed within 7 days of this order, shall

25  not exceed 5 pages in length.  No response brief shall be filed unless and until ordered by the Court.

26          b.      Tasion Did Not Provide Timely Notice to Defendant Streakwave

27          "To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a]

28  buyer must plead that notice of the alleged breach was provided to the seller *within a reasonable*

United States District Court

For the Northern District of California

1   *time* after discovery of the breach.'" *Alvarez*, 656 F.3d at 932 (emphasis added) (quoting *Stearns v.*

2   *Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010)).  There is little authority

3   interpreting what factors a court should consider in assessing whether notice was provided in a

4   "reasonable time."  However, under California Commercial Code § 1205, "[w]hether a time for

5   taking an action required by this code is reasonable depends on the nature, purpose, and

6   circumstances of the action."  Cal. Comm. Code § 1205(a); *see also* Cal. Civil Jury Instructions

7   (BAJI) 9.90 ("What amounts to a reasonable time depends on the circumstances and the kind of

8   product involved.").  "The question of whether notice was reasonable must be determined from the

9   particular circumstances and, where but one inference can be drawn from undisputed facts, the issue

10  may be determined as a matter of law."  *Fieldstone*, 54 Cal. App. 4th at 370.

11       The attachments to the first amended complaint reveal that Tasion provided Streakwave

12  notice of the alleged breach of warranty regarding the TOUGHCable products on October 3, 2013.

13  *See* FAC, Ex. B.  Thus, notice was provided to Streakwave after this action was filed (April 19,

14  2013) but before Tasion filed its proposed first amended complaint and motion for leave to file the

15  amended complaint on October 28, 2013.  According to the allegations in the Complaint, Tasion

16  became aware of the facts underlying its breach of warranty claims, at the latest within a "couple of

17  weeks" of May 2012. FAC ¶¶ 69, 70.[1]  However, it did not give notice to Streakwave for

18  approximately 16 months – including six months after it filed the instant action against Ubiquiti.

19       As discussed above, the purpose of the notice requirement is to  "allow the seller the

20  opportunity to repair the defective item, reduce damages, avoid defective products in the future, and

21  negotiate settlements." *Cardinal Health.*, 169 Cal. App. 4th at 135.  It is also designed to prevent

22  claims from becoming stale.  *See id.*  None of these requirements is served by a party waiting over

23  one year they become aware of the alleged breach of warranty to provide the seller notice.  Such a

24  delay limits the seller's ability to investigate and repair the defective item, reduce the buyer's

25  damages, and prevent further defects in the future.  Numerous courts have found shorter periods too

27  _____

28  [1] Tasion argues that its customer's TOUGHCables failed continually from May 2012 through present.  The Court finds this argument unpersuasive given the allegations in the Complaint.  By mid-2012, Tasion knew sufficient information to pursue its breach of warranty claims.

United States District Court
For the Northern District of California

1  long to satisfy the notice requirement. *See, e.g.*, *Davidson v. Herring-Hall-Marvin Safe Co.*, 131

2  Cal. App. 2d Supp. 874, 876 (Cal. Sup. Ct. App. Div. 1954) (finding 15 months between discovery

3  of defect and notice unreasonable as a matter of law and suggesting delays of four to six months

4  would be unreasonable); *Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918, 921 (1943) (finding

5  delay of four months unreasonable as a matter of law); *see also Fieldstone*, 54 Cal. App. 4th at 370-

6  71. Accordingly, on the facts of this case, the Court finds that Tasion's notice was untimely as a

7  matter of law.

8       Accordingly, Tasion's breach of express warranty claim against Streakwave is **DISMISSED**

9  with prejudice.

10              c.   It Is Unclear Whether Freeway Networks and Peak Internet Provided

11                   Adequate Notice to Defendants

12      Freeway Networks provided notice to Ubiquiti and Streakwave by mailing letter to these

13  entities on October 18, 2013. FAC Exs. A, B. Peak Internet provided notice by sending essentially

14  the same letter to the Defendants on October 25, 2013. *Id.* Thus, these parties provided notice six

15  business days and one business day, respectively, before they sought leave to file an amended

16  complaint. However, the motion for leave to amend was not granted until December and, therefore,

17  Streakwave was not a party to this action until that date. That is the date by which timeliness of the

18  notice should be measured since that determines how much advance notice the plaintiff gave before

19  the defendant became legally implicated in this suit. Accordingly, the Court finds that Freeway

20  Networks and Peak Internet provided adequate "pre-suit" notice.

21      However, it is unclear when Freeway Networks and Peak Internet knew, or should have

22  known, of the alleged defect and whether the notice was reasonably prompt after Freeway Networks

23  and Peak Internet learned of the defect. In particular, it is unclear when these Plaintiffs'

24  TOUGHCables began to fail. Accordingly, the Court cannot on these facts assess whether the pre-

25  suit notice was provided within a reasonable timeframe. Although these Plaintiffs' claimed at the

26  hearing that they purchased the cables in 2011, they failed to plead the date of purchase in the

27  complaint and, regardless, the date of purchase is not the date in which they learned of the defect.

28  Accordingly, Plaintiffs have not pled sufficient facts from which the Court can determine whether

United States District Court

For the Northern District of California

1   their notice was timely.  Accordingly, Freeway Networks' and Peak Internets' breach of warranty

2   claims, both express *and implied*,[2] are **DISMISSED** with leave to amend.

3   C.    <u>Peak Internet's Express and Implied Warranty Claims Under Colorado Law Fail (Counts</u>

4         <u>Eight and Nine)</u>

5         Like California law, Colorado law requires that plaintiffs provide adequate notice before they

6   may assert express or implied warranty claims.  Colorado's notice provision is identical to

7   California's.  *Compare* Cal. Comm. Code § 2607, *with* Colo. Rev. Stat. § 4-2-607(3)(a).  Colorado

8   law, however, does not require a purchaser "to give notice of such injury to a remote manufacturer

9   prior to initiating litigation against such manufacturer.  *See Cooley v. Big Horn Harvestore Sys.,*

10  *Inc.*, 813 P.2d 736, 742 (Colo. 1991) (en banc).  At the same time, the Colorado Supreme Court has

11  noted that a "remote manufacturer may raise as its own defense the buyer's failure to give timely

12  notice to the immediate seller."  *Id.*  Thus, because the Court has concluded that Plaintiff failed to

13  allege that Peak Internet provided adequate notice to Streakwave – the immediate seller – the Court

14  concludes that Plaintiffs' Colorado based claims must be **DISMISSED** with leave to amend.

15  D.    <u>Networks' Express and Implied Warranty Claims Fail (Counts Ten and Eleven)</u>

16        Like California law, Arizona law requires that plaintiffs provide adequate notice before they

17  may assert express or implied warranty claims.  Arizona's notice provision is identical to

18  California's  *Compare* Cal. Comm. Code  § 2607, *with* Ariz. Rev. Stat.  § 47-2607.  Significantly,

19  however, Arizona courts have expressly held that the Complaint itself may constitute notice.  *See*

20  *Davidson v. Wee*, 379 P.2d 744, 749 (Ariz. 1963) (in banc); *see also Yee v. Nat'l Gypsum Co.*, No.

21  CV-09-8189-PHX, 2010 WL 2572976 (D.Ariz. June 22, 2010) ("The notice 'need take no special

22  form,' and the complaint itself may provide adequate notice.").  At the same time, like California

23  law, Arizona law requires that the notice in question be provided within a reasonable time.  *See, e.g.*,

24  *Burge v. Freelife Intern., Inc.*, No. CV 09-1159-PHX, 2009 WL 3872343, at *5-6 (D. Ariz. Nov. 18,

25

26

27        [2] Breach of implied warranty claims are subjected to the reasonable pre-suit notice
    requirement.  *See, e.g.*, *S. Cal. Stroke Rehab. Assocs., Inc. v. Nautilus, Inc.*, 09CV744-CAB MDD,
28  2012 WL 4364144 (S.D. Cal. Sept. 21, 2012).

United States District Court

For the Northern District of California

2009).  For the reasons Freeway Networks' California claims against Ubiquiti and Streakwave fail, its Arizona claims are likewise **DISMISSED** with leave to amend.

However, in order to recover economic damages under a theory of implied warranty of merchantability, a plaintiff must be in privity with the defendant.  *See Florey v. Sivlercrest Indus., Inc.*, 633 P.2d 383, 388 (Ariz. 1981) ("Although we allow recovery for 'breach of implied warranty' without privity under the theory of strict liability, plaintiffs cannot recover purely economic damages under that theory.  And although we allow recovery for purely economic damages for breach of U.C.C. warranties, plaintiffs cannot recover under that theory . . . due to their lack of privity with that defendant.")  Here, the only damages alleged under Count 11 are economic damages.  *See* FAC ¶ 264.  Accordingly, to the extent Freeway Networks seeks to assert an implied warranty claim against Ubiquiti, it may not base such a claim on economic damages.

E.      Count Twelve Is Dismissed to the Extent It Seeks Monetary Relief on Behalf of a Class

In Count Twelve, Peak Internet asserts a claim under the Colorado Consumer Protection Act ("CCPA") against all Defendants on behalf of a class.  The damages provision of the CCPA provides:

> Except in a class action or a case brought for a violation of section 6-1-709, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable [for actual or statutory damages].

Colo. Rev. Stat. § 6-1-113(2) (emphasis added).  The District Court of Colorado has interpreted this provision as expressly excluding class actions seeking monetary relief from the CCPA.  *See Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212 (D. Colo. 2012).  The court noted that § 6-1-113(2) "limits such liability [under the CCPA] to specified remedies, and expressly states that such remedies are not applicable in class actions.  By logical extension, the CCPA creates no statutory liability for a defendant in a private class action." *Id.* at 1220.  The Court agrees.  Accordingly, Peak Internet's CCPA claim is **DISMISSED** to the extent it seeks to assert a class action for monetary relief.

United States District Court

For the Northern District of California

F.      Plaintiffs' Claim Under the Magnuson Moss Warranty Act Is Dismissed With Prejudice

The Magnuson-Moss Warranty Act ("MMWA") creates a federal, private cause of action to enforce the terms of express or implied warranties. *Apodaca*, 2013 WL 6477821, at *11; *see also* 15 U.S.C. § 2310(d)(1) ("[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring a suit for damages and other legal and equitable relief . . . ."). Because Plaintiffs in this action base their MMWA claim based on the failure of Defendants to comply with various state law warranty laws, their MMWA claim necessarily hinges on those state law warranty claims. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008); *see also Apodaca*, 2013 WL 6477821, at *11 ("Because Magnuson-Moss applies state warranty law, a plaintiff bringing a claim under Magnuson-Moss must adequately plead a warranty claim under state law."). Accordingly, Plaintiffs' MMWA claim fails insofar as all remaining state law warranty claims have been dismissed.

However, Plaintiffs' MMWA claim suffers from a more fundamental defect. Under the plain terms of § 2310(d)(1), the private cause of action under the MMWA applies only to "consumers" who are damaged by a failure to comply with a written warranty. 15 U.S.C. § 2310(d)(1); *see also IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 999 (N.D. Ill. 2008) ("Only a 'consumer' may recover under the MMWA."). "Consumer" is, in turn, defined as

> a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty . . . or under applicable State law to enforce against the warrantor . . . the obligations of the warranty.

15 U.S.C. § 2301(3). Key to this definition is the definition of "consumer product." Defendants argue that Plaintiffs' MMWA claim necessarily fails because the TOUGHCable product at issue is, by law, not a "consumer" product and, therefore, the MMWA is inapplicable. The MMWA defines "consumer product" as

> any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in

17

1                      any real property without regard to whether it is so attached or

2                      installed).

3    *Id.* § 2301(1).  Under this definition, "if a *type* of product is 'normally used' for consumer purposes,

4    then that product in any given case is a consumer product within the meaning of the Act regardless

5    of whether it was used for commercial purposes."  *Najran Co. for General Contracting & Trading v.*

6    *Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1099 (S.D. Ga. 1986).

7          The Court concludes that the TOUGHCables at issue in this case are not "consumer

8    products" for purposes of the MMWA.  Plaintiffs argue the TOUGHCables are "consumer products"

9    because they are nothing more than a Cat5e cable – a common ethernet connection that most people

10   will use in their homes to connect their computers to a network or the internet.  However, as the

11   Seventh Circuit has recognized, in evaluating the "type" of product for these purposes, the

12   "[a]nalysis must be more fine-grained."  *Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469

13   F.3d 1071, 1072 (7th Cir. 2006).  In that case, the district court had dismissed a MMWA claim on

14   the basis that a single engine airplane could not, as a matter of law, be a "consumer product," even if

15   used for personal transportation or recreation.  *Id.*  The Seventh Circuit reversed, finding that

16   "airplanes" was too large a category for analysis; instead, it found that "single-engine planes used

17   for personal transport or recreation may be consumer products even though Antonov 225s and

18   skycrane helicopters are not."  *Id.*

19         Here, it cannot be reasonably disputed that a run-of-the-mill Cat5e cable constitutes a

20   "consumer" product.  But Plaintiffs' entire case is premised on the allegations that the

21   TOUGHCables were designed and marketed to not be simple Cat5e cables.  Rather, they are alleged

22   to have been marketed as "Outdoor carrier class shielded Ethernet cable[s]," that they are

23   "industrial-grade shielded Ethernet cable[s]," and are capable of performing in "the harshest weather

24   and environments."  FAC ¶ 5.  The TOUGHCables were sold (and purchased by Plaintiffs) in boxes

25   of 1,000 feet.  Under these circumstances, the Court cannot conclude that it is "not uncommon" for

26   an individual to need over three football fields of industrial-grade, shielded, ethernet cable for

27   "personal, family, or household purposes."

28

**United States District Court**
For the Northern District of California

1    Plaintiffs point to the FTC's interpretation of statutory language in support of their argument

2  that TOUGHCables are consumer products.  Specifically, the FTC has stated, in explaining revisions

3  made to the 16 C.F.R. 700.1:

4         Additional text is added after the first sentence to eliminate the
          continued misunderstanding – evidenced by two of the comments – of
5         the standard for determining whether a product is a "consumer
          product" under the Act.  These comments indicated confusion as to
6         whether a product used for both commercial and personal purposes,
          such as a passenger car used by a sales representative to make
7         business calls, is covered by the Act.  The additional text sets out the
          correct determining standard; namely, that it is the normal use of the
8         category of products (e.g., sedans), not the use to which an individual
          product (e.g., a particular sales representative's sedan) is normally
9         placed.

10  42 Fed. Reg. 36,112 (July 13, 1977).  The Court disagrees with Plaintiffs' reading of this

11  interpretation.  What this regulation stands for is the proposition that it does not matter *why* a given

12  entity or individual used a product.  Rather, one must look to the category of product and determine

13  if it is "normally" used for personal, family, or household purposes.  Where Plaintiffs go astray,

14  however, is by viewing the interpretation's use of the word "category" far too broadly.  For example,

15  not all cars (armored military vehicles), planes (Boeing 747s), or computers (large institutional

16  supercomputers), are consumer products just because or because they belong to a larger category

17  some subset of which is for consumer use.  As the Seventh Circuit has noted, the inquiry must be

18  more "fine-grained" than broad, undifferentiated categories.  *Waypoint*, 469 F.3d at 1072.

19  Conducting this more fine-grained analysis, the Court finds that commercial-grade, shielded ethernet

20  cables sold in 1000 ft long spools are not "consumer products" simply because, stripped of

21  everything that made them distinctive (and attractive to Plaintiffs), they are nothing more than Cat5e

22  ethernet cables.

23    Plaintiff's MMWA claim is **DISMISSED** with prejudice.

24                    **V.    CONCLUSION**

25    For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and

26  **DISMISSES** Plaintiffs' FAC.  This dismissal is with prejudice as to Tasion's warranty claims

27  against Defendant Streakwave and as to all Plaintiffs' MMWA claims.  Dismissal is without

28

United States District Court

For the Northern District of California

1   prejudice and with leave to amend as to all other claims.  Plaintiffs shall file their Second Amended

2   Complaint within 30 days of this order.

3         Further, Plaintiffs' counsel is **ORDERED** to **SHOW CAUSE** why they should not be

4   required to pay Defendants' expenses incurred in drafting that portion of their motion to dismiss

5   addressing Plaintiff Tasion's breach of warranty claims against Tasion.  Plaintiffs' response shall be

6   filed within 7 days of this order, shall not exceed 5 pages in length.

7         This order disposes of Docket Nos. 56 and 57.

8

9         IT IS SO ORDERED.

10

11  Dated:  March 14, 2014

12

13                                              _____
                                                EDWARD M. CHEN
14                                              United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28