1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8  TASION COMMUNICATIONS, INC.,              No. C-13-1803 EMC

9              Plaintiff,

10         v.                                **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANTS'
11  UBIQUITI NETWORKS, INC.,                 MOTIONS TO DISMISS**

12             Defendant.                    **(Docket Nos. 86, 87)**

13  _____/

14

15                    I.    **INTRODUCTION**

16         Pending before the Court is Defendant Ubiquiti Networks, Inc.'s ("Ubiquiti") motion to

17  dismiss the third, seventh, and ninth causes of action from Tasion Communications Inc.'s ("Tasion")

18  second amended complaint ("SAC") and Defendant Streakwave Wireless, Inc.'s ("Streakwave")

19  motion to dismiss the fourth through tenth causes of action.  For the following reasons, the motions

20  to dismiss will be **GRANTED** in part and **DENIED** in part.

21                    II.   **FACTUAL & PROCEDURAL BACKGROUND**

22         On August 26, 2013, this Court granted in part and denied in part Ubiquiti's motion to

23  dismiss Tasion's original complaint.  *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C -

24  13-1803 EMC, 2013 WL 4530470 (N.D. Cal. Aug. 26, 2013).  The original complaint asserted only

25  causes of action for negligence and negligent misrepresentation, and the Court dismissed the

26  complaint to the extent Tasion sought economic losses.  *Id.* at *12.  In December 2013, the Court

27  granted Tasion leave to file an amended complaint.  The amended complaint added two new

28  plaintiffs – International Power Systems, LLC (d/b/a Freeway Networks) and Fundamental Holdings

United States District Court

For the Northern District of California

Corp. (d/b/a Peak Internet) – and asserted various breach of warranty causes of action under California, Colorado, and Arizona law.  Dkt. No. 44.  On March 14, 2014, the Court granted Defendants' motion to dismiss the express warranty claims, finding that there were insufficient allegations that the Plaintiffs provided notice as required under the various state laws.  *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014).  The Court's dismissal was with prejudice as to Tasion's warranty claims against Defendant Streakwave and Plaintiffs' Magnuson Moss Warranty Act claims.  Leave to amend was granted as to all other claims.  *Id.* at *12.  Plaintiffs have now filed a 71-page SAC.

As in the First Amended Complaint, the SAC alleges that in late 2010, Ubiquiti announced a new shielded ethernet cable product – named TOUGHCable – which was designed to provide the wire connections necessary for the installation of Ubiquiti radio transceiver equipment.  *Id.* ¶ 3. Ubiquiti heavily promoted this cable to its customers, and represented that it was an "[o]utdoor carrier class shielded Ethernet cable" that was "built to perform even in the harshest weather and environments" and would protect networks "from the most brutal environments."  *Id.* ¶ 5.  Plaintiffs allege that these representations were false, and that the TOUGHCable product was "entirely unsuited for any outdoor use whatsoever."  *Id.* ¶¶ 6-7.  Rather, within a year of installation, TOUGHCable would begin to corrode, crack, and split.  *Id.* ¶ 8.  Plaintiffs allege, on information and belief, that this was caused by a "complete lack of UV (ultraviolet) protection."  *Id.*  ¶ 44.  Once the outer shielding failed in this way, "the cable . . . became a sponge, wicking up water from the outside, drawing it inside the cable, and, like a straw, providing a channel for the water to flow down directly into sensitive and delicate radio equipment, often destroying the equipment."  *Id.* ¶ 8.  As a result of TOUGHCable's flaws, Plaintiffs allege that numerous customers lost their internet connection.  *Id.* ¶ 59.  Replacing the TOUGHCable product required each customer's location to be completely rewired in order to protect the sensitive radio equipment at each location.  *Id.* ¶ 60.

The fundamental allegations underlying Plaintiffs' causes of action remain unchanged between the first and second amended complaints, and the Court will not restate them here.  The SAC, however, includes expanded allegations relating to Plaintiffs' notice to Defendants of the defect in the TOUGHCable product.  These allegations are discussed below.

**United States District Court**
For the Northern District of California

A.       Tasion's Allegations Relating to Notice

Tasion is a Canadian corporation that offers VoIP services and high speed internet connectivity for business and residential subscribers in Panama and Canada. *Id. ¶* 26. Tasion alleges that it is a small company with only 15 employees (not including its president). *Id.*   ¶ 64, 65. Six of these employees are employed in Canada while nine are employed in Panama. *Id.* ¶ 66.

Tasion purchased its first order of TOUGHCable from Defendant Streakwave on March 8, 2011. *Id. ¶* 72. Around this time, Tasion began "using the TOUGHCable for all of its outdoor installations." *Id.*   ¶ 78. Less than a year later, in May 2012, one of Tasion's Panamanian customers reported that its internet connection was non-operative. *Id.* ¶ 79. Later that month, two additional customers lost internet connection. *Id.* ¶ 83. Between June and August 2012, nine additional customers lost their internet connection. *Id.*   ¶¶ 84-85. In September 2012, Tasion's CEO, David Veilleux, began researching on the internet to determine the cause of the high rate of internet failure among its customers in Panama during the rainy season. *Id. ¶* 88. As a result of this search, Mr. Veilleux came across posts on Ubiquiti's website indicating that the TOUGHCable was prone to dry in the sun, causing it to become a "straw" soaking water up and directing it directly into the internal electronics of the radios, power supplies, routers, etc. *Id.* As a result of this research, Mr. Veilleux determined that the TOUGHCable was defective and was the cause of the internet failures. *Id. ¶* 89.

On October 9, 2012, Mr. Veilleux sent an email to Matt Hardy, Ubiquiti's Vice President of Technology Applications, and Jon Hoeweler, the Account Manager at Streakwave Wireless. In this email, Mr. Veilleux noted that "As you are no doubt aware, [the TOUGHCable] was defective and we are now having to  roll trucks, men and equipment to change out the cable on client installs and infrastructure radios." *Id. ¶* 91. He then stated "I would like to know what your companies' position is to compensate us, not only for the defective cable but for our costs to replace the cable and the service credits we have had to provide our clients for not having service." *Id.* He then asked both Mr. Hardy and Mr. Hoeweler why they had not advised their clients about the TOUGHCable's problems. *Id.* One week later, Ubiquiti opened up a Return Merchandise Authorization for Tasion. *Id. ¶* 93. At no point, however, has Ubiquiti offered to pay for the damage caused by their defective

cable. *Id.* ¶ 104.  On October 3, 2013 – after the filing of this suit – Tasion provided formal notice of breach of warranty on behalf of a class to both Ubiquiti and Streakwave. *Id.* ¶ 105.

B.     <u>Freeway Networks' Allegations Relating to Notice</u>

International Power Systems, d/b/a Freeway Networks, ("Freeway Networks") is an Arizona limited liability corporation performing installation services for wireless internet in Arizona. *Id.* ¶ 27.  It has no full-time employees, but utilizes independent contractors as needed. *Id.* ¶ 109.

On February 21, 2011, Freeway Networks placed its first order of TOUGHCable through Streakwave. *Id.* ¶ 116.  It then purchased additional boxes of TOUGHCable in September 2011, October 2011, and February 2012. *Id.* ¶ 121.  In April 2012, Freeway Networks attempted to purchase additional TOUGHCable, but was informed by Streakwave personnel that TOUGHCables were no longer available. *Id.* ¶ 122.  Streakwave informed Freeway Networks, however, that alternative cables were available and would not "turn green in sunlight." *Id.*  Freeway Networks alleges that this statement demonstrates that Streakwave was aware of the defect in the TOUGHCables in April 2012, thus obviating the need for Freeway Networks to provide Streakwave notice. *Id.* ¶ 124.

In March 2013, Freeway Networks' president, Benjamin Wold,  discovered the defect in the TOUGHCables. *Id.* ¶ 125.  On March 7, 2013, he made a post on a forum hosted by Ubiquiti. *Id.* In this post, he described discovering the defect and spoke about the costs incurred as a result of the defect. *Id.*  The following day, Mr. Wold spoke with Kevin Perry, a Ubiquiti employee, notifying him of the problem with the TOUGHCables and "requesting reimbursement for Freeway Networks' costs and damages caused by the defective cable." *Id.* ¶ 126.  Nine days later, Mr. Wold followed up with an e-mail "detailing losses incurred as a result of the defective TOUGHCable, including pictures and attachments, and a demand for compensation." *Id.* ¶ 127.  Ubiquiti "offered to replace the TOUGHCable with its newer TOUGHCable product, and also offered a Ubiquiti radio product in compensation. . . .  Mr. Wold declined this offer." *Id.* ¶ 128.  Mr. Wold followed up with additional emails on May 29, 2013 and July 26, 2013, but Ubiquiti did not respond. *Id.* ¶ 129.

United States District Court

For the Northern District of California

1   On October 18, 2013, Freeway Networks provided "written notice of breach of warranty on

2   behalf of a class to both Ubiquiti and Streakwave." *Id.* ¶ 133.

3   C.   Peak Internet's Allegations Regarding Notice

4   Fundamental Holdings, d/b/a Peak Internet ("Peak Internet") is a Delaware corporation,

5   based in Colorado, which provides internet and telephone connectivity for both homes and

6   businesses in Colorado. *Id.* ¶ 28.  In Summer 2012, Peak Internet had two-and-a-half employees – a

7   full time receptionist, a full-time contractor, and a part-time contractor. *Id.* ¶ 135.

8   On October 12, 2011, Peak Internet placed its first order of TOUGHCable through

9   Streakwave. *Id.* ¶ 142.  During Spring 2012, Peak Internet attempted to purchase more

10  TOUGHCable, but was informed by Streakwave it was not available. *Id.* ¶ 147.  During the

11  Summer of 2012, Peak Internet began to receive reports of customer outages, and investigation

12  revealed water inside equipment. *Id.* ¶ 148.  In June 2012, after between ten and fifteen customer

13  failures, Peak Internet's owner, Jayson Baker, determined that the TOUGHCable was the cause of

14  Peak Internet's customer's failures. *Id.*  ¶ 149.  That same month, Mr. Baker informed a Streakwave

15  sales representation that the TOUGHCables it had purchased were "bad." *Id.* ¶ 150.

16  On October 25, 2013, Peak Internet provided formal written notice of  breach of warranty on

17  behalf of a class to both Ubiquiti and Streakwave. *Id.* ¶ 157.

18  The SAC asserts ten causes of action: (1) Negligence (against Ubiquiti); (2) Negligent

19  Misrepresentation (against Ubiquiti); (3) Breach of Express Warranty (against Ubiquiti); (4) Breach

20  of Express Warranty (by Peak Internet and Freeway Networks against Streakwave); (5) Breach of

21  Implied Warranty of Merchantability (by Peak Internet and Freeway Networks against Streakwave);

22  (6) Breach of Contract (against Streakwave); (7) Breach of Express Warranty (by Peak Internet

23  against Ubiquiti and Streakwave under Colorado law); (8) Breach of Implied Warranty of

24  Merchantability (by Peak Internet against Streakwave under Colorado law); (9) Breach of Express

25  Warranty (by Freeway Networks against Ubiquiti and Streakwave under Arizona law); (10) Breach

26  of Implied Warranty of Merchantability (by Freeway Networks against Streakwave under Arizona

27  law).  Ubiquiti has moved to dismiss the third, seventh, and ninth causes of action while Streakwave

28  has moved to dismiss the fourth through tenth causes of action.

# III.   DISCUSSION

Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.

A.   Ubiquiti's Motion to Dismiss Plaintiffs' Breach of Express Warranty Cause of Action Under California Law Will Be Granted in Part and Denied in Part

The Plaintiffs' third cause of action asserts a claim for breach of express warranty against Ubiquiti under California law.  The Defendants contend that Plaintiffs (1) failed to give them the notice required under the California Commercial Code; and (2) that the alleged statements constituting the basis of the warranty claims constitute "mere puffery"; and (3) Plaintiffs have failed to adequately allege reliance.

   1.   Plaintiffs Were Required to Provide Notice to Ubiquiti

Under the California Commercial Code, a buyer must, "within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Cal. Comm. Code § 2607(3)(A).  As discussed at length in the Court's prior order dismissing the first amended complaint with leave to amend, California law generally provides that this notice requirement "is not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt." *Greenman v. Yuba Power*

*Prods., Inc.*, 59 Cal. 2d 57, 61 (1963) (in bank).  The rationale for this limitation is the concern that it will become a "booby-trap for the unwary," particularly injured consumers who are "seldom steeped in the business practice which justifies the rule, and at least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings." *Id.*

However, the California Court of Appeal has narrowed the application of the *Greenman* rule to those cases where its rationale applies.  In *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357 (1997), *superseded by statute on other grounds as recognized by Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194 (2008), the court found that the plaintiff – a home builder – was required to give notice to the remote manufacturer of defective sinks.  After citing *Greenman*'s discussion of the risks the notice requirement would present to unwary consumers, the court stated, "[t]hat is hardly the situation where, as here, plaintiff is a sophisticated development company which has built many thousands of homes over the last two decades." *Id.* at 369.  As this Court noted previously, Courts have viewed *Fieldstone* as applying where the plaintiff is "sophisticated." *Tasion*, 2014 WL 1048710, at *5.  Thus, in *In re Ford Motor Co. E-350 Van Prods. Liability Litigation (No. II)*, No. C03-4558 (HAA), 2008 WL 4126264 (D.N.J. Sept. 2, 2008), the district court found that a religious non-profit entity that had purchased a single van to "transport church members to retreats, volunteer events and other community functions" did not have to give notice to a remote manufacturer under California law. *Id.* at *11.  The Court noted that the entity was "not in the business of purchasing vans" and, unlike the developer in *Fieldstone*, was "likely entirely unaware of its rights vis a vis Defendant Ford until it received legal advice." *Id.*

In its previous dismissal order, the Court rejected Tasion's argument that it was not a "sophisticated" entity as defined by *Fieldstone* because it was a "small company with a single operations person, who manages a small workforce in the newly developing field of wireless telecommunications." *See Tasion*, 2014 WL 1048710, at *7.  First, the Court noted that there were no allegations in the Complaint regarding Tasion's size. *Id.*  Second, the Court noted that Tasion's First Amended Complaint evidenced sufficient sophistication insofar as it alleged that Tasion (1) provides "high speed internet connectivity for business and residential subscribers in locations

*around the world*, including Panama," and (2) that it "installed and serviced equipment in remote locations." *Id.* at *6.

In opposing Defendants' motion to dismiss the SAC, however, Plaintiffs' continue to argue that they are not "sophisticated" and were therefore not required to give notice to Ubiquiti. They support this argument by pointing to new allegations as to their relative small workforce and scope of operations. *See, e.g.*, SAC ¶ 64 (listing Tasion's employees at 15); SAC ¶ 107, 109 (stating Freeway Networks is owned by two individuals with no full time staff, only hired contractors); SAC ¶ 135 (stating that Peak Internet has two-and-a-half employees).[1]

Despite these additional allegations, the Court finds that Plaintiffs were required to give notice to Ubiquiti. As stated above, the California Supreme Court held that "injured consumers"[2] need not give notice to remote manufacturers for two reasons: (1) "The injured consumer is seldom steeped in the business practice which justifies the rule"; and (2) "until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings." *Greenman*, 59 Cal. 2d at 61. Here, notwithstanding the relatively small size of Plaintiffs' operations, neither of these rationales is furthered by excusing Plaintiffs from the notice requirement. First, Plaintiffs are sufficiently "steeped in the business practice" that justifies the notice requirement. The notice requirement is intended to allow sellers the "opportunity to repair the defective item, reduce damages, avoid defective products in the future and negotiate settlements." *Cardinal Health 301 v.*

---

[1] At least one of the revisions to the SAC appears to have altered a fact the Court identified in its prior order as a basis for finding Tasion sophisticated. As indicated above, the Court noted how the FAC alleged that Tasion provided "high speed internet connectivity for business and residential subscribers in locations *around the world*, including Panama." *See Tasion*, 2014 WL 1048710, at *6 (quoting the FAC). In the SAC, however, this fact has been modified to read Tasion is "a telecommunications provider with operations in Canada and Panama." SAC ¶ 61.

[2] The Court notes that Plaintiffs are not "consumers" as traditionally defined – both generally and in various California statutes. Cal. Civ. Code § 1761(d) (defining consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes"); Cal. Civ. Code § 1791 (defining "consumer goods" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes"); Cal. Bus. & Prof. Code § 302 (defining consumer as an "individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes"); *see also* Black's Law Dictionary 335 (defining "consumer" as a "person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes").

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

*Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 135 (2008).  Here, although Plaintiffs do not sell goods, they provide telecommunication services to consumers – a technical and highly regulated industry. Plaintiffs' business operations require them to service and install equipment, for example radio receiving and broadcasting equipment at customer locations.  *See, e.g.*, SAC ¶¶ 66, 110, 136. Given the nature of this business, the Court concludes that Plaintiffs are sufficiently familiar with business practices generally designed to quickly and efficiently address problems and mitigate damages.  They are not unwary consumers to whom it would not occur to give notice to the manufacturer.

Second, this case is readily distinguishable from *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal. App. 3d 492 (1963) – the central case upon which Plaintiffs rely.  In that case, a Mormon bishop had a heating system installed in a contractor.  The installed system, however, was defective because it "would not pass the pressure test or hold any pressure or heat the building . . . because the materials used and which had been purchased by the defendant Cavanaugh from the [contractor] were unsuited for radiant heating when embodied in concrete."  *Id.* at 497.  The California Court of Appeal found that the notice requirement did not apply because "a person in the position of the [Bishop] ordinarily would not be aware of his rights as against the manufacturer until he had received legal advice predicated upon an adequate investigation of the facts as to the manufacturer's participation in the chain of events culminating in damage."  *Id.* at 515.  Notwithstanding the fact that Plaintiffs in this case did not directly deal with Ubiquiti, they were undoubtedly aware of Ubiquiti's role as manufacturer of the TOUGHCable and potential liability for the defect.  *See, e.g.*, SAC ¶ 91 (Tasion CEO sending Ubiquiti Vice President an email requesting compensation and informing of the defect); *id.* ¶ 125 (Freeway Networks owner posting that "We believe we were installing a lot of Tough Cable after the point UBNT discovered there was a problem . . . .").  Further, Plaintiffs utilized Ubiquiti products (not just TOUGHCables) extensively in their respective businesses.  *See* SAC ¶¶ 69, 113, 139.  Plaintiffs are business entities far more likely to be aware of their rights against the manufacturers than the Mormon bishop in *Cavanaugh*.

United States District Court

For the Northern District of California

1    Accordingly, given the nature of Plaintiffs' businesses, the Court finds them closer to the

2    sophisticated business entity discussed in *Fieldstone* than the unaware "injured consumer" discussed

3    in *Greenman*. Accordingly, the Court concludes that each Plaintiff was required to provide Ubiquiti

4    notice under California law for their breach of warranty claims.

5        2.    Tasion's and Freeway Networks' Notice to Ubiquiti Was Not Unreasonable as a

6              Matter of Law but Peak Internet Failed to Give Notice as Required

7    Having found that Plaintiffs were required to provide pre-suit notice to Ubiquiti under

8    California law, the question becomes whether they did, in fact, provide "reasonable" notice to

9    Ubiquiti. "To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a]

10   buyer must plead that notice of the alleged breach was provided to the seller *within a reasonable*

11   *time* after discovery of the breach.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)

12   (emphasis added). As the Court noted previously, "[t]here is little authority interpreting what factors

13   a court should consider in assessing whether notice was provided in a 'reasonable time.'" *Tasion*,

14   2014 WL 1048710, at *8. California Commercial Code § 1205 provides that "[w]hether a time for

15   taking an action required by this code is reasonable depends on the nature, purpose, and

16   circumstances of the action." Cal. Comm. Code § 1205(a); *see also* Cal. Civil Jury Instructions

17   (BAJI) 9.90 ("What amounts to a reasonable time depends on the circumstances and the kind of

18   product involved."). "The question of whether notice was reasonable must be determined from the

19   particular circumstances and, where but one inference can be drawn from undisputed facts, the issue

20   may be determined as a matter of law." *Fieldstone*, 54 Cal. App. 4th at 370.

21        a.    Whether Tasion Provided Ubiquiti with Reasonable Notice Is a Question of

22              Fact, not Susceptible to Resolution at this Stage

23   The SAC alleges that Tasion discovered that a defect in the TOUGHCables was the cause of

24   their customer's outages in September 2012. SAC ¶ 89. It then alleges that it was approximately a

25   month later that it notified Ubiquiti, by email, of the defect in question and a request for

26   compensation. *Id.* ¶ 91. Defendant Ubiquiti argues, however, that Tasion has alleged that the first

27   customer outage occurred in May 2012 and, as a result, that it is the May 2012 date that should be

28   used for discovery purposes. Dkt. No. 87, at 16. Accordingly, Defendant contends that the five

United States District Court

For the Northern District of California

1    month delay between the May 2012 discovery and the October 2012 notice is unreasonable as a

2    matter of law.  *Id.*

3          In the FAC, Tasion provided more extensive allegations about the first customer outage that

4    occurred in May 2012.  Specifically, they alleged that after "[f]urther investigation revealed that the

5    TOUGHCable which had been installed at this customer location had become brittle, cracked, and

6    discolored.  Further investigation revealed that the TOUGHCable was wicking up water from the

7    outside and the water was draining into the customer's radio, whereupon the water corroded the

8    connection to the receiving unit and shorted out the radio."  FAC ¶ 67.  Based on these allegations in

9    the FAC, this Court found that "[b]y mid-2012, Tasion knew sufficient information to pursue its

10   breach of warranty claims."  *Tasion*, 2014 WL 1048710, at *8 n.1.  However, the SAC now

11   contains none of these allegations.  Instead, as to the May 2012 outage, the SAC merely  alleges that

12   "[w]hen [Tasion] arrived, they found that the radio receiver was shorted out.  Somehow, water had

13   gotten into the radio."  SAC ¶ 81.

14         Ubiquiti argues that the allegations in the FAC represent an "admission" by Tasion.  *See* Dkt.

15   No. 94, at 9 (quoting  Schwarzer, Tashima & Wagstaffe, Cal. Prac. Fed. Civ. Proc. Before Trial ¶

16   9.23 (2014) ("Although an amended pleading may be admissible in evidence against the pleader –

17   e.g., as an admission or prior inconsistent statement by the pleader.")).  They seek to use the

18   "admission" in the FAC to "contradict" the legal conclusion Tasion seeks to make based on the SAC

19   – that it did not discover the defect until September 2012.  The Court disagrees.  First, the

20   allegations in the FAC spoke of discovery of the TOUGHCable defect after "further investigation."

21   The allegations in the FAC and SAC can be reconciled insofar as the SAC provides additional

22   allegations regarding the timing of this investigation.  Second, in *PAE Gov. Servs., Inc. v. MPRI,*

23   *Inc.*, 514 F.3d 856 (9th Cir. 2007), the Ninth Circuit stated:

24              there is nothing in the Federal Rules of Civil Procedure to prevent a
               party from filing successive pleadings that make inconsistent or even
25              contradictory allegations.  Unless there is a showing that the party
               acted in bad faith – a showing that can only be made after the party is
26              given an opportunity to respond under the procedures of Rule 11 –
               inconsistent allegations are simply not a basis for striking the pleading.

27

28

United States District Court

For the Northern District of California

1    *Id.* at 860.  Accordingly, even to the extent the SAC contains inconsistent allegations from the FAC,

2    the Court declines to draw legal conclusions from the allegations in the FAC.  *See, e.g.*, *Williams v.*

3    *County of Alameda*, — F. Supp. 2d — , 2014 WL 556008, at *3 (N.D. Cal. Feb. 10, 2014) ("[I]t is

4    well-established that an amended pleading supersedes the original pleading and renders it of no legal

5    effect, unless the amended complaint incorporates by reference portions of the prior pleading.").

6          Looking solely at the allegations of the SAC, there are plausible allegations that it was not

7    until September 2012 that Tasion discovered the defect in the TOUGHCables.  First, the SAC

8    alleges that "[b]ecause all of these failures occurred during the heart of the rainy season in Panama,

9    the Cat5e cable itself was not initially suspected as the cause of the failures."  SAC ¶ 87.  This is a

10   plausible allegation given that the direct cause of the failure – water in the broadcasting radio –

11   could have been caused by installation errors, user error, or some confluence of environmental

12   factors.  Second, the SAC includes factual allegations that Tasion began to research in September

13   2012 the cause of the failures, describes this research, and alleges that this research resulted in its

14   discovery of the TOUGHCables' defect.  *Id.* ¶ 88.  Accordingly, for pleading purposes, the Court

15   concludes that September 2012 may be used as the appropriate discovery date.

16         Further, even if the Court were to use the May 2012 date as the date of discovery, the Court

17   would not find that the resulting five month delay was unreasonable *as a matter of law*.  As the

18   Court cited in its prior order, there is at least one case in California finding a four month delay

19   unreasonable matter of law.  *See Ice Bowl v. Spalding Sales Corp.*, 56 Cal. App. 2d 918, 921 (1943).

20   However, the Court notes that the *Ice Bowl* case involved a sales contract for skates and that,

21   notwithstanding the discovery of the defect in the skates, the plaintiff continued to declare its

22   intention and willingness to pay for the skates and waited until defendant sued it for plaintiff's

23   failure to pay that the plaintiffs raised the breach claim.  *Id.* at 922.  Here, by contrast, the allegations

24   are that Tasion installed the TOUGHCables in a number of different locations.  Even if Tasion had

25   become aware in May 2012 that *one* TOUGHCable had failed, it is plausible that Tasion was

26   unaware that this failure was the result of a defect in the cable as opposed to some environmental

27   cause or user abuse or misuse.

28

United States District Court

For the Northern District of California

1    Accordingly, the nature of the TOUGHCables as well as the nature of the defect in question

2  leads the Court to conclude that a fact-finder may find that a delay of five months was reasonable

3  under the circumstances. *See Fieldstone*, 54 Cal. App. 4th at 370 ("The question of whether notice

4  was reasonable must be determined from the particular circumstances and, where but one inference

5  can be drawn from undisputed facts, the issue may be determined as a matter of law."); *cf. Pritchard*

6  *v. Liggett & Myers Tobacco Co.*, 295 F.2d 292 (3d Cir. 1961) (applying Pennsylvania law and

7  finding "[a]lthough notice was not given for approximately ten months, it cannot be said that under

8  these circumstances it was untimely and insufficient as a matter of law"); *Murphy v. Etchegaray*,

9  702 P.2d 852 (Idaho 1985) (finding six month delay, because plaintiff was "unaware of the full

10  range of problems," raised a "viable issue of untimely notice but [was] not so conclusive as to

11  compel taking the issue from the jury"); *Opp v. Nieuwsma*, 458 N.W.2d 352, 357 (S.D. 1990)

12  (finding four month delay to create a question fo fact insofar as there was "a question as to the status

13  of some or all of the animals" at issue).

14    The Court finds that questions of fact exist as to whether Tasion provided reasonable notice

15  to Ubiquiti regarding the defect in the TOUGHCables.  Accordingly, the Court declines to dismiss

16  Tasion's breach of express warranty claims on this ground.

17    b.    Whether Freeway Networks Provided Ubiquiti with Reasonable Notice Is a

18        Question of Fact, not Susceptible to Resolution at this Stage

19    The SAC alleges that Freeway Networks discovered the defective nature of the

20  TOUGHCables in March 2013.  SAC ¶ 125.  Specifically, Freeway Networks' owner posted on a

21  Ubiquiti forum that they had found the TOUGHCable's protective jacket deteriorating even on the

22  side not exposed to direct sunlight.  This spurred them to research on the forum which "confirm[ed]

23  that it's the whole batch of original touch cable that is defective." *Id.*  The SAC then alleges that in

24  March 2013 and then again in May and July 2013 that Freeway Networks notified Ubiquiti via email

25  about the defect and requested compensation. *Id.* ¶¶ 126-129.   Defendants contend, however, that

26  Freeway Networks' allegations show they had notice in April 2012, when a Streakwave

27  representative told them that the TOUGHCables were not available for purchase anymore but they

28  had replacement cables which would not "turn green in sunlight." *Id.* ¶ 123; Dkt. No. 87, at 16.

United States District Court

For the Northern District of California

1   Accordingly, Defendants argue that Freeway Networks waited almost a year before providing notice

2   to Ubiquiti.

3        The Court declines to find the allegation that Freeway Networks was informed that

4   Ubiquiti's TOUGHCables turned green in the sunlight, as a matter of law, established its awareness

5   of the defect in the TOUGHCables.  Information that the cable discolored in the sunlight does not

6   necessarily mean that the cable was defective – specifically that it allowed water into the cable – and

7   not proper for its intended uses.  Subsequent discovery may find that Freeway Networks knew, or

8   should have known, about the defect around April 2012.  At this stage, however, the Court must

9   accept as true Freeway Networks plausible allegations that it discovered the defect in March 2013.

10       c.   Peak Internet Failed to Provide Ubiquiti with the Required Reasonable Notice

11       The SAC contains no allegations that Peak Internet provided Ubiquiti with notice prior to the

12   October 25, 2013 notice sent to both Ubiquiti and Streakwave by Plaintiffs' counsel.  SAC ¶ 157.

13   This occurred roughly sixteen months after Peak Internet discovered the nature of the TOUGHCable

14   defect in June 2012.  *Id.* ¶ 149.  The Court concludes that waiting over a year to provide notice is,

15   under these circumstances, unreasonable as a matter of law.  Accordingly, Peak Internet's breach of

16   express warranty claim against Ubiquiti under California law is **DISMISSED** with prejudice.[3]

17       3.   Ubiquiti's Representations Regarding the TOUGHCables Do Not Constitute Puffery

18       California Commercial Code section 2313 governs the creation of express warranties by

19   "affirmation, promise, description, [or] sample."  Specifically, any "affirmation of fact or promise"

20   or "description of the goods" which becomes part of the "basis of the bargain creates an express

21   warranty" that the goods shall conform to such affirmations or descriptions.  Cal. Comm. Code §

22   2313(1)(a), (b).  However, "an affirmation merely of the value of the goods or a statement

---

23

24       [3] Colorado law does not require a purchaser "to give notice of such injury to a remote
    manufacturer prior to initiating litigation against such manufacturer.  *See Cooley v. Big Horn

25   Harvestore Sys., Inc.*, 813 P.2d 736, 742 (Colo. 1991) (en banc).  At the same time, the Colorado
    Supreme Court has noted that a "remote manufacturer may raise as its own defense the buyer's

26   failure to give timely notice to the immediate seller."  *Id.*

27       As discussed below, the Court finds that the SAC adequately alleges that Peak Internet
    provided Streakwave with notice of the TOUGHCable defect.  Accordingly, Peak Internet's failure

28   to give Ubiquiti notice is not fatal to the seventh cause of action (breach of express warranty under
    Colorado law) brought by Peak Internet.

1    purporting to be merely the seller's opinion or commendation of the goods does not create a

2    warranty." *Id.* § 2313(2).

3          Under this provision, statements which represent "mere puffery" do not create an express

4    warranty. *See, e.g.*, *Sanders v. Apple Inc.*, No. C08-1713 JF(PVT), 672 F. Supp. 2d 978 (N.D. Cal.

5    2009) ("Statements constituting 'mere puffery' cannot support liability under a claim for breach of

6    warranty."); *see also In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012)

7    (same). "A challenged claim is non-actionable 'puffery' if it is a '[g]eneralized, vague, and

8    unspecified assertion[] . . . upon which a reasonable consumer could not rely.'" *Long v. Graco*

9    *Children's Products*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *4 (N.D. Cal. Aug. 26, 2013).

10   The Ninth Circuit has explained that "[t]he common theme that seems to run through cases

11   considering puffery in a variety of contexts is that consumer reliance will be induced by specific

12   rather than general assertions." *Cook Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911

13   F.2d 242, 246 (9th Cir. 1990). As a result, advertising which "merely states in general terms that

14   one product is superior is not actionable. However, misdescriptions of specific or absolute

15   characteristics of a product are actionable." *Id.* (internal quotation marks omitted).

16         The Court need not go through every alleged affirmation fo fact or description regarding

17   TOUGHCable contained in the amended complaint. It is sufficient for the Court to note that,

18   contrary to Defendants' argument, the SAC contain various actionable statements which do not

19   constitute puffery. For example, the amended complaint asserts that Defendants represented that the

20   TOUGHCable were "Outdoor Carrier Class Shielded" and would protect networks "from the most

21   brutal environments with Ubiquiti's industrial-grade shielded Ethernet cable, TOUGHCable." SAC

22   ¶ 39. Similarly, they were represented that they were "built to perform even in the harshest weather

23   and environments." *Id.* Courts have found similar statements regarding the "grade" of a product or

24   components to be actionable. *See Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx),

25   2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (holding that representation that "commercial

26   grade components" were used was sufficiently specific to be actionable); *Anunziato v. eMachines,*

27   *Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (holding phrase "brand-name components" to be

28   a specific factual statement). The Court finds that representations that TOUGHCables are "outdoor

United States District Court
For the Northern District of California

1  carrier class" or built to perform in harsh weather/environments (and similar representations) are

2  sufficiently specific, and capable of being proved or disproved through discovery.  Further, the

3  Court finds that the alleged representation that TOUGHCable was "encased in a 'Weatherproof

4  Jacket'" or "Weather-Proof" are factual representations about a "specific characteristic" of the

5  TOUGHCable.  *Cook Perkiss*, 911 F.2d at 246.

6        Accordingly, Defendants' motion to dismiss on the ground that the SAC does not allege

7  actionable representations is **DENIED**.

8        4.      Plaintiffs Have Adequately Plead Reliance

9        Defendants argue that Plaintiffs have failed to allege that they relied upon any of the alleged

10  express warranty claims.  As discussed above, section 2313 requires that the alleged affirmation of

11  fact or product description form the "basis of the bargain" in order to create an express warranty.

12  Accordingly, courts have stated that plaintiffs asserting an express warranty claim must allege that

13  they read or were otherwise exposed to the representations in question.  *See, e.g.*, *Lee v. Toyota*

14  *Motor Sales, USA, Inc.*, — F. Supp. 2d — , 2014 WL 211462, at *12 (C.D. Cal. Jan. 9, 2014); *Baker*

15  *v. Bayer Healthcare Pharmaceuticals, Inc.*, No. C13-0490 THE, 2013 WL 6698653, at *7 (N.D. Cal.

16  Dec. 19, 2013) ("While a plaintiff need not have relied on the individual advertisements, plaintiff

17  must have actually been exposed to the advertising.").  Additionally, where, as here, Plaintiffs are

18  not in privity with the Defendant, courts have required reliance.  *See Keegan v. Am. Honda Motor*

19  *Co., Inc.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012 ("[I]n the absence of privity, California law requires

20  a showing that a plaintiff relied on an alleged omission or misrepresentation."); *Coleman v. Boston*

21  *Scientific Corp.*, No. 1:10-cv-01968-OWW, 2011 WL 3813173, at *4 (E.D. Cal. Aug. 29, 2011)

22  ("[P]rivity is not an absolute requirement for express warranty claims under California law, because

23  reliance on a seller's representations may provide the basis for an express warranty claim even

24  absent privity.").

25        Plaintiffs have alleged that they relied on Ubiquiti's "labeling representations set forth

26  herein" and then expressly lists the alleged representations.  *See, e.g.*, SAC ¶¶ 224, 227.  Further,

27  Plaintiffs allege that Ubiquiti notified its customers informing them that use of shielded cable would

28

United States District Court
For the Northern District of California

1  be required for Ubiquiti to honor its warranty on its radio products. *See, e.g.*, ¶ 114.  The Court finds

2  Plaintiffs have adequately alleged reliance.

3  B.  <u>Streakwave's Motion to Dismiss the Breach of Express Warranty Claims Under California,</u>

4  <u>Arizona, and Colorado Law (Counts 4, 7, and 9) Is Granted in Part and Denied in Part</u>

5  Streakwave moves to dismiss Freeway Networks' and Peak Internet's breach of express

6  warranty claims on the grounds that the alleged representations are mere puffery and that both of

7  these Plaintiffs failed to provide reasonable notice.  The Court has rejected the "puffery" argument,

8  *supra*.  The Court addresses the SAC's allegations regarding Peak Internet's and Freeway Networks'

9  notice to Ubiquiti below.

10  1.  <u>Peak Internet Has Sufficiently Alleged that It Gave Streakwave Reasonable Notice</u>

11  The SAC alleges that Peak Internet's President, Mr. Baker, informed its Streakwave

12  representative Mr. Braden that the "TOUGHCable Peak Internet had purchased from Streakwave

13  was bad" in June 2012  SAC ¶ 150.  This is alleged to have been the same month Peak Internet

14  discovered that "the TOUGHCable was the cause of the customer failures and the source of the

15  water showing up in equipment and customer locations." *Id.* ¶ 149.  Although the allegations

16  regarding this phone conversation are bare and there is no description as to whether Peak Internet

17  informed Streakwave *why* the TOUGHCable were bad, the Court finds this allegation is sufficient to

18  survive the motion to dismiss.  First, a number of jurisdictions applying the UCC's similar notice

19  requirement have held that oral notice is sufficient. *See, e.g.*, *Pay Tel Systems, Inc. v. Seiscor*

20  *Techs., Inc.*, 889 F. Supp. 152, 156 (S.D.N.Y. 1995) (citing cases).  Second, the notice in question

21  "need merely be sufficient to let the seller know that the transaction is still troublesome and must be

22  watched."  UCC 2-607 Cmt. 4; *see also Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d

23  1128, 1143 (N.D. Cal. 2010) (applying this standard).

24  Colorado law is materially similar to California law on these points. *See, e.g.*, *Prutch v. Ford*

25  *Motor Co.*, 618 P.2d 657 (Colo. 1980) (en banc) ("UCC s 2-607, comment 4, makes clear that,

26  where notice is given no formal requisites must be met.  It is sufficient if the notice lets 'the seller

27  know that the transaction is still troublesome and must be watched.'  A leading text states that 'a

28  scribbled note on a bit of toilet paper will do . . . .'" (citation omitted)).

17

United States District Court

For the Northern District of California

1    Streakwave's motion to dismiss Plaintiffs' fourth and seventh cause of action is **DENIED** as

2    to Peak Internet.

3        2.    <u>Freeway Networks Has Not Alleged that it Provided Streakwave Reasonable Notice</u>

4        The SAC alleges that Freeway Networks provided Streakwave notice on October 18, 2013 –

5    seven months after it allegedly discovered the defect in March 2013.  The Court finds this seventh

6    month delay unreasonable as a matter of law insofar as Freeway Networks, by its own allegations,

7    had complained to Ubiquiti about the nature of the defect (and their incurred damages) in March,

8    May, and July 2013.  If Freeway Networks had sufficient knowledge to provide notice to Ubiquiti on

9    these months, it could have – and should have – provided Streakwave notice around the same time.

10        Even assuming arguendo Streakwave had knowledge of the defect, courts have interpreted

11    the UCC's notice provision as requiring notice even where the seller has knowledge of the defect.

12    *See, e.g.*, *Barlow v. DeVilbiss Co.*, 214 F. Supp. 540 (E.D. Wis. 1963) ("[T]he fact that the seller has

13    knowledge of the facts constituting the breach does not render it unnecessary for the buyer to give

14    the required notice.").  As the Fifth Circuit has noted, "it is not enough under section 2-607 that a

15    seller has knowledge of the facts constituting a nonconforming tender, he must also be informed that

16    the buyer considers him to be in breach of the contract."  *Eastern Air Lines, Inc. v. McDonnell*

17    *Douglas Corp.*, 532 F.2d 957, 973 (5th Cir. 1976); *see also Acqualon Co. v. MAC Equipment, Inc.*,

18    149 F.3d 262, 267 (4th Cir. 1998) (finding that seller's actual notice that valves were deficient was

19    did not excuse buyer from providing notice because until buyer provided formal notice, seller did

20    not know that buyer "would claim that the valves' excessive leakage rates constitutes a breach of

21    contract or breach of warranty").  In other words, even if Streakwave had knowledge that there were

22    issues with the TOUGHCables, this would not have put Streakwave on notice that Freeway

23    Networks considered it to be in breach of the products' warranties.

24        Streakwave's motion to dismiss the fourth and ninth causes of action as to Freeway

25    Networks is **GRANTED**.

26

27

28

C.    <u>Streakwave's Motion to Dismiss the Breach of Implied Warranty of Merchantability Claims</u>

      <u>brought by Peak Internet and Freeway Networks (Counts 5, 8, and 10) Is Granted-in Part and</u>

      <u>Denied-in-Part</u>

To state a claim for breach of implied warranty of merchantability, Plaintiffs must allege that the TOUGHCables suffered from a "fundamental defect that renders the product unfit for its ordinary purpose." *Baba v. Hewlett Packard Co.*, No. C09-5946 RS, 2012 WL 5336971 (N.D. Cal. Oct. 26, 2012) (quoting *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010). There mere manifestation of "some" defect is insufficient. *Id.* Arizona and Colorado law are similar. *See, e.g., Greer v. T.F. Thompson & Sons, Inc.*, No. CV-10-0799-PHX-SMM, 2011 WL 5290154, at *6 (D. Ariz. Nov. 3, 2011); *Koch v. Kaz USA, Inc.*, No. 09-cv-02976-LTB-BNB, 2011 WL 2607112, at *4 (D. Colo. July 1, 2011).

Additionally, under California, Arizona, or Colorado law, a plaintiff seeking to assert a claim for breach of the implied warranty of merchantability must provide reasonable notice of the alleged breach. *See, e.g., S. Cal. Stroke Rehab. Assocs., Inc. v. Nautilus, Inc.*, No. 09cv744-CAB (MDD), 2012 WL 4364144, at *2 (S.D. Cal. Sept. 21, 2012); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1116 (D. Ariz. 2003); *Wallman v. Kelley*, 976 P.2d 330, 332 (Colo. Ct. App. 1998). For the reasons discussed above, Freeway Networks has failed to allege that it provided reasonable notice to Streakwave regarding the TOUGHCable's defects. Accordingly, the fifth cause of action (breach of implied warranty under California law), to the extent it is brought on behalf of Freeway Networks, and tenth cause of action (Freeway Networks' breach of implied warranty claim arising under Arizona law) are **DISMISSED**.

Streakwave additionally argues that the implied warranty claims fail because the TOUGHCables "worked for the ordinary purpose of transmitting intranet [sic] service signals to its customers." Dkt. No. 86, at 16. The Court disagrees. Plaintiffs have alleged that Ubiquiti advertised the TOUGHCables as providing signal transmissions in outdoor environments. They further have plausibly alleged that the TOUGHCables were, in fact, not fit for this purpose as they would (1) deform in these outdoor environments, (2) allow water into the cable, and (3) cause the radio and transmission equipment to short out. The Court finds these allegations sufficient. *Cf. Isip*

United States District Court

For the Northern District of California

1    *v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) ("We reject the notion that merely

2    because a vehicle provides transportation from point A to point B, it necessarily does not violate the

3    implied warranty of merchantability.  A vehicle that smells, lurches, clanks, and emits smoke over

4    an extended period of time is not fit for its intended purpose.").  The fact that the cables in question

5    provided internet connectivity for a period of time before becoming unusable does not mean that the

6    TOUGHCables were fit for their "ordinary purpose."

7        Streakwave's motion to dismiss the fifth cause of action (to the extent it is brought on behalf

8    of Peak Internet) and the eighth cause of action is **DENIED**.

9    D.     <u>Plaintiff's Sixth Cause of Action for Breach of Contract Will Be Struck</u>

10        In the SAC, Plaintiffs' have asserted a cause of action for breach of contract against

11    Streakwave.  This claim did not appear in either the original complaint or the FAC.  The Court

12    granted Plaintiffs' leave to amend to correct deficiencies in the FAC regarding their notice to both

13    Ubiquiti and Streakwave.  Specifically, after dismissing certain of the asserted claims with prejudice,

14    the Court stated that its dismissal was "without prejudice and with leave to amend *as to all other*

15    *claims*." *Tasion*, 2014 WL 1048710, at *12 (emphasis added).  "In cases like this one . . . where

16    leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new

17    claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon*

18    *v. Wells Fargo Bank, N.A.*, No. C10-1390, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010).

19    Plaintiffs have not sought leave to add yet another claim.  Further, the Court already permitted

20    Plaintiffs to assert contract-based claims between the original complaint and the FAC.  Their failure

21    to assert the breach of contract action in the FAC is inexcusable.  Under these circumstances, the

22    Court will **STRIKE** Plaintiff's breach of contract action.

23                     **IV.**    **CONCLUSION**

24        For the foregoing reasons, Defendants' motions to dismiss are disposed of as follows:

25       •     **Count 3** (Breach of Express Warranty Against Ubiquiti Under California Law): The

26             motion to dismiss is **GRANTED** as to Peak Internet and **DENIED** as to the other

27             Plaintiffs.

28

- **Count 4** (Breach fo Express Warranty Against Streakwave Under California Law): The motion to dismiss is **GRANTED** as to Freeway Networks and **DENIED** as to Peak Internet.

- **Count 5** (Breach of Implied Warranty of Merchantability Under California Law against Streakwave): The motion to dismiss is **GRANTED** as to Freeway Networks and **DENIED** as to Peak Internet.

- **Count 6** (Breach of Contract Against Streakwave): This count is **STRUCK** as exceeding the leave to amend provided by the Court in dismissing the FAC.

- **Count 7** (Breach of Express Warranty Against Ubiquiti and Streakwave under Colorado Law brought by Peak Internet): The motion to dismiss is **DENIED**.

- **Count 8** (Breach of Implied Warranty of Merchantability Against Streakwave Under Colorado law brought by Peak Internet): The motion to dismiss is **DENIED**.

- **Count 9** (Breach of Express Warranty Against Ubiquiti and Streakwave Under Arizona Law brought by Freeway Networks)**:** The motion to dismiss is **GRANTED** to the extent it is asserted against Streakwave and **DENIED** to the extent it is asserted against Ubiquiti.

- **Count 10** (Breach of Implied Warranty Against Streakwave Under Arizona Law brought by Freeway Networks): The motion to dismiss is **GRANTED**.

The claims dismissed are dismissed with prejudice.

This order disposes of Docket Nos. 86 and 87.


IT IS SO ORDERED.


Dated:  June 26, 2014

_____
EDWARD M. CHEN
United States District Judge

21