UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASION COMMUNICATIONS, INC., *et al.*, | No. C-13-1803 EMC |
| Plaintiffs, | |
| v. | **ORDER RE PARTIES' JOINT LETTER OF APRIL 1, 2015; AND BRIEFING SCHEDULE FOR CLASS CERTIFICATION MOTION** |
| UBIQUITI NETWORKS, INC., *et al.*, | |
| Defendants. | **(Docket No. 137)** |

Plaintiffs allege that Defendant Ubiquiti Networks, Inc. ("Ubiquiti") and its distributor sold a shielded ethernet cable product called TOUGHCable that was unsuited for its advertised outdoor use. Pending before the Court is a discovery dispute. The parties have submitted a joint letter brief regarding the dispute, which relates to Defendant's responses to certain interrogatories and requests for admission.

Plaintiffs contend that the disputed discovery requests are relevant to class certification. The deadline for Plaintiffs to file their motion for class certification is at hand – Plaintiffs' motion is due April 8, 2015. Correspondingly, Plaintiffs do not seek to compel further responses. Instead, Plaintiffs appear to seek an evidentiary sanction in the form of an "interim order that [Defendant] Ubiquiti may not argue in opposition to class certification any basis on which Plaintiffs sought discovery, but Ubiquiti has failed or refused to provide a good faith response." Docket No. 137 at 3. Ubiquiti responds that it has responded in good faith to Plaintiffs' discovery requests and argues that the issues in dispute are not relevant to class certification. Ubiquiti reiterates its position that certain

of Plaintiffs' requests are compound and therefore exceed the 25 interrogatories permitted under the Federal Rules of Civil Procedure.

Having reviewed the parties' submissions, including over one-hundred pages of discovery-related material, the Court declines to issue the sanction Plaintiffs seek, but agrees that certain of Ubiquiti's responses are deficient. The Court therefore **COMPELS** the further responses described herein.

## I.   BACKGROUND

Plaintiffs' specific objections appear to pertain primarily to Ubiquiti's interrogatroy responses, although Plaintiffs also object that Ubiquiti's responses to their requests for admission were evasive or otherwise incomplete. These discovery requests were served on Ubiquiti on January 8, 2015. Plaintiffs have propounded interrogatories generally aimed at determining facts relating to: Ubiquiti's denials or unqualified admissions in response to requests for admission and in its Answer; notice provided to Ubiquiti of defects through the return merchandise authorization ("RMA") process or through Ubiquiti's online community forum; Ubiquiti's knowledge of the particulars of end-users' cable installation; serial numbers associated with TOUGHCable; Ubiquiti's limited warranty; differences between the TOUGHCable products; Ubiquiti's position that the TOUGHCable did not fail a particular UV test; and steps Ubiquiti took after the UV test.

Despite being voluminous, Ubiquiti's initial response to Plaintiffs' interrogatories provided little meaningful information. In its initial response, Ubiquiti refused to provide any substantive response to interrogatories 1, 2, 3, 4, 5, 6, 11, 21, and 24. In a similar vein, Ubiquiti responded that "the information Ubiquiti knows or can readily obtain is insufficient to enable [it] to provide a substantive response" to interrogatories 13 and 14. Ubiquiti also claimed to be "unable to respond" to interrogatories 22 and 23. In response to interrogatories 7-10, the gist of Ubiquiti's response was that it "may have communicated" with certain end-users of TOUGHCable who posted a complaint at http://community.ubnt.com. Ubiquiti claimed that information on its forum is "publicly and equally available to Plaintiff" and Ubiquiti refused to "incur the unnecessary expense and burden of finding that information for Plaintiff." Ubiquiti also generally averred that it had "produced documents reflecting information responsive" to interrogatories 8 and 19 without identifying the documents in

any way. In response to interrogatories that sought "all facts" related to whether certain alleged test results constituted a failure, Ubiquiti variously pointed to specific words used or not used in the test report and incorporated prior responses by reference.

On March 10, 2015, Ubiquiti sent a meet and confer letter that largely reiterated and added to its initial objections. Ubiquiti did, however, identify certain representative responsive documents that were produced in the course of discovery by Bates number in response to interrogatories 4, 5, 13, 15, 22-24. The day before the parties filed their discovery letter brief, Ubiquiti served supplemental, responses to interrogatories 4, 12, 15, 16, 17, 18, and 19 and to requests for admission 1, 2, 10, 11, 12, 13, and 14.

Plaintiffs focus their argument on three categories of requests. First, Plaintiffs argue that Ubiquiti has not provided sufficient discovery as to the technical details and manufacturing of the cable, which relates directly to any class certification argument regarding purported differences in the batches of TOUGHCable. Second, Plaintiffs contend that Ubiquiti has refused to provide information from its RMA database and its online community forum. Third, Plaintiffs argue that Ubiquiti has stonewalled efforts to get responses regarding four interrogatories that Ubiquiti initially objected to as compound.

Ubiquiti responds that any disputes regarding the identity of the manufacturer of a particular batch of TOUGHCable do not affect Ubiquiti's argument that there were batch differences. Second, Ubiquiti dismisses the idea that adequacy of notice, *e.g.,* through Ubiquiti's online community forum, can be resolved at class certification. Third, Ubiquiti reiterates its objection that interrogatories 1, 2, 3, and 24 are compound and that any attempt to narrow and re-serve them in a non-compound manner constitute "additional requests in excess of the [25 interrogatory] limit."

## II.  DISCUSSION

A.  Legal Standard

"Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). Discrete subparts may be considered as part of one interrogatory where they "are logically or factually subsumed within and necessarily related to the primary question." *In re Lithium Ion*

*Batteries Antitrust Litig.,* No. 13MD02420YGRDMR, 2015 WL 1221924, at *2 (N.D. Cal. Mar. 17, 2015) (quoting *Safeco of Am. v. Rawstrom,* 181 F.R.D. 441, 445 (C.D. Cal.1998)); *Dawson v. New Life Cmty. Servs., Inc.,* No. 5:13-CV-0881-PSG, 2013 WL 6512052, at *2 (N.D. Cal. Dec. 12, 2013).

Some courts have counted "every interrogatory which is served, and causes a responding party to undertake the burden of preparing and serving objections to the interrogatory" against the 25 interrogatory limit. *See Benas v. Baca,* No. CV00-011507LGBSHX, 2003 WL 21697750, at *1 (C.D. Cal. July 16, 2003) (quoting *Walker v. Lakewood Condominium Owners Ass'n,* 186 F.R.D. 584, 587 (C.D. Cal. 1999)). Where a party does not undertake the burden of responding to an initial interrogatory, however, subsequent interrogatories do not necessarily count against the limit. *Id.*

In terms of scope, under Rule 33, "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Id.*

Rule 26(b), in turn, reaches broadly. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b); *see also Foster v. ScentAir Technologies, Inc.,* No. 13-CV-05772-TEH (MEJ), 2014 WL 4063160, at *2 (N.D. Cal. Aug. 15, 2014) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." (quoting *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 679-80 (N.D. Cal.2006)).

Where an answer to an interrogatory may be gleaned from reviewing a party's business records, and such review would be equally burdensome to each party, Rule 33 permits the responding party to "specify[] the records that must be reviewed." Fed. R. Civ. P. 33(d)(1). Rule 33 requires, however, that the records be specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." *Id.*

B.  Ubiquiti's Initial Response

To begin, the Court observes that Ubiquiti's initial response was undoubtedly deficient in multiple respects. For example, Ubiquiti provided no substantive response to the interrogatory

seeking identification of all TOUGHCable RMAs, even though it appears undisputed that the RMAs are relevant and in Ubiquiti's custody and control. Among other things, Ubiquiti objected based on the possibility that RMAs may contain private information of its customers. Ubiquiti lodged this objection on February 24, 2015, months *after* the Court entered the parties' stipulated protective order. Docket No. 109. The Court concludes that this objection appears to be without merit.

As another example, Ubiquiti initially responded to other interrogatories with a general reference to "produc[ing] documents reflecting information responsive." Ubiquiti failed to specify those documents, as is required. *See* Fed. R. Civ. P. 33(d)(1). Finally, although not raised by Plaintiffs, the Court also observes that Ubiquiti appears not to have complied with Rule 33's requirements that interrogatories must be answered "by the party to whom they are directed" and that each interrogatory is to be answered "under oath." Fed. R. Civ. Proc. 33(b)(1)(A); (b)(3); *see also* Wright and Miller, *Federal Practice and Procedure*, vol. 8B, sec. 2172 (3d ed.) ("It is improper for the party's attorney to answer [interrogatories.]"); *cf.* Fed. R. Civ. Proc. 33(b)(5) (an attorney may sign objections). If Ubiquiti had abided by Rule 33's requirements in its initial responses, these protracted discovery disputes might have been avoided.

The Court notes the problems with Ubiquiti's initial responses, because it does not find that Ubiquiti has substantiated its position that "it has been responding in good faith to all discovery requests." *See* Docket No. 137 at 5. Nevertheless, in view of Ubiquiti's supplemental responses, which cure certain of the deficiencies in Ubiquiti's initial response, and the limited purpose for which the discovery in issue is presently being sought, the Court will focus on the specific objections before the Court.

C.   Discovery Categories

   1.   Cable Uniformity

The first category for which Plaintiffs raise objections concerns the similarity or differences of TOUGHCable across batches.

Ubiquiti must provide full and complete answers to Interrogatory Nos. 1, 2, 3, 13, and 14 (which focuses most directly on potential differences in cable quality), and include information

received either directly or indirectly by Ubiquiti (not limited to "personal knowledge"). Any evidence of differences in batches that may affect quality must be produced.

As to RFA supplementation, the Court, disagrees with Ubiquiti's contention that the existing discovery responses allow Plaintiffs to contend that Haitang made "all of the TOUGHCable." Docket No. 137 at 4. Ubiquiti's supplemental response to Plaintiffs' request for admission 10 states that "[a]fter a reasonable inquiry and investigation of sources reasonably available to Ubiquiti, it appears that *nearly all* of TOUGHCable sold in 2011 was manufactured by Jiaxing Haitang Electronics Co., LTD." Docket No. 137-1 at 98-99. In its response, Ubiquiti proceeds to reveal that "Ubiquiti has learned that there were purchase orders in December 2011 from another manufacturer other than Jiaxing Hiatang Electronics Co., Ltd., and is in the process of ascertaining whether any of these purchase orders to this manufacturer for TOUGHCable were actually filled in December 2011."

Thus, in addition to supplemental responses to Interrogatory Nos. 1, 2, 3, 13, and 14, the Court **ORDERS** Ubiquiti to produce to Plaintiffs any purchase orders that Ubiquiti has located from this other identified manufacturer within three (3) days of this order. The Court further **ORDERS** Ubiquiti to clarify whether or not any manufacturer other than Haitang and the single manufacturer who received purchase orders in December 2011 is alleged to have manufactured TOUGHCable in 2011. To the extent that Ubiquiti has located any other documents regarding the quantity and identity of the TOUGHCable that was purportedly manufactured by this other entity in 2011, Ubiquiti shall produce those documents as well.

All discovery ordered herein shall be produced to Plaintiffs by **April 15, 2015**.[1]

2. Notice

Plaintiffs sought communications to Ubiquiti that included any complaint about TOUGHCable, and propounded interrogatories that specifically requested information regarding

---

[1] The Court notes that Ubiquiti's repeated crutch – invocation of its "continuing investigation" – is not particularly compelling where the discovery requests in issue were served months ago. The Court further reminds Ubiquiti of its duty to supplement its responses if it "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

1 RMAs as well as comments on Ubiquiti's online community forum. Plaintiffs, in their letter brief
2 discuss the evolving meet and confer process and refer to seeking "Court assistance in resolving
3 these outstanding issues," yet do not specify precisely what the issues are. It appears that Ubiquiti
4 has produced what it calls "a large portion," although not all of the documents from its RMA
5 database. Ubiquiti does not discuss any reason for the delay in locating the outstanding RMA
6 information or show any undue burden in locating this information. Instead, Ubiquiti asserts that it
7 "will produce additional RMA information as it is located." Ubiquiti contends that Plaintiffs do not
8 "need every single RMA participants' identity" to move for class certification. Ubiquiti further
9 argues that it does not agree "that a forum or blog post (with nothing more) is notice, let alone
10 adequate notice for the breach of warranty claims."

11 Ubiquiti's views on the adequacy of the forum posts for notice purposes do not determine the
12 scope of discovery. As one noted commentator aptly summarized:

> A party may base interrogatories on its theory of the case. The interrogatories cannot be objected to because, on the interrogated party's theory, they are based on a false assumption.

15 Wright and Miller, *Federal Practice and Procedure,* vol. 8B, sec. 2168 (3d ed.). The RMAs and
16 forum comments are discoverable under Rule 26(b).

17 In its written objections, Ubiquiti asserted that information posted online at its community
18 forum is "publicly and equally available to Plaintiff" and therefore refused to locate that information
19 for Plaintiffs. On this record, the Court has doubts that the forum posts are "equally available" to
20 Plaintiffs where Ubiquiti appears to host the forum pages and, as administrator, may have unique
21 searching capabilities or increased access to older or deleted posts. Because such posts constitute
22 electronically stored information, posts pulled internally by Ubiquiti may also reveal metadata or
23 other pertinent information that is not publicly available. Such metadata may be responsive to the
24 interrogatories at issue, for example metadata may reflect the identity of the poster. *See* Docket No.
25 110 at 4 (stipulating to produce certain metadata).

26 The Court therefore agrees that Ubiquiti should make a further response. The Court
27 therefore **ORDERS** Ubiquiti to respond to interrogatory 6, including its subparts a-c, which "are

7

logically or factually subsumed within and necessarily related to the primary question,"[2] and to complete its production of RMA information.  The additional response and production should be completed by **April 15, 2015.**  The Court further finds that a meaningful response to interrogatory 6 will address other requests related to Ubiquiti's online community forum.

To the extent that Ubiquiti finds the terms "jacket issues" or "jacket issue consequences" in interrogatory 6 to be vague and ambiguous, the Court notes that the specific search terms Plaintiffs provided in interrogatory 5 appear well-suited to locating responsive information for interrogatory 6.  Should Ubiquiti prefer to produce responsive forum comments in lieu of a narrative response, the Court finds that such a document production will suffice.

3.  <u>Objection to Subparts</u>

Plaintiffs' first three interrogatories seek facts, identification of documents, and identification of witnesses for all of Ubiquiti's responses to the requests for admission that were not an unqualified admission.  The Court agrees that Plaintiffs' first three interrogatories are improperly compound and therefore exceed the 25 interrogatory limit.  *Chapman v. California Dep't of Educ.,* No. C-01-1780 CRB (EMC), 2002 WL 32854376, at *1 (N.D. Cal. Feb. 6, 2002) ("If the interrogatory relates to distinct and separate requests for admission, the interrogatories should be treated as the same number of subparts as there are requests for admission."); *Safeco,* 181 F.R.D. at 446 ("Where the underlying requests for admissions concern different, separate, or discrete matters, however, the interrogatory should be viewed as containing a subpart for each request."); *see also* Civ. L.R. 33-2 ("A demand that a party set forth the basis for a denial of an admission requested under Fed. R. Civ. P. 36 will be treated as a separate discovery request (an interrogatory) and is allowable only to the extent that a party is entitled to propound additional interrogatories.").  However because these interrogatories seek relevant information, and the burden on Ubiquiti is not substantial, the Court grants leave to exceed Rule 33 limits *sua sponte*.  Responses are due **April 15, 2015**.

---

[2] *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *2.

### III. CONCLUSION

The ruling herein moots Plaintiffs' request for evidentiary sanctions. The Court notes, however, that in considering class certification, the Court will not be inclined to consider any facts that were not disclosed in discovery despite being the subject of a discovery request or to consider any opinion based on such undisclosed facts.

Because of the relief ordered herein, the class certification briefing and hearing schedule shall be revised to the following:

Class Certification Motion due by April 23, 2015

Response/Opposition Brief to Class Certification Motion due by May 22, 2015

Reply Brief due by June 4, 2015

Hearing on Class Certification Motion scheduled for 1:30 p.m., June 18, 2015.

This order disposes of Docket No. 137.

IT IS SO ORDERED.

Dated: April 3, 2015

_____
EDWARD M. CHEN
United States District Judge

9