Alan Himmelfarb (SBN 90480)
consumerlaw1@earthlink.net
THE LAW OFFICES OF ALAN HIMMELFARB
80 W. Sierra Madre Blvd. #304
Sierra Madre, California 91024
Telephone: (626) 325-3104

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASION COMMUNICATIONS INC., a Canadian corporation, dba Planet Telecom, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UBIQUITI NETWORKS, INC. a Delaware corporation, <br><br> Defendant. | CASE No. CV 13-1803-EMC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** <br><br> Date: June 18, 2015 <br> Time: 1:30 p.m. <br> Judge: Hon. Edward Chen <br> Place: San Francisco Division, Courtroom 5 |

# Redacted

**TO THE HONORABLE EDWARD M. CHEN, ALL PARTIES, AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE** that on June 18, 2015, at 1:30 pm, or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, in Courtroom 5 of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, California, Plaintiffs Tasion Communications, Inc. ("Tasion"), International Power Systems, LLC ("Freeway"), and Nationwide Computer Systems, Inc. ("Camplink") (collectively, "Plaintiffs"), will, and hereby do, move for an order granting class certification. Specifically, Plaintiffs seek to certify pursuant to Rule 23(b)(3) the following class for purchasers of TOUGHCable where the purchase was completed in the United States:

> All persons or entities who purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2.

Plaintiff Freeway also seeks to certify pursuant to Rule 23(b)(3) the following class for purchasers of TOUGHCable from Streakwave where the purchase was completed in Arizona:

> All persons and entities who purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 from Streakwave.

Alternatively, Plaintiffs seek to certify the following classes:

1.   All persons and entities located in Arizona who purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2.

2.   All persons and entities located in Florida who purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2.

3.   All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Florida as a result of defective TOUGHCable.

4.   All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Maine as a result of

defective TOUGHCable.

5.      All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Massachusetts as a result of defective TOUGHCable.

6.      All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in New Hampshire as a result of defective TOUGHCable.

7.      All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in New Jersey as a result of defective TOUGHCable.

8.      All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in New York as a result of defective TOUGHCable.

9.      All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in North Carolina as a result of defective TOUGHCable.

10.     All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Ohio as a result of defective TOUGHCable.

11.     All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Pennsylvania as a result of defective TOUGHCable.

12.     All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Panama as a result of

defective TOUGHCable.

In the alternative, Plaintiffs seek certification pursuant to Rule 23(c)(4) of the following issues:

1.    The falsity of Ubiquiti's representation concerning the outdoor suitability of its TOUGHCable, including omissions to disclose facts Ubiquiti was required to disclose;

2.    The materiality of each such representation or omission to purchasers of Ubiquiti TOUGHCable;

3.    Whether the representations by Ubiquiti that its TOUGHCable product was "outdoor" cable were part of the basis of the bargain for the Class;

4.    Ubiquiti's state of mind relating to each such representation (scienter, i.e., intent to deceive or recklessness);

5.    Reliance by purchasers of Ubiquiti TOUGHCable on the representations and omissions by Ubiquiti;

6.    Whether purchasers of TOUGHCable are entitled to consequential damages (labor costs as a factor of time to replace) incurred in replacing defective TOUGHCable; and

7.    The entitlement of Class members to punitive damages.

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Alan Himmelfarb, David C. Parisi, Plaintiffs, and all of the files and records of this action, and on any additional material that may be elicited at the hearing of this motion.

DATED:  April 23, 2015                              By: /s/Alan Himmelfarb_____

David C. Parisi (SBN 162248)
Suzanne Havens Beckman (SBN 188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Alan Himmelfarb (SBN 90480)
THE LAW OFFICES OF ALAN HIMMELFARB
80 W. Sierra Madre Blvd. #304
Sierra Madre, California 91024
Telephone: (626) 325-3104

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 1

        A.      Ubiquiti Created TOUGHCable for Outdoor Use ................................... 2

        B.      ███████████████████████████████████████████......... 2

        C.      ████████████████████████████████████████████ 4

        D.      Ubiquiti Explicitly Advertised TOUGHCable as an Outdoor Product.................. 4

        E.      █████████████████████████████████████████ 4

        F.      The Class Representatives Relied on Ubiquiti, Purchased TOUGHCable
                and Suffered Losses ............................................................................... 5

III.    THE PROPOSED CLASSES ............................................................................. 6

IV.     ARGUMENT ...................................................................................................... 8

        A.      The Standards for Class Certification. .................................................... 8

        B.      Plaintiffs Satisfy the Rule 23(a) Prerequisites ...................................... 8

                1.      Each Proposed Class is Sufficiently Numerous........................... 8

                2.      Plaintiffs' Claims Meet the Commonality Requirement ............. 9

                3.      Plaintiffs' Claims are Typical of the Classes............................. 10

                4.      Plaintiffs and Their Counsel Will Adequately Represent the
                        Classes........................................................................................ 11

        C.      Plaintiffs' Claims Satisfy the Ascertainability Requirement ................ 12

        D.      The Requirements of Rule 23(b)(3) are Satisfied ................................ 13

                1.      Common Issues of Law of Fact Predominate Here ................... 13

                2.      Class Litigation is Superior to Other Methods of Adjudication of
                        Plaintiffs' Claims ...................................................................... 17

                3.      Certification Of A Nationwide Class Is Appropriate Because
                        Defendants' Conduct Emanates From California ...................... 19

                4.      Plaintiffs' Method for Determining Class Damages.................. 22

        E.      Alternatively This Court May Employ Rule 23(c)(4) to Certify a Class on
                Designated Issues....................................................................................... 24

V.      CONCLUSION ................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) aff'd................................................................22

*Amgen v. Conn. Ret. Plans & Trust*,
    568 U.S.---, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013).........................8, 15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...............................................................10

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..........................................................14, 22

*Brown v. Hain Celestial Grp., Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ...............................................11

*Bruno v. Eckhart Corp.*,
    280 F.R.D. 540 (C.D. Cal. 2012) .......................................................20

*Bush v. Calloway Consol. Grp. River City, Inc.*,
    No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450 (M.D. Fla. Mar.
    26, 2012) ..............................................................................................12

*In re Cardizem CD Antitrust Litigation*,
    200 F.R.D. 297 (E.D. Mich. 2001) ....................................................18

*Chavez v. Blue Sky Natural Beverages Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)..........................................11, 19, 22

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) .............................................................9

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005)............................................................................22

*Galvan v. KDI Distrib., Inc.*,
    No. 08-999, 2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011)................12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................9, 10, 13, 16

*Hofstetter v. Chase Home Finance, LLP*,
    2011 WL 1225900 (N.D. Cal. 2011) ..................................................17

*In re Hulu Priv. Litig.*,
    C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014)......................8, 12

*In re Industrial Diamonds Antitrust Litigation*,
  167 F.R.D. 374 (S.D. N.Y. 1996) ................................................................18

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ....................................................................23

*Keegan v. Am. Honda Motor Co*,
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ....................................................................................19

*Marilley v. Bonham*,
  No. C-11-02418- DMR, 2012 U.S. Dist. LEXIS 33678 (N.D. Cal. Mar. 13,
  2012) ..........................................................................................................12

*McCrary v. Elations Co., LLC*,
  2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ..............................10

*McVicar v. Goodman Global, Inc.*,
  1 F. Supp. 3d 1044, 1057 (C.D. Cal. 2014) ................................................20

*Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd.*,
  247 F.R.D. 253 (D. Mass. 2008) ................................................................18

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ................................................................22

*Paper Systems Inc. v. Mitsubishi Corp.*,
  193 F.R.D. 601 (2000) ................................................................................18

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) ................................................................12

*In re POM Wonderful LLC Markt. and Sales Practices Litig.*,
  2012 WL 4490860 (C.D. Cal. Sep. 28, 2012) ........................................19, 20

*Rainbow Business Solutions v. Merchant Services, Inc.*,
  No. C 10–1993 CW, 2013 WL 6734086 (N.D. Cal. Dec. 20, 2013) ..............18

*Red v. Kraft Foods, Inc.*,
  2012 U.S. Dist. LEXIS 186948 (C.D. Cal. Apr. 12, 2012) ..........................12

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ..................................................................9

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ....................................................................10

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ..................................................................10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................11

*Sullivan v. DB Inv., Inc.*,
   667 F.3d 273 (3rd Cir. 2011) (en banc) .................................................16

*Trosper v. Styker Corp.*,
   2014 U.S. Dist. LEXIS 117453 (N.D. Cal. Aug. 21, 2014)....................14

*United Steel, Paper & Forestry v. ConocoPhillips*,
   593 F.3d 802 (9th Cir. 2010) .....................................................................8

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ..................................................................24

*In re Visa Check/Mastermoney Antitrust Litigation*,
   192 F.R.D. 68 (E.D.N.Y. 2000) ...............................................................18

*Wal–Mart Stores, Inc. v. Dukes*,
   — U.S. —, 2011 .........................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................8, 9, 13

*Weeks v. Kellogg Co.*,
   2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011).......................9

**California Cases**

*Diamond Multimedia Systems, Inc. v. Superior Court*,
   19 Cal.4th 1036 (1999) ...........................................................................20

*Hinesley v. Oakshade Town Ctr.*,
   135 Cal.App.4th 289 (2005) ....................................................................21

*Keith v. Buchanan*,
   173 Cal.App.3d 13 (1985) .......................................................................21

*Occidental Land, Inc. v. Superior Court*,
   18 Cal.3d 355 (1976) .........................................................................15, 16

*In re Steroid Hormone Product Cases*,
   181 Cal.App.4th 145 (2010) ....................................................................15

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ..............................................................................15

*Vasquez v. Superior Court*,
    4 Cal.3d 800 (1971) ...................................................................................14

*In re Vioxx Class Cases*,
    180 Cal.App.4th 116 (2009) .....................................................................15

*Wash. Mut. Bank v. Superior Court*,
    24 Cal.4th 906 (2001) ...............................................................................19

**Other State Statutes**

Fla. Stat. Ann.
    §§ 501.201 *et seq.* ......................................................................................7

Mass. Gen. Laws Chapter 93A
    §§ 1 *et seq.* ................................................................................................7

N.C. Gen. Stat.
    §§ 75-1 *et seq.* ...........................................................................................8
    § 75-1.1 ......................................................................................................8

N.H. Rev. Stat. Ann.
    §§ 358-A,1 *et seq.* .....................................................................................7

N.J. Stat. Ann.
    §§ 59:8-19 *et seq.* ......................................................................................7

N.Y. Gen. Bus. Law
    §§ 349 to 350-f-1 .......................................................................................8

**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
    1790 (3d ed. 2005) ...................................................................................24

2 W. Rubenstein, *Newberg on Class Actions* § 4:54 at 205 (5th ed. 2012)...................22

Wright, Miller, & Kane, 7AA *Fed. Prac. & Proc. Civ.* § 1781, at 235-37 ...................22

Fed. R. Civ. P.
    Rule 23 ............................................................................................. *passim*
    Rule 23(a) ....................................................................................................8
    Rule 23(a)(1) ...............................................................................................8
    Rule 23(a)(2) ...............................................................................................9
    Rule 23(a)(3) .............................................................................................10
    Rule 23(a)(4) .............................................................................................11
    Rule 23(b) ..................................................................................................24
    Rule 23(b)(3) .................................................................................... *passim*

Rule 23(b)(3)(A) ...................................................................................................17
Rule 23(b)(3)(D) ..................................................................................................18
Rule 23(c)(4) ..........................................................................................1, 8, 24, 25
Rule 23(c)(4)(A) ...................................................................................................24
Rule 23(g)(1)(A) ...................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      INTRODUCTION**

Defendant Ubiquiti Networks, Inc. (Ubiquiti) designs, manufactures, and sells wireless broadband radios.  Ubiquiti does not sell products directly, but rather, through distributors. Defendant Streakwave Wireless, Inc. is one of Ubiquiti's larger distributors.

Plaintiffs contend that Ubiquiti's first generation Cat5e cable product, TOUGHCable Level 1 and Level 2, was marketed and sold as an "outdoor" cable even though cable ███████ ████████████████████  The cable degraded and disintegrated soon after exposure to sunlight.

Plaintiffs seek to certify a class of all purchasers of TOUGHCable in the United States for their breach of express warranty and fraudulent inducement claims.  Because the conduct which gives rise to Plaintiffs' claims took place in, arose from, and emanated from California, California law applies to Plaintiffs' claims.  In the alternative, Plaintiffs seek to certify twelve classes of purchasers of TOUGHCable in various states pursuant to those states' laws.

Further, Plaintiff Freeway seeks to certify a class of purchasers from Streakwave in Arizona for breach of the implied warranty of merchantability.

Finally, should the court find certification under Rule 23(b)(3) inappropriate, Plaintiffs seek certification of issue classes under Rule 23(c)(4).

The plaintiff classes should be certified because the exact same conduct by defendants caused the harm to Plaintiffs and to all class members.  The key elements of Plaintiffs' class claims can be established by a common body of evidence and law.  Plaintiffs propose herein a workable method for determining damages on a class-wide basis.  In short, this case is a quintessential class action and should be certified for class treatment.

**II.      FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Ubiquiti Networks, Inc. (Ubiquiti) designs, manufactures, and sells wireless broadband radios.  These radios enable Wireless Internet Service Providers (WISPs) to provide wireless internet and other telecommunications for their customers in outdoor environments without a hard-wired connection. Ubiquiti achieved dramatic success with WISPs by providing the market with highly efficient and capable radio equipment at significantly lower cost than any

1   of its competitors.

2   ████████████ Ubiquiti decided to also manufacture its own Ubiquiti-branded Cat5e

3   Ethernet cable.  Ex. 1 to Declaration of Alan Himmelfarb ("Himmelfarb Decl.").  Although

4   Ubiquiti's radios transmit and receive wirelessly, Cat5e Ethernet cable provides power to the unit

5   and also transmits the signal from the antenna to the receiving station.  Every outdoor radio

6   installation requires Cat5e cable.

7       **A.**    **Ubiquiti Created TOUGHCable for Outdoor Use**

8   ████████████████████████████████████████████

9   "TOUGHCable," "Outdoor Carrier Class Shielded Cable." *Id.*, Himmelfarb Decl., Exs. 2 and 3.

10  ██████████████████████████████████████

11  ████████████████████████████████████████

12  ████████████████████

13  █████████████████████████████████████

14  ███████████████████████████████████████

15  ████████████████████████████████████████

16  █████████████████████████████████████████

17  ███████████████████████████████

18  █  ███████████████████████████████████████

19  ███████████████████████████████████████████

20  ███████████████████████  ███████████████████

21  ██████████████████████████████████

22  ███████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25  █████████████████████████████

26  ████████████████████████████████████████

27  █████████████████████████████████

28  ████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18  _____

 1

19

20  2    Plaintiffs will present, through expert testimony, common and well-understood issues related to UV degradation.  At trial, Plaintiffs' expert witnesses are expected to testify to the

21  following:

22                                                      Synthetic plastic polymers (used in everything from outdoor cable jackets, to patio furniture, to children's toys), are subject to attack and

23  breakdown by the ultraviolet radiation contained in sunlight.

          Ultraviolet rays interact with the chemical bonds of polymers, altering the bonds so that

24  they weaken and undergo transformation at the chemical and molecular level. Products made from synthetic plastic polymers may crack or disintegrate if they are not UV-stabilized.  The

25  addition of UV absorbers to the raw materials of the polymer during manufacture can inhibit the effect of UV degradation.  UV absorbers act by absorbing the UV radiation preferentially, and

26  dissipate the energy of the UV radiation as low-level heat. The chemicals used for UV absorbers are similar to those in sunscreen products, which protect skin from UV attack.

27          Any plastic product intended for use outdoors will degrade, crack, and ultimately disintegrate if it is not specifically protected.  Common signs of UV degradation are

28  discoloration, changes in rigidity or flexibility, fading, embrittlement, and cracking. In extreme cases, complete product disintegration can occur.

**D.      Ubiquiti Explicitly Advertised TOUGHCable as an Outdoor Product**

Ubiquiti posted advertisements for TOUGHCable on its website as early as November 2010 (two months before launch).  Each and every advertisement Ubiquiti published, throughout the entire year the product was on the market, listed TOUGHCable as "Outdoor" cable. Himmelfarb Decl., Exs. 32, 33, 34 and 35; Parisi Decl., Exs. E and F.

**E.**

1    Customers started reporting failures at three months. ▮▮▮▮▮▮▮▮▮▮▮▮

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮   Posts were made to Ubiquiti's online community forum, emails were directed to

5    distributors, who then directed the shocked, bewildered, and clearly upset users to contact

6    Ubiquiti directly.  Himmelfarb Decl., Exs. 25 and Parisi Decl., Exs. A, B, C and D.

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮

23            **F.    The Class Representatives Relied on Ubiquiti, Purchased TOUGHCable and
                      Suffered Losses**

24            Each of the Class Plaintiffs expressly relied upon Ubiquiti's statements, promises and

25   representations that the TOUGHCable product was "outdoor" cable and was expressly designed

26   by Ubiquiti for outdoor use.  See Declaration of David Veilleux ("Veilleux Decl."), ¶¶7-9;

27   Declaration of Benjamin Wold ("Wold Decl."), ¶¶7-9; and Declaration of Thomas Fantacone

28

("Fantacone Decl."), ¶¶8-10.  On that basis, they purchased many boxes of TOUGHCable which they installed to run their outdoor radio equipment.  Veilleux Decl., ¶9; Wold Decl., ¶9; and Fantacone Decl., ¶10.  Freeway, an Arizona entity, purchased its cable directly from Streakwave.  Wold Decl., ¶¶8-9.  When the cable failed, it had to be replaced – urgently and immediately.  WISP's are in the business of "reliability."  Veilleux Decl., ¶7; Wold Decl., ¶7; and Fantacone Decl., ¶8. Connection failures are the absolute antithesis of the WISP's promise of reliability.  Customers do not understand or care that Ubiquiti's promises of cable reliability were fraudulent.  They just know their connection is down and that the WISP is responsible for that.  Each time the failing TOUGHCable and any affected equipment had to be replaced, Plaintiffs incurred losses which have not been recouped. Veilleux Decl., ¶11; Wold Decl., ¶11; and Fantacone Decl., ¶12.

## III.    THE PROPOSED CLASSES

Pursuant to Rule 23(b)(3), Plaintiffs seek to certify the following class for purchasers of TOUGHCable where the purchase was completed in the United States:

> All persons or entities who purchased Ubiquiti TOUGHCable
> Level 1 or Ubiquiti TOUGHCable Level 2.

Plaintiffs seek to certify this nationwide class for breach of express warranty (third claim) and fraudulent inducement (sixth claim).  These claims against Ubiquiti are based on the application of California law because all actions relevant to liability in this action took place in California (see Section IV.D.3. below).

Plaintiff Freeway also seeks to certify the following class pursuant to Rule 23(b)(3) for purchasers of TOUGHCable where the purchase was completed in Arizona:

> All persons and entities who purchased Ubiquiti TOUGHCable
> Level 1 or Ubiquiti TOUGHCable Level 2 from Streakwave.

Plaintiff Freeway seeks to certify an Arizona class for breach of the implied warranty of merchantability (fifth claim).  This claim is only against Streakwave.

Alternatively, should the court find a conflict of laws which preclude application of California law, Plaintiffs seek to certify the following classes with claims against Ubiquiti:

> 1.    All persons and entities located in Arizona who purchased Ubiquiti TOUGHCable
> Level 1 or Ubiquiti TOUGHCable Level 2.

2. All persons and entities located in Florida who purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2.

3. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Florida as a result of defective TOUGHCable.

4. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Maine as a result of defective TOUGHCable.

5. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Massachusetts as a result of defective TOUGHCable.

6. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in New Hampshire as a result of defective TOUGHCable.

7. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in New Jersey as a result of defective TOUGHCable.

8. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in New York as a result of defective TOUGHCable.

9. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in North Carolina as a result of defective TOUGHCable.

10. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Ohio as a result of defective TOUGHCable.

11. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Pennsylvania as a result of defective TOUGHCable.

12. All persons and entities that purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2 who incurred losses in Panama as a result of defective TOUGHCable.

Plaintiffs only seek certification of the above classes with respect to the fraudulent inducement claim (sixth claim) and the consumer protection and general business claims as follows:

a. Deceptive and Unfair Trade Practices (Fla. Stat. Ann. §§ 501.201 *et seq.*).

b. Consumer Protection (Massachusetts) Mass. Gen. Laws ch. 93A §§ 1 *et seq*.

c. Consumer Protection (New Hampshire) N.H. Rev. Stat. Ann. §§ 358-A,1 *et seq*.

d. Consumer Fraud (New Jersey) N.J. Stat. Ann. §§ 59:8-19 *et seq*.

e.   General Business Law (New York) N.Y. Gen. Bus. Law §§ 349 to 350-f-1

f.   N.C. Gen. Stat. § 75-1.1 (North Carolina) N.C. Gen. Stat. §§ 75-1 *et seq.*

Hereinafter, collectively, the "Alternative Classes."  Plaintiffs seek certification of these proposed Alternative Classes under Fed. R. Civ. P. 23(b)(3) for monetary relief. [3]

## IV.   ARGUMENT

### A.   The Standards for Class Certification.

Plaintiffs' claims here are ideally suited to satisfy the class certification standards under federal law.  To certify a class action under Rule 23, Plaintiffs must first establish each of the following prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *United Steel, Paper & Forestry v. ConocoPhillips*, 593 F.3d 802, 806 (9th Cir. 2010). There is also an implied requirement of ascertainability. *See In re Hulu Priv. Litig.,* C 11-03764 LB, 2014 WL 2758598, *13 (N.D. Cal. June 17, 2014) (collecting cases).

Once these prerequisites are met, Plaintiffs must demonstrate satisfaction of Rule 23(b)(3)'s predominance and superiority requirements to obtain monetary relief. While the Court must conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), this analysis must be restrained because "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen v. Conn. Ret. Plans & Trust*, 568 U.S. __, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013).

Likewise, pursuant to Rule 23(c)(4), "[w]hen appropriate, a class may be brought or maintained as a class action with respect to particular issues." Plaintiffs thus alternatively move for certification of issues classes. *See* Section IV.E.

### B.   Plaintiffs Satisfy the Rule 23(a) Prerequisites

#### 1.   Each Proposed Class is Sufficiently Numerous

Rule 23(a)(1) requires that the proposed classes be "so numerous that joinder of all

---

[3]      Excluded from every Class definition are:
i.      Defendants, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and any Defendant's legal representatives, predecessors, successors, assigns, and employees:
ii.      the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

1    members is impractical." This standard only requires a showing that joinder of all claims would

2    be difficult or inconvenient, not impossible. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d

3    1015, 1029 (9th Cir. 2012) (concluding numerosity was satisfied because there were 262

4    potential class members). ████████████████████████████████████

5    ██████████████████████████████████████████████████████ *Id.*

6    Numerosity is easily met in each of the classes. *See Weeks v. Kellogg Co.*, 2011 U.S. Dist.

7    LEXIS 155472 (C.D. Cal. Nov. 23, 2011), at *23 ("Common sense dictates . . . that the

8    numerosity requirement is met.").  Himmelfarb Decl., Exs. 22 and 31.

9               **2.      Plaintiffs' Claims Meet the Commonality Requirement**

10             Rule 23(a)(2) requires that there are questions of law or fact common within each

11   proposed Class, and for purposes of this Rule, "even a single question will do." *Wal-Mart Stores*,

12   131 S. Ct. at 2556 (internal punctuation omitted). This "common contention, moreover, must be

13   of such a nature that it is capable of classwide resolution—which means that determination of its

14   truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

15   stroke." *Id.* at 2551.  Furthermore, "variation among class members in their motivation for

16   purchasing the product, the factual circumstances behind their purchase, or the price that they

17   paid does not defeat the relatively 'minimal' showing required to establish commonality." *Ries v.*

18   *Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon v. Chrysler*

19   *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Indeed, "[c]ommonality requires the plaintiff to

20   demonstrate that the class members 'have suffered the same injury,' "which "does not mean

21   merely that they have all suffered a violation of the same provision of law." *Wal–Mart Stores,*

22   *Inc. v. Dukes*, — U.S. —, 2011; 131 S.Ct. 2541, 2551 (2011).

23             In this case, there are common questions of law or fact within each proposed Class. The

24   first and foremost common question is whether Ubiquiti's advertising and marketing of

25   TOUGHCable as "Outdoor" cable was false. This question is central to each cause of action

26   Plaintiffs allege on behalf of each of the proposed classes they respectively seek to represent

27   relating to Ubiquiti's violations of breaches of its warranties and its fraudulent inducement to

28   purchase the product, as well as Streakwave's breach of the implied warranty of

merchantability.[4]

### 3.     Plaintiffs' Claims are Typical of the Classes

The typicality requirement of Rule 23(a)(3) is a "permissive standard[]" and "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted)); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (focus is on the "defendants' conduct and plaintiff's legal theory").

In this case, Plaintiffs allege a common pattern of wrongdoing—Ubiquiti's "ubiquitous" claim that its TOUGHCable was "Outdoor" cable (a statement that appeared on every piece of advertising and marketing material Ubiquiti issued). Himmelfarb Decl., Exs. 32, 33, 34, 35; Parisi Decl., Exs. E and F. The same evidence that supports the claims of the named Plaintiffs also supports the claims of the absent class members, based on the same legal theories. Plaintiffs and all Class members were exposed to the same false statements on the TOUGHCable box, on TOUGHCable datasheets, and every other piece of advertising Ubiquiti published concerning its TOUGHCable product.  Himmelfarb Decl., Exs. 32, 34, and 35; Parisi Decl., Exs. E and F; see also Veilleux Decl., ¶8-9; Wold Decl., ¶¶8-9; and Fantacone Decl., ¶¶9-10. ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  Himmelfarb Decl., Exs. 9; see also Veilleux Decl., ¶8; Wold Decl., ¶8; and Fantacone Decl., ¶9.  *See McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443 at *39 (C.D. Cal. Jan. 13, 2014), ("[A] presumption of

---

[4] Additional common questions include:  2. The materiality of each such representation or omission to purchasers of TOUGHCable;  3. Whether the representations that TOUGHCable was "outdoor" cable were part of the basis of the bargain for the classes;  4. Ubiquiti's state of mind relating to each such representation (scienter, *i.e.*, intent to deceive or recklessness); 5. Reliance by purchasers of TOUGHCable on the representations and omissions; 6. Whether purchasers of TOUGHCable are entitled to consequential damages (labor costs as a factor of time to replace) incurred in replacing defective TOUGHCable; and 7. The entitlement of class members to punitive damages.

exposure is inferred where, as here, the alleged misrepresentations were on the outside of the packaging of every unit for an extended period.").  Plaintiffs have all alleged that the "Outdoor" claim was a material factor in their decisions to purchase the TOUGHCable.  Veilleux Decl., ¶8; Wold Decl., ¶8; and Fantacone Decl., ¶9.

Typicality is met here as Plaintiffs and the proposed classes assert claims that arise from the same course of conduct.  Additionally, the injuries suffered by Plaintiffs from purchasing a product they would not have otherwise purchased but for Ubiquiti's "Outdoor" claims, and the resulting losses upon TOUGHCable's failure in the field, were all injuries and losses suffered by Class members for the same reasons.  *Chavez v. Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (finding plaintiff's claim, that a mass market product label was misleading, arose from the same facts and legal theory as other class members and therefore was typical); Veilleux Decl., ¶11; Wold Decl., ¶11; and Fantacone Decl., ¶12.

Although Ubiquiti sold two types of TOUGHCable (Level 1 and Level 2), there is no dissimilarity in the failure, the cause of failure, and the resulting injuries.  Whether it was Level 1 or Level 2, it all had to be replaced by hand wherever it was installed.  Where misrepresentations across product lines are identical, "the dissimilarity of the accused products is relatively unimportant." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012).

### 4. Plaintiffs and Their Counsel Will Adequately Represent the Classes

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." This requirement entails answering two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted). Plaintiffs easily meet both of these prerequisites.

First, Plaintiffs' interests do not conflict with the other Class members' interests. Indeed, there is nothing to suggest that any of the Plaintiffs have any interests antagonistic to their vigorous pursuit of the Classes' claims. Furthermore, each Class member's claims arise under the same legal theories and each Class member was harmed in the same way as Plaintiffs, so that

the Plaintiffs' interests align with the interests of the absent members of the Classes they seek to represent. Plaintiffs have also demonstrated their adequacy through their participation in this litigation, including by providing extensive responses to discovery and agreeing to provide deposition testimony in this case.  Veilleux Decl., ¶¶12-13; Wold Decl., ¶¶12-13; and Fantacone Decl., ¶¶13-14.

Second, Plaintiffs have retained highly experienced counsel with significant experience in litigating class actions. *See Marilley v. Bonham*, No. C-11-02418- DMR, 2012 U.S. Dist. LEXIS 33678, at *23-24 (N.D. Cal. Mar. 13, 2012) ("In determining adequacy of proposed class counsel, a court must consider '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" (quoting Fed. R. Civ. P. 23(g)(1)(A))). Plaintiffs' law firms, have collectively over 70 years of combined experience in class action litigation and consumer advocacy, which is more than sufficient for them to act on behalf of the Classes.  Parisi Decl., Exs. G and H.

### C.    Plaintiffs' Claims Satisfy the Ascertainability Requirement

Although not mentioned in Rule 23, courts have often imputed a judicially created "ascertainability" requirement into the class certification analysis.  *See In re Hulu Priv. Litig.*, 2014 WL 2758598, *13. This requirement is satisfied if the characteristics of the members of the classes are adequately defined and can be identified by reference to objective criteria. *Id.* In this case, there is a single objective criterion that determines whether any particular individual is a member of the class: whether they purchased TOUGHCable Level 1 or TOUGHCable Level 2.

Self-identification is sufficient to render a class ascertainable where the consumer is likely to have retained receipts.  *Red v. Kraft Foods, Inc.*, 2012 U.S. Dist. LEXIS 186948, *16 (C.D. Cal. Apr. 12, 2012), citing *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450, at *16-18 (M.D. Fla. Mar. 26, 2012); *see also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (where purchase was a memorable big-ticket item); and *Galvan v. KDI Distrib., Inc.,* No. 08-999, 2011 U.S. Dist.

LEXIS 127602, at * 11 (C.D. Cal. Oct. 25, 2011) (where the defendant would have access to a master list of either consumers or retailers who dealt with the items at issue).  This case presents all three bases for identification and receipt retention.  This was a big ticket item ($119 and $149 for Level 1 and Level 2, respectively) which was tax deductible by the business which purchased it, and thus receipts for tax purposes are likely to be retained by the businesses for a period of up to 7 years.

Further, it is possible to track purchases through the distribution network by seller. Himmelfarb Decl., Ex. 31. ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████

### D.   The Requirements of Rule 23(b)(3) are Satisfied

To certify a class under Rule 23(b)(3), Plaintiffs must establish that common questions predominate over questions affecting individual plaintiffs and that a class action is superior to other means of adjudicating the case. Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) specifies several "matters pertinent to these findings."

### 1.   Common Issues of Law of Fact Predominate Here

The commonality requirement may be satisfied if the claims of the prospective class have even one significant issue common to the class.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020, (9th Cir. Cal. 1998).  To satisfy this provision, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).

Here, the questions upon which common proof will be presented are:

- Did Ubiquiti affirmatively represent that TOUGHCable was "Outdoor" cable?
- Was the "Outdoor" label "material"?
- Was Ubiquiti's "Outdoor" TOUGHCable a product which was not suitable for "outdoor" use?

The resolution to these three questions, whether yes or no, will determine Ubiquiti's

1   liability for breach of warranty.  One additional question addresses Ubiquiti's liability for

2   fraudulent inducement:  Did Ubiquiti know that its "Outdoor" TOUGHCable was not suitable for

3   "outdoor" use?

4        Damages, an additional inquiry pertinent to the question of certifiability of a class, is

5   dealt with separately from commonality.  *Blackie v. Barrack*, 524 F.2d 891, 902, 905 (9th Cir.

6   1975) (commonality not defeated by differences in the amount of an individual class member's

7   damages)*; accord Trosper v. Styker Corp.*, 2014 U.S. Dist. LEXIS 117453, 34 (N.D. Cal. Aug.

8   21, 2014); see also, Method for Measuring Class Damages, Section IV.D.4.

9        The facts of this case are ideally suited for common class-wide resolution, for a number

10   of reasons.  The manufacturing history of TOUGHCable is meticulously memorialized in emails.

11   ██████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ██████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ███████████████████████████████████████████

16   ██████████████████████████████████████████████████

17   ███████████████████████████████

18        Those critical decisions directly and equally affected all TOUGHCable Ubiquiti sold

19   during the entire time that the product was on the market (January 2011- November 2011).  All

20   boxes of TOUGHCable Ubiquiti sold contained the same inherent defect in the cable jacket.

21   Himmelfarb Decl., Exs. 27, 28, 29, and 30.  It did not matter whether the cable was installed in

22   the mountains, or desert, or East Coast campgrounds.  It did not matter how it was installed – be

23   it expertly or negligently -- ***nothing*** any consumer did would have changed the result:  upon

24   exposure to sunlight, TOUGHCable would disintegrate.

25        The facts of this case are also ideally suited for an inference of reliance.  Where a

26   defendant made common misrepresentations to the class, an inference of reliance may be

27   properly determined.  *Vasquez v. Superior Court,* 4 Cal.3d 800, 814-15 (1971) (where identical

28   material misrepresentations have been communicated to each member of a class, a presumption

of inference arises as to the entire class so that actual reliance can be proved on a class wide

basis without individual testimony).

California law of common law fraud permits Plaintiffs to establish reliance on a class

basis without establishing what each individual class member was told and what each individual

class member believed. Class-wide reliance may be established by showing that the affirmative

misrepresentations and the nondisclosures were material. *In re Tobacco II Cases*, 46 Cal.4th 298,

327 (2009). If the misrepresentations and nondisclosures were material, Plaintiffs may rely on

the doctrine of presumed reliance.  *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 128 (2009).

"Materiality of the alleged misrepresentation generally is judged by a 'reasonable man'

standard." *In re Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157 (2010).  *See also*

*Occidental Land, Inc. v. Superior Court,* 18 Cal.3d 355, 363 (1976) ("[A]n inference of reliance

arises if a material representation was made to persons whose acts thereafter were consistent with

reliance upon the representation.") [5]

Every member of the class was exposed to the same advertising.  The words "Outdoor

Carrier Class Shielded Cable" were the title of the product.  That title and the word "Outdoor"

appeared in every brochure, every advertisement, every datasheet.  Himmelfarb Decl., Exs. 32,

34, and 35; Parisi Decl., Exs. E and F.  Every one of the TOUGHCable boxes that Ubiquiti sold

included the title of the product: "Outdoor Carrier-Class Shielded Cable" prominently

proclaimed on the sides of every box sold.  Himmelfarb Decl., Exs. 32, 34 and 35.

The facts of this case are also additionally well-suited for an inference of reliance based

on omission. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5]    *See Amgen Inc.*, 133 S. Ct. at 1191 (regarding materiality of allegedly false representations in proposed class action, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, the materiality of [defendant's] alleged misrepresentations and omissions is a question common to all members of the class [plaintiffs] would represent. . . . As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry.").

1 ████████████████████████████████████████████████████

2 ████████████████████

3      Every class member was exposed to the "Outdoor" label on TOUGHCable as it

4 present on the boxes in which the product came.  Himmelfarb Decl., Exs. 32, 34, and 35.  No

5 class member would have purchased outdoor cable if it was not intended for use outdoors.  No

6 class member would have purchased this cable had they known that it ████████████████

7 would degrade shortly after outdoor installation.  Because reliance may be inferred for the entire

8 class in this case, no issues regarding the "reliance" of individual class members arise, much less

9 predominate.  *See Occidental*, 18 Cal.3d at 363.

10      Ubiquiti chose to prominently label its TOUGHCable as being "Outdoor," despite the

11 fact that ███████████████████████████████████████████

12 ████████████████████████████.  Himmelfarb Decl., Exs. 14-19, 32-

13 35; Parisi Decl., Exs. E and F.  ████████████████████████████

14 ████████████████████████████████████████████

15 ██████████ Ubiquiti was well aware that labeling TOUGHCable as "Outdoor" was

16 inconsistent (*i.e.*, false, unfair, deceptive, and/or misleading) with the truth.  Himmelfarb Decl.,

17 Exs. 27 and 28.

18      That claims or remedies may differ among the separate classes, in no way defeats

19 predominance.  *See Hanlon*, 150 F.3d at 1022 ("In this case, although some class members may

20 possess slightly differing remedies based on state statute or common law, the actions asserted by

21 the class representatives are not sufficiently anomalous to deny class certification. On the

22 contrary, to the extent distinct remedies exist, they are local variants of a generally homogenous

23 collection of causes which include products liability, breaches of express and implied warranties,

24 and 'lemon laws.'"); *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 301 (3rd Cir. 2011) (en banc)

25 (holding commonality and predominance are not "defeated merely because available rights and

26 remedies differ under the several laws that form the basis for the class claims. We have never

27 required the presentation of identical or uniform issues or claims as a prerequisite to certification

28 of a class.") (footnote omitted).  The damages sought on behalf of all class members pursuant to

this action are directly related to the failure of the TOUGHCable to live up to its "Outdoor" billing.

> ### 2. Class Litigation is Superior to Other Methods of Adjudication of Plaintiffs' Claims

Prosecution of this lawsuit on a class basis will be far more efficient than adjudication of individual claims.  Plaintiffs have invested significant resources in the prosecution of the action thus far and have demonstrated their commitment to meeting their class representative obligations.  Veilleux Decl., ¶13; Wold Decl., ¶13; and Fantacone Decl., ¶14.   In contrast, few members of the putative Class would, as a practical matter, be in a position to proceed individually against Defendants. Many absent class members lack the resources to prosecute their claims or even obtain necessary information.

As one court recognized, "the class action mechanism is a superior method for resolving these claims[] because the cost of litigation likely would not be justified without aggregating them together." *Hofstetter v. Chase Home Finance, LLP*, 2011 WL 1225900, at *16 (N.D. Cal. 2011). ████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████████ ██████████████████████████  ██ It will simply not be cost effective for class members to litigate their claims individually even if they had the knowledge and information to do so.

Further, there is no feasible way that individual class members could obtain the extensive discovery that Plaintiffs obtained, which goes to the heart of the claims in this case. Indeed the claim for fraudulent inducement was only recently uncovered following a detailed examination of Ubiquiti's production, consisting of thousands of documents.  The interests of the class members would not be served by prosecuting their claims individually.  *See* Fed. R. Civ. P. 23(b)(3)(A).

Class treatment is also a better use of the Court's resources.  It is more efficient to resolve the common and predominant question of whether Ubiquiti's claim that its TOUGHCable was an

1    "Outdoor" cable or not (an essential question for both the breach of warranty, and fraudulent

2    inducement claims, as well as the consumer protection claims at issue as alternative classes in

3    this case) in a single proceeding rather than to have individual courts separately adjudicate this

4    issue.

5          Businesses are commonly plaintiffs in certified class actions.  Accordingly, Plaintiffs'

6    commercial status makes class litigation no less appropriate here.  See *In re Visa*

7    *Check/Mastermoney Antitrust Litigation*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000) (in antitrust class

8    action on behalf of several of the nation's largest retailers, joined by a number of smaller

9    merchants and three retail associations against Visa and MasterCard, court found that "[w]ithout

10   class certification, there are likely to be numerous motions to intervene, and millions of small

11   merchants will lose any practical means of obtaining damages for defendants' allegedly illegal

12   conduct"); *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297, 325 (E.D. Mich. 2001)

13   (Louisiana Wholesale Drug Company, Inc. and Duane Reade, Inc. were plaintiffs in certified

14   antitrust class action); *Rainbow Business Solutions v. Merchant Services, Inc*., No. C 10–1993

15   CW, 2013 WL 6734086, *13 (N.D. Cal. Dec. 20, 2013) (court found that class action was

16   superior to individual litigation of class of merchants' breach of contract, breach of the duty of

17   good faith and fair dealing, and UCL claims).[6]

18         Finally, certification of this action as a class action will not render the case

19   unmanageable. See Fed. R. Civ. P. 23(b)(3)(D). As noted above, the common issues

20   predominate. *See Ewert*, 2010 WL 4269259, at *12 ("[A] class action would be manageable

21   since the focus of the litigation would be on common issues.").

22

23   _____

24   [6]      The reluctance of class members to bring individual suits against their suppliers also
     militates in favor of finding that a class action is a superior to individual suits.  *See e.g.*, *In re*
     *Cardizem CD Antitrust Litigation*, 200 F.R.D. 297, 325 (E.D. Mich. 2001) (where it was not

25   obvious that all members of the class would be willing to independently sue their suppliers, class
     action was the most efficient and fair method for resolving this controversy); *Natchitoches*
     *Parish Hosp. Service Dist. v. Tyco Intern., Ltd*., 247 F.R.D. 253, 273 n.6, (D. Mass. 2008),

26   *subsequent determination,* 262 F.R.D. 58, 2009-2 Trade Cas. (CCH) ¶ 76746 (D. Mass. 2008)
     ("Distributor class members may be reluctant to bring actions against manufacturers, and thus 'a

27   class action may be the only practical method for resolving their claims") (*citing In re Industrial*
     *Diamonds Antitrust Litigation*, 167 F.R.D. 374, 386 (S.D. N.Y. 1996) (same); *Paper Systems*

28   *Inc. v. Mitsubishi Corp*., 193 F.R.D. 601 (2000) (same).

1

2

### 3.     Certification Of A Nationwide Class Is Appropriate Because Defendants' Conduct Emanates From California

3

4       This Court may certify a nationwide class because Ubiquiti is not only headquartered in

5   California, but also because the misconduct complained of herein originated in and emanated

6   from California.  *See, e.g.*, *In re POM Wonderful LLC Markt. and Sales Practices Litig.*, 2012

7   WL 4490860, at *2-*4 (C.D. Cal. Sep. 28, 2012) (applying California law to a nationwide class);

8   *Chavez*, 268 F.R.D. at 379 (nationwide application of California law permissible where

9   defendants headquartered in California and "their misconduct allegedly originated in

10  California"). A federal court sitting in diversity must apply the choice-of-law rules of the forum

11  state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under California's

12  choice-of-law rules, California law may apply to a nationwide class where the state has a

13  "significant contact or significant aggregation of contacts" to the claims asserted, such that "its

14  application is not arbitrary or unfair . . . and so long as the interests of other states are not found

15  to outweigh California's interest in having its law applied." *Wash. Mut. Bank v. Superior Court*,

16  24 Cal.4th 906, 921 (2001). If this test is satisfied, the presumption is that California law applies;

17  the burden of proving otherwise rests with the party seeking to invoke foreign law. *Id.*

18      Ubiquiti has substantial contacts with California. Ubiquiti is headquartered in San Jose

19  California. ██████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████



Thus, the conduct and statements that gave rise to Plaintiffs' claims against Ubiquiti (fraudulent inducement *and* breach of warranty) took place in, arose from, and emanated from California.  California has a substantial interest in addressing such conduct. *See Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1063-64 (1999) (noting California's "clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country. . . [and] legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices"). Under these circumstances, this Court may and should apply California law nationwide.  *See, e.g.*, *In re POM Wonderful*, 2012 WL 4490860, at *2-*4 (certifying nationwide class under California law); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 543 (C.D. Cal. 2012) (refusing to reconsider decision to certify nationwide class under California law).

**Breach of Warranty:**  In order to prevail on a claim for breach of warranty, Plaintiffs must plead and prove: "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D.

Cal. 2014).

In this case, the statement that TOUGHCable was "outdoor" cable constitutes an 'affirmation of fact or promise' or a 'description of the goods'.  See Dkt. 100, 15:17 (Order on Motion to Dismiss).  This affirmation/ description was created in and disseminated from California. All of the marketing that positioned TOUGHCable as "Outdoor" cable, ███████████ ████████████████████████

Ubiquiti's "outdoor" description, made from California, was 'part of the basis of the bargain'.  *Keith v. Buchanan*, 173 Cal.App.3d 13, 23 (1985) ("[A] number of California state appeals courts have found that "[a] warranty statement made by a seller is presumptively part of the basis of the bargain, and the burden is on the seller to prove that the resulting bargain does not rest at all on the representation.").

Ubiquiti's affirmation of fact and description of TOUGHCable – that it was "Outdoor" cable – was breached because ███████████████████████ ██████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ████████████████████.  *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 534 (C.D. Cal. 2012)███████████████████████████ ████████████████████████████ ████████████████████████ ████████████████████████████ ████████████████████████  *Id*.  California law is therefore properly applied to Plaintiffs' breach of warranty claims.

**Fraudulent Inducement:**  Under California law, the elements of a fraudulent inducement claim are: "(a) a misrepresentation; (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal.App.4th 289, 294 (2005)   The evidence indicates that Ubiquiti employees in the California headquarters knew that TOUGHCable was not and could not be sold as "outdoor"

cable, ████████████████████████████████████████

████████████████████████████████████████

Despite this unambiguous and readily observable fact, Ubiquiti nevertheless intended to and did expressly market TOUGHCable as "outdoor" cable.  Three of the five elements of a fraudulent inducement claim took place exclusively in California.  The purchase and installation of TOUGHCable by customers in outdoor environments, and the damages that resulted when the cable was exposed to sunlight, were entirely preordained from decisions made and actions taken in California. California law is therefore properly applied to Plaintiffs' fraudulent inducement claims.

### 4.      Plaintiffs' Method for Determining Class Damages

At the class certification stage, a plaintiff need only demonstrate "'a likely method for determining class damages,' though it is not necessary to show that his method will work with certainty at [that] time." *Chavez*, 268 F.R.D. at 379 (citations omitted). "Though the amount of damages is an individual question, it does not defeat class certification." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Where the amount of damages or restitution is subject to a formulaic calculation, common questions predominate. *Id*. at 905; *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006) (holding that for purposes of class certification, it is sufficient that plaintiffs show "a facially plausible method" for establishing proof of monetary relief on a class-wide basis).[7]

Rule 23(b)'s predominance requirement can be satisfied even when there are individualized damage issues. *See Id.; Allapattah Servs., Inc. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003) aff'd sub nom. *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546

---

[7] When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate. *See* Advisory Committee's 1966 *Notes on Fed. Rule Civ. Proc.* 23, 28 U.S.C. App. at 141 ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."); Wright, Miller, & Kane, 7AA *Fed. Prac. & Proc. Civ.* § 1781, at 235-37; 2 W. Rubenstein, *Newberg on Class Actions* § 4:54 at 205 (5th ed. 2012) (ordinarily, "individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)").

(2005) ("Based upon the facts of this case, we believe that Exxon's liability to the class for breach of the dealer agreements predominated over the individual issues relating to damages."). And, as the Ninth Circuit recently explained, "damage calculations alone cannot defeat class certification." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-1168 (9th Cir. 2014).

Several categories of damage were incurred by class members who installed defective TOUGHCable:  Replacement cable and accompanying cable connectors had to be purchased, damaged radios had to be replaced; the bad cable had to be removed and the good cable had to be reinstalled in its place; travel to and from the replacement site (both travel costs and travel time) had to be compensated; downtime, lost connectivity, and compensation to customers.  All of these categories of damages are directly traceable to the defective TOUGHCable.  None of these expenditures would have occurred if the TOUGHCable had been true "Outdoor" cable.

In order to present a consistent, formulaic method of calculating damages on a class wide basis, Plaintiffs propose a model which will permit recovery for just one of the categories above, direct labor costs to replace TOUGHCable.  Plaintiffs propose the following formula:

| number of boxes | x | hours-per-box | x | applicable labor rate | = Class member's recoverable damages pursuant to the judgment obtained in this case (plus interest). |
|---|---|---|---|---|---|

This formula assesses and determines an amount of time necessary for the replacement of cable on a per foot basis.  Although the types and kinds of installations of outdoor cable vary (some require towers, some are remote locations, some are at office buildings), the one common element amongst them all is that it takes skilled labor an average amount of time to install "X" number of feet of cable, regardless of the installation or reinstallation. That is, a tower might use a thousand feet of cable and a customer location might use 25 feet of cable.  But the ratio of time that it takes to do a reinstallation per foot will be consistent when calculated on a per-foot basis. For example, one customer location may require 25 feet of cable and take an hour to install, while a tower that requires a thousand feet of cable may require 40 man-hours.  For either location, the amount of time per foot will remain relatively consistent.  Plaintiffs will establish the time-per-foot ratio at the time of trial

The second step is to then apply a labor rate to the time-per-foot ratio.  It takes skilled

labor to lay cable.   Veilleux Decl., ¶5; Wold Decl., ¶5; and Fantacone Decl., ¶6.  Different

geographical areas will have different labor rates for such skilled labor.  Plaintiffs will establish

at the time of trial a minimum labor rate for each of the areas in which a class determination has

been made.  That minimum labor rate will then be plugged into the calculation of damages.

Class members who wish to claim under this formula will then provide only two pieces of

information: (1) the number of boxes of cable they installed; and (2) their location.

     Any Class members that have greater damages than are yielded by the formula will be

provided with the option to "opt out" of the damage award, and provided with the opportunity to

seek a hearing to prove up their actual damages, through evidence and testimony.

     Plaintiffs propose a post-judgment administrative proceeding (upon notice) where the

records of Ubiquiti's distributors will be used to track down purchasers of TOUGHCable.

(Purchasers from Streakwave can be determined directly from Streakwave's records.)  Those

class members will be advised of the claims procedure, including the need to provide the claims

information that will make them eligible to receive the class award, and alternatively, the

procedure that they must follow if they wish to pursue an enhanced award.  Plaintiffs' proposed

damages methodologies are sufficient to meet their burden at the class certification stage.

**E.      Alternatively This Court May Employ Rule 23(c)(4) to Certify a Class on Designated Issues**

     In the event this Court holds that any particular class claim fails to satisfy the

requirements of Rule 23(b), Plaintiffs alternatively move for certification of relevant issues

classes under Rule 23(c)(4). The claims asserted herein are suitable for full certification under

Rules 23(b)(3), but Rule 23(c)(4) can be used to certify issue classes to resolve predominating

disputed issues common to all class members.[8]  Here, common questions can be addressed

---

[8] Fed. R. Civ. P. 23(c)(4) ("When appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."); *Ellis*, 285 F.R.D. at 544 ("[E]ven if individualized issues were to predominate with respect to Plaintiffs' monetary relief claims, the Court would utilize the mechanism under Rule 23(c)(4) to adjudicate those issues capable of classwide resolution separately."); *see also* 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1790 (3d ed. 2005) (stating that subsection

though a limited set of factual issues relevant to Class claims presented to a jury:

1.      The falsity of Ubiquiti's representation concerning the outdoor suitable of its TOUGHCable, including omissions to disclose facts Ubiquiti was required to disclose;

2.      The materiality of each such representation or omission to purchasers of Ubiquiti TOUGHCable;

3.      Whether the representations by Ubiquiti that its TOUGHCable product was "outdoor" cable were part of the basis of the bargain for the Class;

4.      Ubiquiti's state of mind relating to each such representation (scienter, *i.e.*, intent to deceive or recklessness);

5.      Reliance by purchasers of Ubiquiti TOUGHCable on the representations and omissions by Ubiquiti;

6.      Whether purchasers of TOUGHCable are entitled to consequential damages (labor costs as a factor of time to replace) incurred in replacing defective TOUGHCable; and

7.      The entitlement of Class members to punitive damages.

These narrowly defined issues fit squarely within the bounds of warranting Rule 23(c)(4) certification.

**V.     CONCLUSION**

For the forgoing reasons Plaintiffs respectfully request that the Court grant the relief requested in the Notice of Motion.

DATED:  April 23, 2015            By:   /s/Alan Himmelfarb_____

                                       David C. Parisi (SBN 162248)

(c)(4) "may be used to designate appropriate classes or class issues at the certification stage" so that "the court can determine whether, as so designated, the other Rule 23 requirements are satisfied").

Suzanne Havens Beckman (SBN 188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Alan Himmelfarb (SBN 90480)
THE LAW OFFICES OF ALAN HIMMELFARB
80 W. Sierra Madre Blvd. #304
Sierra Madre, California 91024
Telephone: (626) 325-3104