Alan Himmelfarb (SBN 90480)
consumerlaw1@earthlink.net
THE LAW OFFICES OF ALAN HIMMELFARB
80 W. Sierra Madre Blvd. #304
Sierra Madre, California 91024
Telephone: (626) 325-3104

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASION COMMUNICATIONS INC., a Canadian corporation, dba Planet Telecom, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>UBIQUITI NETWORKS, INC. a Delaware corporation,<br><br>        Defendant. | CASE No. CV 13-1803-EMC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:     July 16, 2015<br>Time:    1:30 p.m.<br>Judge:   Hon. Edward Chen<br>Place:   San Francisco Division,<br>           Courtroom 5 |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. UBIQUITI'S CHOICE OF LAW ANALYSIS DOES NOT DEFEAT PREDOMINANCE WITH RESPECT TO PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM ........................................................... 1

III. PLAINTIFFS HAVE MET THEIR BURDEN ON COMMONALITY ........................... 4

    A. Ubiquiti Makes Baseless Assumptions re: Plaintiffs' Responses to Discovery. ....................................................................................... 4

    B. There are no Differences in "Batches" Which Would Preclude Certification. ............................................................................... 5

    C. The ███████ Test ....................................................................... 7

    D. ███████ Shipped Only TOUGHCable Pro and Carrier – Not Level 1 or 2. ............... 8

    E. There Are No Affirmative Defenses, Let Alone Affirmative Defenses That Create Individual Issues. ....................................................... 9

IV. "OUTDOOR" ADVERTISEMENT ............................................................. 10

V. PLAINTIFFS' DAMAGES MODEL ............................................................ 10

VI. CLASS TREATMENT IS SUPERIOR HERE ............................................. 11

VII. PLAINTIFFS HAVE NOT ENGAGED IN INAPPROPRIATE CLAIM SPLITTING ............................................................................................ 11

VIII. "COMPLETED" IS A REFERENCE POINT, NOT THE CLASS DEFINITION ......... 12

IX. THIS CASE MAY BE CERTIFIED PURSUANT TO RULE 23(C)(4) ................. 12

    A. The Class Definition and Proposed Trial Plan ................................. 13

    B. The Issues Class ........................................................................ 15

    C. Principles Underlying the Class Definition ...................................... 16

        1. Limitation to Representation-Based Issues ............................... 16

        2. Jury Resolution of Issues; Court Resolution of Claims .............. 17

    D. The Proposed Issues Class Is Appropriately Limited in Particular Issues ............ 18

    E. A Multi-State Class Is Manageable .............................................. 19

X. CONCLUSION ........................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*In re Activision Securities Litig.*,
    621 F.Supp. 415 (N.D. Cal. 1985) ...................................................................................18

*In re Comp. Mem. Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986) ....................................................................................18

*Daubert v. Merrell Dow. Pharms., Inc.*,
    509 U.S. 579 (1993) ..........................................................................................................1

*F.T.C. v. Procter & Gamble Co.*,
    386 U.S. 568 (1967) ..........................................................................................................1

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................18

*Klaxon Co. v. Stentor.*,
    313 U.S. 487 (1941) ........................................................................................................17

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. Cal. 2012) ........................................................................1, 2, 3, 4

*McVicar v. Goodman Global, Inc.*,
    1 F. Supp. 3d ....................................................................................................................2

*Murray v. GMAC Mortgage Corp.*,
    434 F.3d 948 (7th Cir. 2006) ..........................................................................................12

*Ruiz v. Affinity Logistics Corp.*,
    No. 05CV2125 JLS (CAB), 2009 WL 648973 (S.D.Cal. Jan. 29, 2009) ........................17

*Society for Individual Rights, Inc. v. Hampton*,
    528 F.2d 905 (9th Cir. 1975) ..........................................................................................18

*Sullivan v. Chase Inv. Services of Boston, Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978) .....................................................................................19

*U.S. v. Schuster*,
    467 F.3d 614 (7th Cir. 2006) ..........................................................................................10

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir.1996) .....................................................................................13, 14

*White v. E-Loan, Inc.*,
    2006 WL 2411420 (N.D. Cal. 2006) ..............................................................................12

*Williams v. Lockheed Martin Corp.*,
   No. 09CV1669 WQH (POR), 2011 WL 2200631 (S.D. Cal. June 2, 2011) ............................1

**California Cases**

*American Honda Motor Co., Inc. v. Superior Court*,
   199 Cal. App. 4th 1367 (2011) ............................................3

*Bii Fin. Co. v. U-States Forwarding Servs. Corp.*,
   95 Cal. App. 4th 111 (2002) ............................................9

*Cardinal Health 301 v. Tyco*,
   169 Cal. App. 4th 116 (2008) ............................................3

*Hewlett-Packard Co. v. Superior Court*,
   167 Cal.App.4th 87 (2008) ............................................3

*Hicks v. Kaufman & Broad Home Corp.*,
   89 Cal. App. 4th 908 (2001) ............................................3

*Keith v. Buchanan*,
   173 Cal.App.3d 13 (1985) ............................................3

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) ............................................1

**California Statutes**

Cal. Civ. Code
   § 3294............................................18, 20

**Other Authorities**

Excerpt from http://en.wikipedia.org/wiki/MAC_address (last visited, June 7,
   2015) ............................................10

Fed. R. of Evid.
   Rule 702 ............................................1

*Newberg on Class Actions*
   Sec. 3:59............................................11, 12
   Sec. 16:22............................................19

Fed. R. Civ. Pro.
   Rule 23 ............................................1, 14, 18, 19
   Rule 23(a)(4)............................................12
   Rule 23(b)(3)............................................12, 13
   Rule 23(c)(2)(B)(v)............................................12

Rule 23(c)(4) ................................................................................................ *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Ubiquiti sold "outdoor" cable, failed to include ███ protection in order to ██████████ knew that the product would fail, and the product did fail.  Ubiquiti throws up a panoply of arguments to avoid certification of claims or issues, but the arguments cannot hold water.  The facts on which Ubiquiti's arguments are founded are demonstrably erroneous.  Many of Ubiquiti's key legal arguments misapply the law, or are predicated on law inapplicable to this case.  Ubiquiti has failed to demonstrate that certification of a class (or classes) is inappropriate in this action.[1]

## II.   UBIQUITI'S CHOICE OF LAW ANALYSIS DOES NOT DEFEAT PREDOMINANCE WITH RESPECT TO PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM

Ubiquiti misapplies the holding of *Mazza* to the facts of this case.  The core inquiry underlying the choice of law analysis is:  "California law may only be used on a classwide basis if '*the interests of other states are not found to outweigh California's interest in having its law applied.*'"  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. Cal. 2012) (emphasis

---

[1]    The testimony of David Stewart and Mary Kay Kane should be excluded as neither reliable nor relevant under *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 592-93 (1993) and Fed. Rule of Evidence 702.

Stewart opines that Plaintiffs:  suffered no loss or damages; were not injured by Ubiquiti's representations;  suffered no losses because of UV degradation of TOUGHCable; could not identify where or when TOUGHCable was installed; that TOUGHCable did not fail (a position that even Ubiquiti seems to have abandoned in its opposition brief); etc. are all based upon the same erroneous misinterpretations of Plaintiffs' discovery (see Supplemental Declarations of Plaintiffs, *infra*), the conclusions of law in Ubiquiti's brief, and are all compounded by the fact that Stewart shows utterly no comprehension of the business  or business model that WISPs are engaged in.  It is clear that Stewart never handled, installed, or replaced cable in his life, yet he has managed to opine in his academic opinion that none of the Plaintiffs know what they are talking about.  Stewart also ignores the basic fact that the marketing industry is based on the premise that representations by manufacturers actually matter. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011) citing *F.T.C. v. Procter & Gamble Co.*, 386 U.S. 568, 572 (1967).

Kane's testimony is inadmissible legal opinion.  The report is essentially an advocacy piece on the ability of Plaintiffs to meet the requirements of Rule 23.  It reads like a legal brief that sets forth arguments and conclusions regarding purported "practical difficulties" in managing this class action that stem from the applicable Rule 23 requirements and choice of law rules.  Because Ms. Kayne is no more of an authority on class certification than the Court or any other attorney, her report should be stricken as superfluous, unnecessary, and inadmissible legal opinion. *Williams v. Lockheed Martin Corp.*, No. 09CV1669 WQH (POR), 2011 WL 2200631, at *15 (S.D. Cal. June 2, 2011) (citation omitted; ellipsis in original) ("[w]here an 'expert report' amounts to written advocacy ... akin to a supplemental brief, a motion to strike is appropriate because this evidence is not useful for class certification purposes").

added).  *Mazza* mandates a "three-step governmental interest test" to make this determination.  *Id*.

Applying Step 1 of the *Mazza* analysis, Ubiquiti identifies differences among the various states with respect to the potential conflicts, and correctly identifies those conflicts as potentially material.  Ubiquiti then notes the second step of the *Mazza* inquiry; that such conflicts pose "true conflicts." Plaintiffs differ with Ubiquiti's characterizations in this second step of the analysis, but nevertheless do not challenge it.  It is the third step of the *Mazza* analysis where Ubiquiti makes its fundamental error with respect to Plaintiffs' claims for breach of warranty.

In determining which state interest is the most impaired, *Mazza* instructs that the "courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions." *Id*. at 593.  In order to ensure that states apply its laws only to "transactions within its borders," *Mazza* sets forth the standard for making that determination: "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest;'" and the criteria:  "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id*.

Inexplicably, Ubiquiti launches into an analysis of where the last event for liability occurred by resort to contract law ("Even under California law, a contract is deemed 'made where the last act required for the completion of its execution was performed.'" Opposition, 10:1-2). Plaintiffs however, do not assert a claim for "breach of contract."  Plaintiffs' breach of contract claim was dismissed by this court (with prejudice) on June 26, 2014.  Dkt. No. 100, 9:9.

Plaintiffs' claim in this action is for breach of express warranty. Breach of express warranty has three elements to establish liability: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.  *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d. 1044, 1057 (C.D. Cal. 2014).  *See* Dkt. 142, 20:25 – 21:23.  Ubiquiti does not challenge or even address Plaintiffs arguments that the "place" of each of these elements was in California. Under *Mazza*, the "place of the wrong" is the "state where the last event necessary to make the actor liable occurred."  *Mazza* at 593.  Ubiquiti's liability for breach of warranty, as discussed in the Motion, now conceded by Ubiquiti, took place wholly in California.

Under California law, proof of damage or injury is not an element to establish liability in breach of warranty. *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 922 (2001) ("The primary right alleged to have been violated . . . was the right to take a product free from defect. The defect did not cause the plaintiffs' injury; the defect *was* the injury."):

> The question before us is whether malfunction is an element of a cause of action for breach of warranty. … [W]e conclude proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product.

*Id.* at pp. 917-918. *Accord, Hewlett-Packard Co. v. Superior Court,* 167 Cal.App.4th 87, 96 (2008).) *See also American Honda Motor Co., Inc. v. Superior Court*, 199 Cal. App. 4th 1367, 1375 (2011) ("*Hicks* and *Wolin* are in agreement that proof of current manifestation of the defect is not necessary in a breach of warranty class action.")

Under California law, "damages" are not necessary to establish the threshold question of "liability." "Liability" is what *Mazza* looks to in order to establish the "place of the wrong." *Cardinal Health 301 v. Tyco*, 169 Cal. App. 4th 116, 149 (2008) ("The issue that the damage did not manifest in all the products raises the issue of the proper amount of damages to which Cardinal is entitled, not the question of whether Tyco is liable for a breach of warranty at all.").

In this case, to paraphrase *Hicks*: "The primary right that was violated was the right to take TOUGHCable free from defect. The defective TOUGHCable did not *cause* plaintiffs' injuries; the defective TOUGHCable *was* the injury.' Applying California law, the "wrongs" that gave rise to liability for breach of warranty all occurred in one state, California: (1) Ubiquiti's representations and promises with respect to TOUGHCable were effectuated in California; (2) the statements became part of the basis of the bargain in California[2]; and (3) the "breach" was the TOUGHCable itself (the defective TOUGHCable *was* the injury). In other words, there was no action or circumstance needed on the part of the purchaser that would alter the fact that the

---

[2] "A warranty statement made by a seller is 'presumptively part of the basis of the bargain, and the burden is on the seller to prove that the resulting bargain does not rest at all on the representation.'" *Keith v. Buchanan*, 173 Cal.App.3d 13, 23 (1985). The presumption arises out the making of the statements which, of course, took place in and from California. The burden then shifts to the seller to offer evidence that that the statement the basis of the bargain. Ubiquiti has put forward no evidence at all to refute this element, nor does Ubiquiti challenge the locus of this element in California.

TOUGHCable was *already* defective and in breach of the warranty before the product was even shipped. Applying the *Mazza* analysis to the facts of this case, California has a "predominant interest" in applying its own breach of warranty laws, since "*the interests of other states are not found to outweigh California's interest in having its law applied,*" because "place of the wrong" is California. Following clear guidance from the Ninth Circuit, under these particular circumstances, *Mazza* would apply the laws of California to a nationwide class for breach of express warranty.

Notice of breach of warranty to was provided to Ubiquiti on behalf of a class of all TOUGHCable purchasers by each of the named Plaintiffs in this action.[3] The principals that underlay sending notice individually are fully satisfied by notices provided on behalf of a class. If, however, this Court determines that notice may not be effective on behalf of a Class, substantial numbers of TOUGHCable purchasers provided individual notice of problems with TOUGHCable: through Ubiquiti's RMA process (both for TOUGHCable *and* for other products that failed because of TOUGHCable); to Ubiquiti via the Ubiquiti community website; and by direct communication where the author did not seek RMA replacement cable.[4]

With respect to Plaintiffs' fraudulent inducement claim, Ubiquiti correctly points out that there exist material differences among the various states. Further, contrary to Plaintiffs' breach of warranty claim, the "last act" giving rise to Ubiquiti's liability for fraudulent inducement would be the state where class members incurred damage. Following *Mazza,* California law may not be applied to a nationwide fraud class. Plaintiffs therefore address their fraud claims in the context of their proposal for certification of a class pursuant to Rule 23(c)(4), discussed below.

## III.  PLAINTIFFS HAVE MET THEIR BURDEN ON COMMONALITY

### A.  Ubiquiti Makes Baseless Assumptions re: Plaintiffs' Responses to Discovery.

Ubiquiti argues that Plaintiffs' responses to discovery establish that: Individual issues

---

[3]  Tasion gave notice to Ubiquiti on October 3, 2013; Camplink gave notice on August 21, 2014; and Freeway gave notice to Ubiquiti on October 18, 2013. Supp. Himmelfarb Decl., Exhibits 42, 43 and 44.

[4]  Ubiquiti argues that an RMA rate of 13% in some way leads to *prima facia* conclusion that there was an 87% non defective rate. But to the contrary, far more customers made known their problems with TOUGHCable than actually participated in the RMA process. See, e.g., Himmelfarb decl., Exhibit 24 and Supp. Himmelfarb Decl., Exhibit 49.

predominate with respect to causation (Opp. 8:8) There are insurmountable differences among the Plaintiffs regarding the use, installation, and failures of TOUGHCable (Opp. 5:7); There exists no commonalty (Opp. 25:23), and, Plaintiffs claims are not typical (Opp. 27:21).

The problem underlying *all* of these arguments is that they are based wholly upon unsupported (and unsupportable) supposition, surmise, and conjecture. Ubiquiti appears to have taken the written discovery responses of the Plaintiffs and made wild leaps of deduction, without bothering to verify whether any of their conclusions were in any way supported by actual facts.

It is simply and easily demonstrably <u>false</u> that: Plaintiffs don't know where or when TOUGHCable was installed; that Plaintiffs are claiming damages for cable other than TOUGHCable; that TOUGHCable did not universally fail; that TOUGHCable is still functioning in the field; that no customer complaints arose as a result of the failures of TOUGHCable; that TOUGHCable was replaced without being inspected; etc. etc. etc.

Accompanying this Reply are the supplemental declarations of Tasion, Camplink, Freeway which set the record straight, and refute the numerous misstatements of interpretation upon which the large majority of Ubiquiti's factual arguments are based. Had Ubiquiti taken the depositions of *any* of the plaintiffs, many of Ubiquiti's leaps of deduction, improvidently put forward in its Opposition as "irrefutable fact," could have been subjected to reasoned inquiry to ascertain whether these "leaps in fact" had any basis in reality.

**B.** **There are no Differences in "Batches" Which Would Preclude Certification.**

On January 8, 2015 plaintiffs served written certification discovery on Ubiquiti. The discovery sought evidence Ubiquiti might rely upon that different TOUGHCable batches had different levels of UV resistance, and to obtain the evidence Plaintiffs would need to refute those arguments. Supp. Himmelfarb Decl., Exhibit 45 (Plaintiff's first set of interrogatories with Ubiquiti's responses). Ubiquiti's responses to the discovery were the subject of a three-page joint discovery letter. Dkt. No. 137. This Court ruled: "The Court notes the problems with Ubiquiti's initial responses, because it does not find that Ubiquiti has substantiated its position that 'it has been responding in good faith to all discovery requests.' " Dkt 137, 5:16-18. The Court Ordered Ubiquiti to provide responses to certain discovery requests. The Court further stated in its Order:

The Court notes, however, that in considering class certification, the Court will not be inclined to consider any facts that were not disclosed in discovery despite being the subject of a discovery request or to consider any opinion based on such undisclosed facts. Dkt. No. 137, 9:2-5.

This is precisely the situation in which Plaintiffs find themselves. Interrogatories specifically directed to identifying serial numbers of the TOUGHCable, so that different batches could be tracked (Tasion's Interrogatory No. 11 – Ubiquiti's response: "*Based on the foregoing objections, Ubiquiti will not provide a substantive response to this Interrogatory*"); identifying actions and changes made to TOUGHCable manufactured following its UV testing (Tasion Interrogatory No. 21 – Ubiquiti's response: "*Based on the foregoing objections, Ubiquiti will not provide a substantive response to this Interrogatory*"); and information related to failure analyses specifically focused on "the chemical composition of the jacket and/or the raw materials that were used in the manufacture of the jacket." (Tasion Interrogatory Nos. 22 and 23 – Ubiquiti's response: "*Based on the foregoing objections, Ubiquiti is unable to respond to this Interrogatory*") were all subject to evasion and refusal to respond. See Exhibit 45, pgs. 16:26-27; 25:2-3; 25:19; 26:18, to the Supp. Himmelfarb Decl. Ubiquiti's refusal to respond to specifically focused discovery requests have prejudiced Plaintiffs in their ability to refute Ubiquiti's "batch" assertions.

The fact is, however, there were no "batch issues" affecting the vulnerability of TOUGHCable to UV degradation (exposure to sunlight). The UV degradation problem arose from a single decision by Ubiquiti's managing agent in China to treat recommendations made by the Chinese ███████ engineers to ████████████████████████████████████ ███████" (Himmelfarb Decl., Exhibit 9). Whether the cable was PVC or PE, it is still a synthetic polymer, and thus, definitionally, it is vulnerable to UV degradation when exposed to sunlight, *unless* UV resistant additives are added to the formula to slow down polymer breakdown in UV light. The following chart shows boxes of TOUGHCable purchased by the three Plaintiffs, by month (each "X" represents one box of TOUGHCable purchased).

### Purchases of TOUGHCable by Class Representatives (Boxes by Month)

| 2011 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan 2012 | Feb 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tasion | | | xxxx x | xxx | xxxx | | x | | | xxx xxx | | | | xx |
| Freeway | | x | | | | | | | xx | x | | | | x |
| Camplink | | | | | | | | | xx | xx | | xx | | x |

These purchases represented both Level 1 and 2.  They were purchased randomly throughout the year between February 2011 and February 2012 and from different distributors.  They were installed under a wide variety of environmental conditions for towers, customer locations and backhauls, by a wide variety of installers.  And they *all failed* – equally and from the same cause – a total lack of UV resistant additives.  Himmelfarb Decl., Exhibit 9.  These failures were identical, whether installed in jungle, mountain, or desert, often within a few months of use.  Supp. Himmelfarb Decl., Exhibit 50, 51, 52 and 53.  This fact alone is *prima facia* evidence that all of Ubiquiti's attempts to shift the blame to "batches," installer error, or unique environmental conditions, is unavailing. Plaintiffs hereby offer into evidence, and will produce at the hearing on class certification on July 17, samples of failed TOUGHCable from Camplink, Tasion, and Freeway, installed in diverse environments (coastal campgrounds, tropical jungle, and desert). They all look the same. It doesn't matter what the environmental conditions pertained at the installation location, or who installed it. The common denominator was sunlight, and sunlight was present wherever and however it was installed on the planet.

Ubiquiti tosses in other anecdotal assertions in support of its claim that different TOUGHCable batches would yield different UV exposure results.  They are disposed of below.

**C.    The** ▮▮▮▮▮▮▮▮

Ubiquiti claims that the ▮▮▮▮▮▮▮ "undeniably passed" the TOUGHCable Level 1 sample, and this proves that "representations regarding the "outdoor" nature of TC cannot be false" with regard some batches of the TOUGHCable. Dkt. No. 177, 24:9-10.  However, the ▮▮▮ ▮ test performed on cable samples was a different test than the one completed in December 2010 by ▮▮▮▮▮▮▮  For the ▮▮▮▮▮▮ test, the testers were looking for "cracks,

discoloration, brittleness, any other abnormalities."[5] By contrast, the ███████ test was only

looking for '████████ No report of "cracks, discoloration, brittleness, any other abnormalities"

was made by ████████, because, pursuant to the rigid test protocol ordered by Ubiquiti, none of

that criteria was looked for.[6] The only criteria actually looked for, or subject to notation in the

test report, was how would the cable test samples perform on ███████████████████████

███████████ Choo Decl., Exhibit 45, pps. 2-8 of 50.

It is interesting to note that the UV test performed on TOUGHCable by ███████████ in

December 2011 yielded the same bend result: "I flexed the cable (2 distinct cables in fact) and all

appeared good."[7] In other words, the December 2010 test samples of TOUGHCable Level 1 and

2 subjected to testing by ████████ would have passed the ████████ test which only checked

the 2011 samples for ███████████. Yet the cable tested by ████████ in 2010

nevertheless showed clear signs of degradation beyond the simple bend test – results that proved

to be reliable predictors of its inevitable failure in the field. We have no way of knowing

whether discoloration, usually the first sign of UV degradation, occurred in the ████ samples,

because, first, ████████ was not instructed to look for it, and second, the photographs provided

in Exhibit 45 to the Choo declaration are entirely illegible.

**D.** ████████ **Shipped Only TOUGHCable Pro and Carrier – Not Level 1 or 2.**

Ubiquiti endeavors to create a "batch" issue out of its replacement manufacturer, ████████

However, the mere submission of an unsupported Purchase Order for Level 1 and Level 2

suggests at best that the Ubiquiti ordering department in Hong Kong had not yet received (or had

---

[5] ███████████████████████████████████████████████████
███████████████████████████████████████████ (Himmelfarb Decl., Exhibit 17).

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████ Choo Decl., Exhibit 45, p. 7 of 50.

In an email between Ubiquiti employees dated December 3, 2010, they state: "I noted
some darkening of the exterior jacket. Also, there was some notable (very minor) exterior
cracking of the jacket. The good new [sic] is there was no breach whatsoever visible. I flexed the
cable (2 distinct cables in fact) and all appeared good. The images I took are garbage. So no
images" (Himmelfarb Decl., Exhibit 36).

not yet created) a new protocol for ordering the replacement product TOUGHCable Pro / Carrier. The new manufacturer (████████ certainly did not ship any Level 1 or Level 2 TOUGHCable. At the time the purchase order was issued, ██████ and Ubiquiti headquarters were still working out and had not yet approved the ████████████████████████████[8] All ██████-produced cable was shipped as TOUGHCable Pro or Carrier. Himmelfarb Decl., Exhibit 29. Thus, there were no batch issues regarding the product identified as TOUGHCable Level 1 or 2 created by the second replacement manufacturer, ████████

### E. There Are No Affirmative Defenses, Let Alone Affirmative Defenses That Create Individual Issues.

Ubiquiti proffers two affirmative defenses that Ubiquiti contends should militate against class certification. Neither work. Accord and satisfaction is inapplicable. A defendant asserting the defense of accord and satisfaction must establish "(1) that there was a 'bona fide dispute' between the parties, (2) that the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim, and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue." *Bii Fin. Co. v. U-States Forwarding Servs. C*orp., 95 Cal. App. 4th 111, 126 (2002).

Ubiquiti clearly knew how to enter into an accord and satisfaction. Plaintiffs have located close to twenty cases where customers complained about TOUGHCable and Ubiquiti subsequently entered into formal agreements with TOUGHCable purchasers fully settling and the claims. See e.g. Supp. Himmelfarb Decl., ¶10 and Exhibits 47 (collecting sample Ubiquiti settlement agreements) and 48. No such agreements were signed with respect to any of the named plaintiffs, or for that matter, anyone else in the class.

Second, Ubiquiti's warranty is, by its own terms, inapplicable to TOUGHCable. See Dkt.

---

[8] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Supp. Himmelfarb Decl., Exhibit 46.

No. 177-60, Ex. 56:

> **Limitation of Warranty:**
> This warranty does not apply if the Product:
> . . . .
> has no MAC Address label[9]

TOUGHCable does not have a MAC address, nor a MAC address label, and it never did.

## IV.  "OUTDOOR" ADVERTISEMENT

Ubiquiti offers zero argument or evidence in rebuttal with respect to the affirmative representations Plaintiffs rely upon to certify a class, the omissions that Plaintiffs allege were concealed from the Class, and the utter failure of the TOUGHCable product to meet its advertising claims. It would appear that Ubiquiti is conceding liability.

## V.  PLAINTIFFS' DAMAGES MODEL

Ubiquiti's Opposition to Plaintiffs' proposed damages model begins with another assertion that is simply erroneous:  "Plaintiffs admit their simplistic model assumes that regardless of the location of installation the amount of time required to install a given amount of cable is identical . . ."  Dkt. No. 177, Opposition, 14:6-8.

Plaintiffs do not make this assertion.  Plaintiffs actually state:  "the amount of time per foot will remain relatively consistent."  Dkt. No. 142, 23:26.  Ubiquiti misapprehends the model Plaintiffs propose.  Plaintiffs concede that the amount of time it takes to lay 1,000 feet of cable is going to be subject to some degree of variation.  For example, Tasion installed cable at three 360-foot towers in Panama: ███████ and ██████ Choo Decl., Exhibit 6.  The ███ and █████ towers each required 21 man-hours each, while the ██████ tower required 24 man-hours to complete.  *Id*.  Circumstances unique to the █████ tower simply required more time to complete the installation.  What is constant, is that regardless of the complications for any particular install, there will be a *minimum* amount of time required to lay "X" feet of cable.  That is the question Plaintiffs propose to put to a jury.

---

[9]    A MAC address "is a unique number assigned to the hardware of a particular computer or other device."  *U.S. v. Schuster*, 467 F.3d 614, 618, n. 1 (7th Cir. 2006).  "MAC addresses are most often assigned by the manufacturer of a network interface controller [] and are stored in its hardware, such as the card's read-only memory or some other firmware mechanism. (Excerpt from http://en.wikipedia.org/wiki/MAC_address (last visited, June 7, 2015).)

Plaintiffs will present testimony regarding common, outdoor Ethernet installation practices and the amount of time it takes to proficiently lay cable through expert witnesses. The named Plaintiffs are also qualified to testify as to their own installation practices. This testimony will place the question before the jury of what is a reasonable minimum amount of time to install 1,000 feet (one box) of cable. That is a number. Ubiquiti is free to proffer its own experts and challenge the numbers Plaintiffs submit into evidence. If Ubiquiti has experts who will testify that 1,000 feet of cable can be installed in 10 hours or even 10 minutes, they should be given that opportunity to make their case before the jury. The jury would then decide the question of fact as to which numbers they found reasonable and credible. There simply will be some minimum number. That is the number Plaintiffs would then plug into the proposed formula for calculating damages, based on per box (times) reasonable hourly cost.

Ubiquiti's factual challenges to Plaintiffs' proposed damage model ("false," "defies logic," "arbitrary," etc.) are incorrect. They are based upon distortions, misinterpretations, and erroneous assumptions from Plaintiffs' discovery responses. *See* Supplemental Declarations of Plaintiffs. Such errors would not have seen the light of day had Ubiquiti undertaken to verify their "factual assertions" through depositions of the named Plaintiffs.

## VI.  CLASS TREATMENT IS SUPERIOR HERE

Ubiquiti cannot help but argue both ends of the spectrum: The class damages are too "large," and thus individual litigation is unsuited for class treatment (Dkt. No. 177, 16:21) and the Class damages are so "small" that they should be dealt with in small claims court (Dkt. No. 177, 17:22). Neither proposition advances the managerial burdens of the court. If a class member believes that its claim is "too large," it can opt out and pursue its claims individually. Conversely, clogging the small claims courts of this country with thousands of small claims actions does nothing to relieve the burden on the judiciary.

## VII.  PLAINTIFFS HAVE NOT ENGAGED IN INAPPROPRIATE CLAIM SPLITTING

Certification should not be denied because a class representative makes a choice on damages for herself and the class in order to create a more readily certifiable class. See *Newberg*

on *Class Actions* § 3:59 (5th ed.) and cases cited therein; *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (class representative "must be allowed to forego claims" to achieve certifiable class); *White v. E-Loan, Inc.*, 2006 WL 2411420 (N.D. Cal. 2006) (followed).  As the Court in *Murray* noted, "refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment." *Murray* at 953.  Furthermore, Ubiquiti minimizes the role of Rule 23(c)(2)(B)(v) – as Newberg on Class Actions points out, "absent class members will be protected because those with large actual damage claims may opt-out and pursue their claims individually . . . ." *Newberg on Class Actions*, § 3:59. If Plaintiffs were required to pursue all damages in this case, individual damages issues could quickly overwhelm the common questions and the suit would become unmanageable and uncertifiable.  Because Plaintiffs do not have an interest antagonistic to the interests of the class and their attorneys are qualified to handle this litigation, the proposed class satisfies the adequacy requirement of Rule 23(a)(4).

## VIII.   "COMPLETED" IS A REFERENCE POINT, NOT THE CLASS DEFINITION

Ubiquiti takes issues with the use of the word "completed" where it is been used by Plaintiffs used to delimit the intended boundary of the Class Definition (*e.g.* 6:13, 6:21). The word "completed" is not part of the Class definition, and is not intended as a defining criteria requiring testimony.  If the use of the term is viewed as problematic, or as a potential obstacle to certification, Plaintiffs propose that the term is easily substituted with another means of delimitation (e.g. purchased the product from a U.S. Distributor) that does not require testimony, or even any evidence other than the TOUGHCable purchase receipts or distributor sales lists, such as Streakwave's sales list (Himmelfarb Decl., Exhibit 31).

## IX.   THIS CASE MAY BE CERTIFIED PURSUANT TO RULE 23(C)(4)

Plaintiffs' proposed class for breach of express warranty is properly certified as a Rule 23(b)(3) nationwide class applying California law.  A Rule 23(b)(3) class based on fraudulent inducement, however, requires application of the laws of individual states due to variations in those 50 state's laws.  Such a class would not be manageable. Therefore, Plaintiffs propose that the fraud claims in this action be addressed through Rule 23(c)(4) – an "Issues Class."

In the Ninth Circuit, "if common questions do not predominate over the individual questions so that class certification of the entire action is warranted," a court may use Rule 23(c)(4) to "isolate the common issues ... and proceed with class treatment of these particular issues." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996) (court may use section (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement). This approach is consistent with the Advisory Committee Note on Rule 23(b)(3), which states that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."

Pursuant to the structure proposed below, an Issues Class would be able to resolve the fraud claims of class members in 49 states[10], while placing minimal burden on the Court through a trial of narrowly defined issues under a single state standard. The results of that trial can then be broadly applied to determine the rights of Class members in the remaining 48 states. This proposal includes a determination of the rights of the same class members to recover under a breach of express warranty claim, should California law be held not applicable to a nationwide class. Plaintiffs' proposal will allow the Court to resolve claims in 49 states based on a jury's determination of the *same legal and factual issues as it would decide in a California-only case*.

## A. The Class Definition and Proposed Trial Plan

Pursuant to Rule 23(c)(4), Plaintiff proposes a jury trial of factual issues relevant to Class claims. The jury's finding will be binding on both Ubiquiti and the Class on the issues presented to them. The jury's finding will then be applied by the Court to decide the claims of a forty-nine state Class against Ubiquiti for fraud and breach of express warranty. By having the jury decide issues and the Court determine how those issues affect claims, the Court can leverage the *same findings* that a jury would make for a California-only class to resolve the claims of Class members in forty-nine other states.

---

[10]     Plaintiffs eliminate purchasers in Louisiana because, as Ubiquiti notes, those purchasers are limited to a statute of limitation of one year. See Dkt. No. 177-1, ECF p. 7 of 50.

The jury will try the following issues:

1. The falsity of Ubiquiti's representation concerning the outdoor suitable of its TOUGHCable, including omissions to disclose facts Ubiquiti was required to disclose;

2. The materiality of each such representation or omission to purchasers of Ubiquiti TOUGHCable;

3. Whether the representations by Ubiquiti that its TOUGHCable product was "outdoor" cable were part of the basis of the bargain for the Class;

4. Ubiquiti's state of mind relating to each such representation (scienter, *i.e.*, intent to deceive or recklessness);

5. Reliance by purchasers of Ubiquiti TOUGHCable on the representations and omissions by Ubiquiti;

6. Whether purchasers of TOUGHCable are entitled to consequential damages (labor costs as a factor of time to replace) incurred in replacing defective TOUGHCable; and

7. The entitlement of Class members to punitive damages.

All issues will be tried under a preponderance of the evidence standard and, where appropriate, a clear and convincing evidence standard. As Ubiquiti admits, thirty-eight states require a clear and convincing standard of proof for fraud, twelve states require a preponderance of evidence standard and six states require a hybrid of these two standards. Dkt. No. 177-1, ECF p. 5 of 50. No other issues will decided in this action with respect to liability. If an Issues Class is determined to present a viable option for class certification, neither Ubiquiti nor Class members will be precluded from litigating any issue not decided or asserting any claim not fully resolved in this action.

The Class is defined as follows: "All persons or entities who purchased Ubiquiti TOUGHCable Level 1 or Ubiquiti TOUGHCable Level 2."

The Class – which is limited to particular issues – is the only class which needs to meet the requirements of Rule 23. *Valentino,* 97 F.3d at 1234. Because it is an issue-based Class, all parties will be bound by the jury's decision on these issues and all Class members have an interest in obtaining a favorable resolution of these issues. Subclasses are created as a case management tool to allow the Court to determine how the jury's decision of the issues affects the resolution of claims in particular states.

**B.      The Issues Class**

The geographic scope of the Class and the composition of the Subclasses are as follows:

**The Issues Class**: Purchasers of TOUGHCable Level 1 and/or TOUGHCable Level 2 in 49 states and the District of Columbia (this excludes Louisiana).

**Subclass 1 (Fraudulent Inducement):** Issues Class members in all Issues Class states.

**Subclass 1A (States with preponderance of evidence standard)**: Class members in twelve states: Alaska, Arkansas, California, Delaware, Georgia, Indiana, Montana, North Carolina, Rhode Island, South Dakota, Tennessee,[11] and Texas.[12]

**Subclass 1B (States with clear and convincing evidence standard)**: Class members in thirty-eight states: Alabama, Arizona, Colorado, Connecticut, District of Columbia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Utah, Vermont, Virginia, West Virginia, Wyoming, Florida, Iowa, Nebraska, Washington, and Wisconsin.[13]

**Subclass 2 (Breach of Express Warranty):** Issues Class members in all Issues Class states.

**Subclass 2A (States with a reliance requirement)**: Class members in twenty-three states: Arkansas, Michigan, Montana, Oregon, Rhode Island, South Dakota, Tennessee, Texas, Alaska, California, Minnesota, Oklahoma, Wyoming, Arizona, Connecticut, Florida, Georgia, Iowa, Kentucky, Maine, Nebraska, and North Carolina. Dkt. No. 177-1, Charts 1, 2 and 3

**Subclass 2B (States with no reliance requirement)**: Class members in twenty-seven states: Alabama, Colorado, Delaware, District, Illinois, Kansas, Massachusetts, Mississippi,

---

[11]      Because Plaintiffs are not seeking rescission or reformation of a written instrument due to fraud, the standard of proof for fraud in Tennessee is preponderance of evidence.  See Dkt. No. 177-1, ECF p. 5 of 50.

[12]      This list of states is derived from Ubiquiti's agreement on the states with a preponderance of evidence standard for fraud.  See Dkt. No. 177-1, ECF p. 5 of 50.

[13]      This list of states is derived from Ubiquiti's agreement on the states with a clear and convincing standard for fraud as well as the five "hybrid" states identifies by Ubiquiti which appear to require a clear and convincing standard.  See Dkt. No. 177-1, ECF p. 5 of 50.

Missouri, New Hampshire, Ohio, Pennsylvania, Utah, Hawaii, Idaho, Nevada, New Mexico, North Dakota, Vermont, Washington, West Virginia, Wisconsin Indiana, Maryland, New Jersey, New York, South Carolina, and Virginia. Dkt. No. 177-1, Charts 4, 5 and 6.

**Subclass 2C (States with notice to Ubiquiti required):** Class members in thirty-five: 35 states: Arkansas, Michigan, Montana, Oregon, Rhode island, South Dakota, Tennessee, Texas, Alaska, California, Minnesota, Oklahoma, Wyoming, Alabama, Colorado, Delaware, District, Illinois, Kansas, Massachusetts, Mississippi, Missouri, New Hampshire, Ohio, Pennsylvania, Utah, Hawaii, Idaho, Nevada, New Mexico, North Dakota, Vermont, Washington, West Virginia, and Wisconsin. Dkt. No. 177-1, Charts 1, 4 (notice required), and Charts 2 and 5 (notice undecided).

**Subclass 2D (States with no notice to Ubiquiti required):** Class members in six states: Indiana, Maryland, New Jersey, New York, South Carolina, and Virginia. Dkt. No. 177-1, Charts 3 and 6.

    **C.**    **Principles Underlying the Class Definition**
         **1.**    **Limitation to Representation-Based Issues**

This action will resolve issues relevant to claims based on representations and omissions by Ubiquiti, including both fraud and express warranty claims, in connection with the sale of TOUGHCable ("Representation Claims").

Issues related to Representation Claims can be addressed fairly and efficiently in a class setting because Ubiquiti made the same representations to all Class members and the effect of those representations on Class members was uniform. Class resolution of issues relevant to Representation Claims is plainly preferable to requiring Class members to litigate the same issues in thousands of individual actions in forty-nine different states.

Plaintiffs have proposed a method for calculating class damages. Plaintiffs believe that a finding on liability can result in a formulaic calculation of the minimum damages available to class members who purchased TOUGHCable. Once (and if) liability is determined, Plaintiffs are prepared to try the issues of appropriate, class-calculated minimum damages. Pursuant to Plaintiffs' proposed Damage Plan, Class members remain free to pursue damages individually by

opting out of the Class damage determination. "Certifying a class to determine the defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification." *Ruiz v. Affinity Logistics Corp.*, No. 05CV2125 JLS (CAB), 2009 WL 648973, at *3 (S.D.Cal. Jan. 29, 2009).

### 2. Jury Resolution of Issues; Court Resolution of Claims

By having the jury decide issues and having the Court make determinations as to how those issues affect claims, the Court can leverage the *same findings* that a jury would make for a California-only class to resolve the claims of a forty-nine state Class. A federal court sitting in diversity applies the laws of the forum state. *Klaxon Co. v. Stentor.*, 313 U.S. 487, 496 (1941).

The jury will try the following issues:

1. The falsity of Ubiquiti's representations concerning its statements that TOUGHCable was "outdoor" cable, including omissions to disclose facts Ubiquiti was required to disclose;

2. The materiality of each such representation or omission to purchasers of Ubiquiti's TOUGHCable;

3. Whether the representations by Ubiquiti concerning its TOUGHCable were part of the basis of the bargain for the Class; and

4. Ubiquiti's state of mind relating to each such representation (scienter, i.e., negligence, intent to deceive or recklessness).

The Representation Claims involve the resolution of five essential issues: (1) what was said or omitted; (2) did what was said or omitted create a false impression in the plaintiffs' mind (falsity); (3) was the defendant legally responsible for the representation or omission (scienter); (4) did the misrepresentation or omission result in injury to the plaintiff (causation); and (5) what is the measure of that injury (damage). There are minor variations in state law on some issues, but none that change the essential nature of the claim.

A jury considering only claims under California law would have to decide all issues necessary to decide claims in all other states in the Issues Classes. For example, while Plaintiff does not believe that a California plaintiff has to prove reliance in order to prove an express warranty claim, a California plaintiff does have to prove reliance in order to prove a fraud claim. Accordingly, deciding the issue of reliance will allow the Court to determine warranty claims even for states which require reliance for warranty claims.

Further, the jury will have to decide particular issues under all relevant standards of proof. Because Plaintiffs seek punitive damages, a jury deciding fraud claims under California law would have to decide them under the preponderance of the evidence standard (to establish liability) and the clear and convincing evidence standard (to establish entitlement to punitive damages). Cal. Civ. Code § 3294. The jury's findings under the clear and convincing evidence standard would be used to establish liability in states which require proof of fraud by clear and convincing evidence.

Once the jury decides the issues, the Court applies the findings to resolve claims. The Subclasses simply facilitate the Court's analysis. Because there are minor variations in state law relating to fraud and breach of express warranty, the subclasses reflect these differences. For example, the Express Warranty Subclass (Subclass 2) is further divided into Subclass 2A (states with no notice required to Ubiquiti), Subclass 2B (states with notice to Ubiquiti required) and Subclass 2C (states with a reliance requirement).

**D.      The Proposed Issues Class Is Appropriately Limited in Particular Issues**

Rule 23(c)(4) states: "When appropriate an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Under Rule 23(c)(4) "it is within the discretion of the trial judge ... to limit the issues in a class action to 'those parts of a lawsuit which lend themselves to convenient use of the class action motif.' " *Society for Individual Rights, Inc. v. Hampton,* 528 F.2d 905, 906 (9th Cir. 1975); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (Exclusion of "[i]ndividual claims based on personal injury or wrongful death" from class action supported finding that common issues predominated.).

Rule 23(c)(4) is particularly useful for addressing potential manageability problems which might arise if the court attempted to certify all claims which arise from a particular set of facts. *In re Activision Securities Litig.*, 621 F.Supp. 415, 438 (N.D. Cal. 1985) ("Since subdivision (c)(4) is designed to give the court maximum flexibility in handling class actions, its proper utilization will allow a Rule 23 action to be adjudicated that otherwise might have had to be dismissed or reduced to a nonrepresentative proceeding because it appears to be unmanageable.") See also *In re Comp. Mem. Sec. Litig.,* 111 F.R.D. 675, 681 (N.D. Cal. 1986).

If the Court certifies a class only on certain issues, the parties are free to pursue other claims and issues elsewhere. Newberg states the rules as follows: "In some cases, certain claims are not suitable for class treatment, and thus absent class members have no opportunity to litigate those issues. A class member may be permitted to bring an individual suit subsequent to a class action in which he or she participated when the individual claim asserted was not previously litigated." 5 *Newberg on Class Actions* § 16:22 (4th ed. 2002).

Courts in the Ninth Circuit have freely applied this principle. For example, in *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 265 (N.D. Cal. 1978) the court held that two of three securities fraud claims pled by the plaintiff were appropriate for class treatment, but claims related to certain representations in the defendant's brochures ("brochure claims") raised primarily individual issues. The court held class members who had brochure claims could assert them individually and the res judicata effect of the class action judgment would not bar them:

> It is not uncommon for defendants to engage in a course of conduct which gives rise to a variety of claims, some amenable to class treatment, others not. Those claims that are amenable should be prosecuted as class actions in order to realize the savings of resources of courts and parties that Rule 23 is designed to facilitate. . . . Class representatives must press all claims which can be prosecuted on a class basis, but they need not and should not press for certification of claims that are unsuitable for class treatment. *Sullivan*, 79 F.R.D. at 265.

For the reasons stated above, Plaintiffs propose to limit the issues certified for class treatment to those relevant to Representation Claims, with a proposed model for consequential damages on a class-wide basis. Per *Sullivan*, this is an appropriate use of Rule 23(c)(4).

**E.    A Multi-State Class Is Manageable**

The issues presented by this case present no manageability problems. The minor differences between how states would decide claims based on the jury's resolution of the seven issues managed simply by having the Court apply the findings to the various Subclasses. The details of this process are addressed below.

**Remedy Issues:** Plaintiffs have proposed a damage model based upon a minimum per foot determination of time for installation (times) the relevant hourly rate of skilled technical labor in the jurisdiction (this will be Plaintiffs' burden through expert testimony). This offers the Court a consistent, formulaic method of calculating minimum damages on a classwide basis.

1 There will be minimal manageability issues related to this question.

2 **Breach of Express Warranty:** The only material difference between state law claims for

3 breach of express warranty is whether a state requires express reliance on the warranty and

4 whether the state has a notice requirement for remote manufacturers. Dkt. No. 177-1, Courteau

5 Decl., ¶¶ 5, 6, 7. Although Plaintiffs believe that class-wide reliance on Ubiquiti's "outdoor"

6 advertising is beyond reasonable dispute (Supp. Himmelfarb Decl., Exhibit 54), this difference

7 could – in theory – mean that Class members in some states could prevail while others do not.

8 This potential issue is managed by creating two subclasses of warranty claims: Subclass 2A for

9 states with a reliance requirement and Subclass 2B for those states that do not have a reliance

10 requirement. The issue of notice is subject to a single binary determination: either class

11 members have had their individual notice requirements satisfied by the Class Notice served on

12 Ubiquiti by the named representatives, or class members are subject to an individual notice

13 requirement. If the former, class members are excused from individual notice. If the latter, then

14 a reduced warranty class consisting of (a) class members in those states that do not require notice

15 to a remote manufacturer (Subclass 2D), and (b) those who met the notice requirement by

16 providing Ubiquiti with notice of problems with TOUGHCable (through the RMA process,

17 TOUGHCable *and* other products that failed because of TOUGHCable); to Ubiquiti via the

18 UBNT community website through complaints made online, or by direct communication (those

19 who contact Ubiquiti about problems with TOUGHCable, but did not seek replacement cable or

20 open an RMA See e.g. Exhibits 24 and 49.). This determination is appropriately made on a

21 classwide basis.

22 **Fraud:** The only material difference between state laws on common law fraud is the

23 level of proof required for liability. Dkt. No. 177-1, Courteau Decl., ¶¶ 5, 6, 7. Some states

24 require that fraud be proved by clear and convincing evidence while others, such as California,

25 require only proof by a preponderance of the evidence. *Id*. Accordingly, Plaintiffs propose to

26 submit to the jury the elements of a fraud claim under both standards.[14] Any potential

27 ───────────────

28 [14]     As stated previously, Plaintiffs must establish they are entitled to punitive damages by
clear and convincing evidence. Cal. Civ. Code § 3294. Since Plaintiffs seek punitive damages, the

1  differences in the outcome of fraud claims in the relevant states is managed by creating Subclass

2  1A for states with a preponderance of the evidence standard and Subclass 1B for states which

3  require clear and convincing evidence.

4  **X.    CONCLUSION**

5          For the forgoing reasons Plaintiffs respectfully request that the Court grant the relief

6  requested in the Notice of Motion.

7  DATED:  June 18, 2015                    By:   /s/Alan Himmelfarb

8                                               David C. Parisi (SBN 162248)
                                               Suzanne Havens Beckman (SBN 188814)
9                                               PARISI & HAVENS LLP
                                               212 Marine Street, Suite 100
10                                              Santa Monica, California 90405
                                               Telephone: (818) 990-1299
11                                              Facsimile: (818) 501-7852

12
                                               Alan Himmelfarb (SBN 90480)
13                                              THE LAW OFFICES OF ALAN HIMMELFARB
                                               80 W. Sierra Madre Blvd. #304
14                                              Sierra Madre, California 91024
                                               Telephone: (626) 325-3104
15

16

17

18

19

20

21

22

23

24

25

26

27
_____
28  issues relevant to Plaintiffs' fraud case would have to be submitted to the jury under the clear and
    convincing standard in any case.