| | |
|---|---|
| 1 | N. KATHLEEN STRICKLAND (SBN 64816) |
| | DEVIN COURTEAU (SBN 197505) |
| 2 | JUSTIN A. ZUCKER (SBN 284401) |
| | STEPHAN CHOO (SB 284395) |
| 3 | ROPERS, MAJESKI, KOHN & BENTLEY |
| | 150 Spear Street, Suite 850 |
| 4 | San Francisco, CA 94108-5173 |
| | Telephone: (415) 543-4800 |
| 5 | Facsimile: (415) 972-6301 |
| | Email: kstrickland@rmkb.com |
| 6 | dcourteau@rmkb.com |
| | jzucker@rmkb.com |
| 7 | stephan.choo@rmkb.com |

Attorneys for Defendant
UBIQUITI NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASION COMMUNICATIONS INC., a Canadian corporation, dba Planet Telecom, on behalf of itself and all other similarly situated, | CASE NO. 3:13-CV-01803-EMC |
| | **DEFENDANT UBIQUITI NETWORKS, INC.'S SUR-REPLY BRIEF** |
| Plaintiff, | |
| v. | |
| UBIQUITI NETWORKS, INC., a Delaware corporation, | |
| Defendant. | |

## I. INTRODUCTION:

Plaintiffs' reply brief exudes confusion and proffers internally inconsistent arguments for the newly proposed subclasses and sub-subclasses, and fails to carry their burden to establish why certification of an issues class would be warranted – clearly because certification is not warranted. Apparently the alternative class of 12 subclasses based on the laws of 9 states has been abandoned for application of the laws of 49 states (Plaintiffs neglect to address the District of Columbia). Tasion, which is not a resident of any of the 49 states or the District of Columbia, appears to have abandoned its class claims, although Tasion purchased the most TOUGHCable of the Plaintiffs, 22 boxes. Tasion is a Canadian corporation, and thus not a resident of any state and not a permissible representative for any of the newly proposed issue subclasses. There are 7 issue classes proposed with new subclasses and subclasses of the subclasses. For the express warranty subclass, Arizona is not included; hence Freeway Networks cannot be a class representative for that express warranty subclass. Plaintiffs have now added 40 states to this new class definition, more than the 9 states already pled with the addition of Camplink. In the issues subclass, Plaintiffs request this Court to apply the issue finding to 40 additional states, but there are no class representatives for those states, no showing that TOUGHCable was sold in those states, and no showing to meet the adequacy requirement of Rule 23(a)(4) in those 40 newly added states. The remaining 14 causes of action, pled in the Fourth Amended Complaint are not mentioned in the class definition, hence apparently these causes of action are to proceed as individual claims most of which involve the specifically pled consumer protection statutes of the various 9 states. This begs the question of superiority, because it is clear based on Plaintiffs new issues classes that proceeding with individual lawsuits would be the superior method of handling this case – **not** as a class action. This case should **not** be certified.

### A. Rule 23(c)(4) Issue Classes:

Certification of an issues class is appropriate only if it permits fair presentation of the claims and defenses and materially advances the disposition of the litigation as a whole.[1]

---

[1] Manual for Complex Litigation, Fourth, § 21.24; *see also*, *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996) ("Certification under [Rule 23(c)(4)] should be denied when the noncommon issues are inextricably entangled with the common issues or when the noncommon issues are too predominant to handle on a class basis …

Plaintiffs' proposal does not. The Central District recently rejected certification of an issue class because "certifying this type of issue class might simply consume time and resources (both parties' and the court's) without fundamentally advancing the resolution of this litigation" by resolving liability. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 581(C.D. Cal. 2014). "Such an approach …would still require the Court to overcome numerous complexities raised by having to apply so many different state laws and by individual issues regarding liability for fraud and misrepresentation." *Hayley v. Medtronic, Inc.*, 169 F.R.D. 643, 656 (C.D. Cal. 1996). What would advance the litigation would be to keep this case as an individual lawsuit and not certify it as a class.

If the resolution of an issues class leaves a large number of issues requiring individual decisions, the class should not be certified. There is a split of authority regarding Rule 23(b)(3) and issue classes.[2] Not only is there tension regarding issues classes as to the application of the predominance requirement of Rule 23(b)(3) but there is a split of authority with whether the Seventh Amendment jury trial right is violated by asking different juries to decide elements of a single claim. Before certifying an issues class under Rule 23(d) the judge should be satisfied that common questions are sufficiently separate from other issues and that a severed trial will not infringe any party's constitutional right to a jury trial and will permit all the parties fairly to present the claims and defenses.[3] Even *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)[4] states that the case must be appropriate for issue treatment, acknowledging that not all cases are. The *Valentino* court, however, "did not explain which cases might be 'appropriate cases' for severance of particular issues. It was unnecessary to address this question in view of the

---

The issues must be such that their resolution as a class matter would materially advance the disposition of the litigation as a whole.")

[2] *In Re Rhone- Poulec Rorer, Inc.*, 51 F.3d 1293, 1302-03 (7th Cir. 1995) (rejecting the use of an issues class in product liability case because of individual liability issues); *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 189–91 (E.D. Pa. 2007) ("The better view is that issue certification under 23(c)(4)[] does not obviate the need to evaluate predominance … Using subsection 23(c)(4) to certify a putative class that is otherwise improper for certification would bypass the 23(b)(3) predominance requirement."); *Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. 451, 467 (D.N.J. 2009) ("Certification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met");

[3] Manual for Complex Litigation, Fourth, § 21.24

[4] *See also*, *In re Genetically Modified Rice Litigation*, 251 F.R.D. 392, 400 (E.D. Mo. 2008)(expressing doubt as to the propriety of issue certification when predominance is not otherwise satisfied because "[c]ertification of a limited issues class would lead to procedural difficulties, and a trial limited to common issues would not resolve any individual plaintiff's claims" and concluding that "[t]his approach would do little if anything to increase the efficiency of this litigation").

numerous 'deficiencies in [the] certification order'" *Amador v. Baca,* 299 F.R.D. 618, 636 (C.D. Cal. 2014) (internal citations omitted).

### 1. Fraud:

After insisting that a fraudulent inducement cause of action must be added to the complaint, Plaintiffs now concede that a nationwide class for fraudulent inducement is not possible due to the material differences which exist in the 50 states' and District of Columbia's laws on fraud. Those various laws, as pointed out in UBNT's Opposition, differ regarding <u>burden of proof</u>, <u>whether scienter is required</u>, <u>the statute of limitations</u>, <u>the methods for calculation of damages,</u> and <u>whether the presumption of reliance applies.</u> For the same reason a nationwide fraud class cannot be certified due to these material differences, Plaintiffs' proposed issues class cannot be certified as to any fraud issues. Plaintiffs' propose to take one of these differences, the burden of proof, and create subclasses based on this one difference, but ignore all of the other differences between the laws of the various jurisdictions. They propose that a jury can decide two burdens of proof for a single issue and cite no authority to support this proposition. Juries decide whether a cause of action has been proved and apply the burden of proof instruction as the Court provides. It is a single burden of proof per case which a jury applies to the facts of the case. A sitting jury does not apply two different burdens of proof for the same set of facts for the same claim. What would be needed to implement this proposal would be two juries sitting simultaneously applying the different burdens of proof to the facts of the case. Were such to occur, this again highlights the lack of superiority of the issues classes. Sitting two juries to decide these issues would waste judicial resources and negate economies of scale which is the alleged benefit of any issue class.

Aside from the impossibility of a jury applying two burdens of proof to one set of facts the class members would still need to prove the other elements of a cause of action for fraud. Four other conflicts between the laws of the affected jurisdictions remain unaddressed in this proposal for a fraud subclass, and no management plan is proposed to handle these four conflicts. Plaintiffs claim the burden of proof is the only material difference, but the differences identified in Ubiquiti's fraud conflicts analysis are material and significant. Those differences concern

scienter, type of damages allowed, materiality and punitive damages. (*See* Opposition Courteau Dec., Ex. 1.) Plaintiffs attempt to address these conflicts through their proposed issue class numbers 4, 6 and 7, but do not present any management plan or explain how those issues could be resolved on a class-wide basis given the differences between the laws of the affected jurisdictions. This latter point highlights Plaintiffs' failure to satisfy the predominance requirement under Rule 23(b)(3) because there are differences in the law to prove those issues. Plaintiffs recognize this inherent problem, conceding that scienter has two different standards (intent to deceive or recklessness) depending on the jurisdiction's law. (Dkt. 187 at p. 14, ln. 7.) Plaintiffs' reliance issue class likewise fails because an individual inquiry would be necessary to prove reliance, causing individual issues to predominate.[5] Because Plaintiffs' fraud issue classes fail to meet the Rule 23(b)(3) predominance requirement, they cannot be certified.

In addition, there are manageability problems with the fraud subclasses and subclass of the subclasses proposed. First, although 7 issues are identified, a plan (albeit a flawed one) is proposed for only 4 of the 7. (Dkt. No. 187 at p. 14.) For example, although reliance (a key element in a fraudulent inducement claim) is mentioned as issue class No. 5, there is no plan proposed for such a class and no other mention in the Reply whatsoever. (*Id*.) As discussed above, reliance fails the predominance requirement of Rule 23(b)(3) because reliance requires an individual inquiry of each purchaser. Also, there is no plan for issue classes Nos. 6 and 7 in the Reply. Each of the individual elements of proof vary within each state for a fraud claim. Those individual issues predominate and do not disappear because a jury in this Court decides a fact question. Plaintiffs' Reply fails to prove predominance as to the issues for which they seek certification under Rule 23(c)(4).

As to fraud, it is Plaintiffs' burden to prove that an issues class is a superior method of adjudication for the fraud subclasses. Plaintiffs have not done that. It is obvious that individual questions predominate and that for a fraud subclass, individual inquiry is required, a fact which is

---

[5] Plaintiffs' Motion argues (incorrectly) that California permits them to "establish reliance on a class basis without establishing what each individual class member was told and what each individual class member believed." (Motion at p. 15, lns. 3-5.) In proposing an issues class Plaintiffs concede California law does not apply to the entire class. Plaintiffs' provide no authority that any other state permits them to establish reliance on a class-wide basis.

| 3:13-CV-01803-EMC | - 4 - | SUR-REPLY BRIEF TO |
| 4836-5126-2757.5 | | MOTION FOR CLASS CERTIFICATION |

not displaced by Plaintiffs' proposed issue classes. There also remains Tasion and the other 23 causes of action, including claims by Camplink and Freeway, which must be tried on an individual basis. The fraud cause of action should also be tried individually. Fraud is not appropriate to be carved out for class treatment *or* issues treatment.

The proposed issues subclasses are totally unmanageable and not superior because they would have this Court trying the individual cases of the three plaintiffs plus an issues subclass involving the laws of 49 states, rather than just trying the case before it as an individual lawsuit.

### 2. Express Warranty:

The problems with Plaintiffs' fraud issue subclass are also attendant to their breach of warranty issue subclass. Plaintiffs cherry pick the elements which differ among the states on breach of express warranty and create subclasses for 2 of those differences, calling the other difference (privity) immaterial but it is far from immaterial. Plaintiffs acknowledge the problems regarding breach of express warranty, creating reliance and notice subclasses to purportedly address those problems. However, reliance and notice must be tried individually which means a subclass will not materially advance the litigation as a whole because individual issues still predominate. Rule 23(b)(3) is also not met with the express warranty issue subclasses proposed.

These differences cannot be glossed over by omission or by labeling them "immaterial." The laws of the states regarding breach of express warranty vary with regard to the issues of reliance, pre-litigation notice, and privity. Whether subclasses are created does not negate these material differences. For example, in some states notice is not satisfied by service of a complaint as Plaintiffs' acknowledge, nor do Plaintiffs provide any authority that a single notice on behalf of a class satisfies the requirement. The elements of notice, reliance, and privity require an individual determination of each class member as to whether there is breach of express warranty. Those elements are not capable of class resolution, and should not be carved into flawed issues classes that fail to alleviate the need for individual determinations.

### B. SUPERIORITY:

Plaintiffs have not met their burden to show that the issue classes as proposed are superior for resolution of this lawsuit. In *Amador,* the court denied certification of an issue class, stating,

"In view of the need for individual trials on damages regardless of whether an issue class on liability is certified, it appears that the time saved by a class action would be relatively insignificant in this case." *Amador, supra*, 299 F.R.D. at 637 (internal quotations and citations omitted). In this case, similar to *Amador*, individual inquiry is necessary to prove reliance, whether each class members had viewed alleged representation and relied on it prior to purchasing TOUGHCable. Because Plaintiffs are claiming consequential damages (*i.e.* labor cost), each class member must support exactly what their damages are because they are different for each of them depending on where they are, how experienced they are, location of installation, *etc.*, and Plaintiffs' damages model is inherently flawed and unsupported by expert opinion.

The fact that certification was not sought for so many of the causes of action asserted in the complaint speaks volumes why class certification is not superior and why this case should proceed as an individual lawsuit on behalf of the three named plaintiffs. First, Tasion is not included in any of the new subclasses of purchasers within the 49 states that purchased the product. Tasion is in Canada and Panama. Second, Freeway is not included as a class representative in the breach of express warranty subclasses. Along this line, there is no class representative for any of the 40 new states as to which issue classes are requested.[6] There is no proof of purchases of TOUGHCable in all 40 additional states for which Plaintiffs request issue resolution. We know that out of 34,000 boxes of TOUGHCable sold, purchasers of only 13% participated in the RMA process and this is the first lawsuit filed even though the product at issue was sold over 4 years ago. To certify a class on an issue would leave all the causes of action in the complaint left to be tried on an individual basis, which makes no sense. Further, the issues are non-dispositive of the fraud and warranty claims. Proceeding with this case as an individual lawsuit is clearly the superior means to manage this case to resolution.

For all these reasons an individual trial on all the multiple claims asserted by the Plaintiffs is a realistic and superior alternative to a complex proceeding meshing the individual claims with the proposed issues subclasses covering only limited issues and 49 states' laws.

---

[6] Rule 23(c)(5) specifically provides that "a class may be divided into subclasses that are each treated as a class under this rule." *Id*. Yet plaintiffs provide no argument supporting class treatment of their proposed subclasses.

## C. MANAGEABILITY:

The issue classes are not manageable. Plaintiffs' Reply does not conform to their filed complaint. At one point the judge is applying the jury's findings to 49 state laws (essentially utilizing a special verdict) and at another point the jury is doing so, creating an internal inconsistency in Plaintiffs' Reply. Neither approach is workable. Plaintiffs fail to address how you manage a case where you have to apply the law of 49 states. How can you bind people in Arkansas without an Arkansas representative? The subclasses created are around the law and not around the issues. They are not really issue classes. Usually issue classes center on a question of ultimate fact; if it is not centered on a core issue, then creation of issue classes is not helpful.

The issue classes do not resolve all issues such as liability, damages, and statute of limitations. Elements of the causes of action for fraud and express warranty are left out of the subclass analysis. On page 17, the jury would decide a factual issue and the court would apply the law to the 49 states; later on, it suggests a jury would apply the law including different standards of proof, leaving questions as to what would happen to the other causes of action, to Tasion, how would the Court would apply the issue determinations to the laws of the different states who do not have a class representative. A jury will not be able to render a decision on liability because they will not know what law to apply. It is the Court that will have to take the decided issues and apply the law of all 49 states. It would be a waste of judicial resources for a court to apply the law of 49 states to the decided issues without any class representative from those states.

The proposal for damages works in a settlement context but not in a trial context. Plaintiffs deserve recovery only if proof of loss is proven. There is no distribution mechanism, no ability to have Plaintiffs proof challenged and this model does not resolve damages, which are all individual. The damage model does not work. For some sites, installation of cable will take longer than in other locations. The "model" therefore undercompensates those whose installations take a longer time, either due to geography or lack of skill of the installer, while it overcompensates those whose installations take less time for the reason stated. Also, the damage model does not take into account the fact that hourly rates are different throughout the country. Finally, the factor of installation error – causation – requires an individual damage determination.

| | |
|---|---|
| Dated: July 1, 2015 | ROPERS, MAJESKI, KOHN & BENTLEY |
| | By: /s/ N. Kathleen Strickland |
| | N. KATHLEEN STRICKLAND |
| | Attorneys for Defendant |
| | UBIQUITI NETWORKS, INC. |