**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8    TASION COMMUNICATIONS, INC., *et al.*,        No. C-13-1803 EMC
9              Plaintiffs,
                                                   **ORDER DENYING PLAINTIFFS'**
10        v.                                        **MOTION FOR CLASS**
                                                   **CERTIFICATION**
11   UBIQUITI NETWORKS, INC., *et al.*,
                                                   **(Docket No. 142)**
12            Defendants.
13   _____/
14
15        Currently pending before the Court is Plaintiffs' motion for class certification.[1]  Plaintiffs ask
16   the Court to certify classes and subclasses against Defendant Ubiquiti Networks, Inc.[2] for their
17   claims for breach of express warranty and fraudulent inducement.  Having considered the papers
18   submitted, as well as the oral argument of counsel, the Court hereby **DENIES** the motion for
19   certification in its entirety.
20                    **I.    FACTUAL & PROCEDURAL BACKGROUND**
21        As alleged in the operative fifth amended complaint ("5AC"), Ubiquiti is a communications
22   technology company that designs, manufactures, and sells broadband wireless products.  *See* 5AC ¶
23
24        _____
25        [1] In June 2015, Fundamental Holdings Corp. (d/b/a Peak Internet) voluntarily dismissed its
     claims.  *See* Docket Nos. 186, 193 (stipulations of voluntary dismissal).  Therefore, the remaining
26   plaintiffs in this case are (1) Tasion Communications, Inc. (d/b/a Planet Telecom) ("Tasion"); (2)
     International Power Systems, LLC (d/b/a Freeway Networks) ("Freeway"); and (3) Nationwide
     Computer Systems, Inc. (d/b/a Camplink) ("Camplink").
27
        [2] Ubiquiti is the only remaining defendant in this case because, in June 2015, those plaintiffs
28   with claims against Defendant Streakwave Wireless, Inc. filed voluntary dismissals with respect to
     those claims.  *See* Docket Nos. 193-94 (stipulations of voluntary dismissal).

**United States District Court**

For the Northern District of California

1. At issue in this litigation is a Ubiquiti product known as TOUGHCable ("TC").  TC is a cable product.  During the relevant period, Ubiquiti manufactured two kinds of TC, Level 1 and Level 2.  However, according to Plaintiffs, there are no material differences between the two for purposes of this lawsuit.

Plaintiffs allege that, in Ubiquiti's advertising as well as on the TC box itself, Ubiquiti claimed that TC was a Category 5e outdoor carrier-class shielded cable that was built to withstand harsh outdoor environments.  *See* 5AC ¶ 4.  Plaintiffs purchased TC based on that representation.  According to Plaintiffs, that representation was false and Ubiquiti knew the representation to be false at the time Plaintiffs purchased the TC product.  Plaintiffs maintain that Ubiquiti knew that TC was not suitable for outdoor use based on, *e.g.*, UV testing that was conducted on the product.  *See, e.g.*, 5AC ¶¶ 255-61.

Based on, *inter alia*, the above allegations, Plaintiffs have sued Ubiquiti for, *inter alia*, breach of express warranty and fraudulent inducement.

## II.   DISCUSSION

A.   Legal Standard

In their opening brief, Plaintiffs asked the Court to certify a nationwide Rule 23(b)(3) class (applying California law) for both its claim for breach of express warranty and its claim for fraudulent inducement.  In the alternative, Plaintiffs asked the Court to certify, pursuant to Rule 23(b)(3), twelve state-based classes for its fraudulent inducement claim and its claims for violations of state consumer protection laws.  Finally, Plaintiffs asked that, if the Court were to find that "any particular class claim fails to satisfy the requirements of Rule 23(b)," it certify "relevant issues classes under Rule 23(c)(4)."  Mot. at 24.

In its reply brief, Plaintiffs now concede that a nationwide Rule 23(b)(3) class for its fraudulent inducement claim is improper; Plaintiffs now ask only for certification of issues classes and subclasses for the fraudulent inducement claim.  For the express warranty claim, Plaintiffs still ask for certification of a nationwide Rule 23(b)(3) class; in the alternative, Plaintiffs ask that issues classes and subclasses be certified.  Apparently, Plaintiffs have completely dropped their request for Rule 23(b)(3) certification with respect to its consumer protection claims.

**United States District Court**

For the Northern District of California

1.      Rule 23(b)(3)

For a Rule 23(b)(3) class, Plaintiffs must show the following:

(1)      that all Rule 23(a) requirements are satisfied, i.e., numerosity, commonality, typicality, and adequacy, *see* Fed. R. Civ. P. 23(b); and

(2)      that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiency adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

2.      Rule 23(c)(4)

As for an issues class, Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The Ninth Circuit has explained that, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the *entire action* is warranted, Rule 23[(c)(4)] authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (emphasis added). The theory underlying the rule is that "the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member." Wright *et al.*, Fed. Prac. & Proc. § 1790. Thus, for example, Rule 23(c)(4) may be used "to separate the issue of liability from damages." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006); *see also* Fed. R. Civ. P. 23(c)(4), 1966 advisory committee notes (noting, as an example, "in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims").

Contrary to what Plaintiffs argued at the hearing, a Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3)). *See, e.g.*, *Avilez v. Pinkerton Gov't Servs.*, 596 Fed. Appx. 579, 579 (9th Cir. 2015) (noting that subclasses would meet the requirements of Rule 23(a); adding that "[w]e need not decide whether these subclasses . . . would satisfy the predominance requirement of Rule 23(b)(3)" because the

**United States District Court**

For the Northern District of California

district court was being asked to certify a liability issues class under Rule 23(c)(4)); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 189 (4th Cir. 1993) (stating that, "district courts may separate and certify certain issues for class treatment, [but] the 'subclass' on each issue still 'must independently meet all the requirements of [subsection 23(a)] and at least one of the categories specified in [subsection 23(b)]'[;] [t]hus, a limited class pursuing the eight issues still must possess both (a)(3) typicality and demonstrate (b)(3)(D) manageability"); *Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) (stating that "[c]ertification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met"); *House v. Pritzker*, 28 F. Supp. 3d 222, 253-54 (S.D.N.Y. 2014) (stating that "Rule 23(c)(4) continues to provide a viable solution if damages cannot be determined on a classwide basis, so long as the proposed class satisfies the requirements of 23(a) and (b) with respect to liability"); *see also* Wright *et al.*, Fed. Prac. & Proc. § 1790 (stating that, potentially, just "one common issue can be identified as appropriate for class treatment, that is enough to justify application of the provision as long as the other Rule 23 requirements are met").  Moreover, even if certain issues may otherwise meet the requirements of Rule 23(a) and (b), issue certification must materially advance the litigation.  *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008).

B.    Rule 23(b)(3) Class – Claim for Breach of Express Warranty[3]

As noted above, Plaintiffs initially asked the Court to certify a nationwide Rule 23(b)(3) class (applying California law) for two different claims: (1) fraudulent inducement and (2) breach of express warranty.  In their reply brief, Plaintiffs changed their tune and admitted that a nationwide class for the fraudulent inducement claim would not work because of a predominance or manageability problem – more specifically, because California law could not uniformly apply.  *See* Reply at 12 (conceding that "[a] Rule 23(b)(3) class based on fraudulent inducement . . . requires application of the laws of individual states due to variations in those 50 state's laws[;] [s]uch a class

---

[3] The Court acknowledges that Plaintiffs have objected to the declarations of Mary Kay Kane and David Stewart.  The objections are moot as the Court not relied on either declaration in ruling on the motion to certify.

1  would not be manageable"). Thus, Plaintiffs now ask for certification of a nationwide class for their

2  express warranty claim only.[4]

3       1.   *Mazza*

4       Plaintiffs' proposed nationwide class is defined as follows: All persons or entities who

5  purchased Ubiquiti TOUGHCable Level 1 or 2 (where the purchase was completed in the United

6  States). *See* Mot. at 6. Plaintiffs' nationwide class is predicated on California law governing all

7  members of the class. Plaintiffs do not contend that nationwide class certification would be

8  appropriate in this case if the laws of each of the 50 states were to apply variously to class members

9  residing in each state. Not surprisingly, the main ground of Ubiquiti's challenge to the nationwide

10 class is that Rule 23(b)(3)'s predominance requirement is not met. More specifically, Ubiquiti

11 contends that California law applies only to California purchasers; for other purchasers, the

12 applicable law is the law of the state where the purchaser resided when it made the purchase.

13 According to Ubiquiti, this means that the laws of all the states in the country, as well as the laws of

14 the District of Columbia and a number of international countries, are at issue. *See* Opp'n at 11

15 (looking at the purchases made from Streakwave, one of Ubiquiti's main distributors). Because the

16 laws of multiple jurisdictions have been implicated, Ubiquiti contends that common issues cannot

17 predominate. As Plaintiffs do not appear to dispute such a conclusion were Ubiquiti correct on the

18 choice of law, the Court focuses on the choice-of-law question.

19      Both parties agree that *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.

20 2012) is the critical Ninth Circuit authority on point. Therefore, the Court briefly discusses the

21 opinion below. In *Mazza*, the plaintiffs brought a class action, asserting that the defendant-car

22 company had misrepresented characteristics of a braking system used in a certain kind of vehicle.

23 The plaintiffs asserted various claims for relief, all predicated on California law – namely, California

24 Business & Professions Code §§ 17200 and 17500, the California Consumer Legal Remedies Act,

25 and unjust enrichment. *See id.* at 587. The district court certified a nationwide class. On appeal, the

26 ─────────────────────

27   [4] Although Plaintiffs claim that the class is a nationwide class, it would really appear to be –
   as Ubiquiti argues – a worldwide class because some of the purchasers of the TC product reside
28 outside the United States. *See* Opp'n at 11. But for purposes of this order, the Court will continue
   to refer to a nationwide class.

defendant argued that the district court erred because "common issues of law do not predominate[:] California's consumer protection statutes may not be applied to a nationwide class with members in 44 jurisdictions." *Id.* at 589.  The Ninth Circuit agreed with the defendant that the district court erred by "conclud[ing] that California law could be applied to the entire nationwide class." *Id.* at 585.

The Ninth Circuit reached this conclusion by doing a choice-of-law analysis.  Because the district court, sitting in diversity, was located in California, the Ninth Circuit looked to California's choice-of-law rules.  *See id.* at 589.

> Under California's choice of law rules, the class action proponent bears the initial burden to show that California has "significant contact or significant aggregation of contacts" to the claims of each class members.  Such a showing is necessary to ensure that application of California law is constitutional.  Once the class action proponent makes this showing the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims."
>
> California law may only be used on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied."  To determine whether the interests of other states outweigh California's interest, the court looks to a three-step governmental interest test:
>
> > First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
> >
> > Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
> >
> > Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* at 589-90.

The Ninth Circuit held that, in the case before it, California law could be applied as a constitutional matter: "California has a constitutionally sufficient aggregation of contacts to the

claims of each putative class member in this case because [defendant's] corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California." *Id.* at 590.  However, the court then went on to conclude that the governmental interest test indicated that California law should not apply across the board.

First, California law materially "differ[ed] from the laws of the 43 other jurisdictions in which the class members reside." *Id.* at 591.  For example, "the California laws at issue here have no scienter requirement, whereas many other states' consumer protection statutes do require scienter.  California also requires named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes do not." *Id.*  Furthermore, "there are also material differences in the remedies given by state laws," and "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Id.*

Second, states other than California had an interest in having their laws apply:

> "[E]very state has an interest in having its law applied to its resident claimants."  California law also acknowledges that "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders.  The automobile sales at issue in this case took place within 44 different jurisdictions . . . .

*Id.* at 591-92.  The court emphasized that "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory." *Id.* at 592-93 (stating that "the district court erred by discounting" this interest and focusing instead on the protection of consumers alone).

Third, California did not have a strong interest in applying its law:

> California recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."  California considers "the place of the wrong" to be the state where the last event necessary to make the actor liable occurred. *See McCann*, 48 Cal. 4th at 94 n.12 (pointing out that the geographic location of an omission is the place of the transaction where it should have been disclosed); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6, 306 P.2d 1017 (1957) (concluding in fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place).  Here, the last events necessary for liability as to the foreign class members – communication of the

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

advertisements to the claimants and their reliance thereon in
purchasing the vehicles – took place in the various foreign states, not
in California.

*Id.* at 593-94.  California also had a limited interest "in applying its law to residents of foreign states."  *Id.* at 594.

Accordingly, the Ninth Circuit held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  *Id.* at 594.

> 2.   <u>Governmental Interest Test</u>

Having reviewed *Mazza*, the Court now turns to the application of the governmental interest test to the case at hand.

> a.   <u>Step 1: Material Difference in Law</u>

According to Ubiquiti, there are material differences in the laws of the various jurisdictions with respect to a claim for breach of express warranty.  The identified differences are as follows:

1.   Privity requirement.

2.   Pre-litigation notice requirement.

3.   Reliance requirement.

*See* Opp'n at 12; Courteau Decl. ¶ 6 & Ex. 2 (charts regarding express warranty laws).

In their reply brief, Plaintiffs concede that Ubiquiti has "correctly identifie[d] those conflicts as potentially material."  Reply at 2.  The Court therefore need not dwell on step one any further.  However, in the interest of ensuring accuracy, it briefly addresses each of these subjects below.  As discussed below, Ubiquiti has valid arguments.  *See also Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574, at *28-32 (E.D. Cal. Apr. 28, 2015) (indicating that there are material differences with respect to express warranty law in 33 different jurisdictions – *e.g.*, regarding privity); *Rikos v. Procter & Gamble Co.*, No. CV 11-226, 2012 U.S. Dist. LEXIS 25104, at *16-19 (S.D. Ohio Feb. 28, 2012) (finding material differences in express warranty laws – *e.g.*, regarding privity and reliance).

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(i)      Privity Requirement

As Ubiquiti argues, some states do, as a general matter, require privity between the plaintiff

and the defendant for an express warranty claim, while others do not have a privity requirement.

*Compare, e.g.*, *Johnson v. Anderson Ford*, 686 So. 2d 224, 228 (Ala. 1996) (taking note of the

general rule that "a plaintiff must prove privity of contract in an action on an express warranty where

only economic harm is involved," unless, *e.g.*, there is evidence that the seller intended to extend the

express warranty directly to the ultimate purchaser); *Fowler v. Gen. Elec. Co.*, 40 N.C. App. 301,

305 (1979) (stating that an "exception to the rule that privity of contract is required in actions for

breach of warranty is applicable when the manufacturer addresses a warranty directly to the ultimate

consumer or user of the product, thereby making an express warranty"), *with Cardinal Health 301,*

*Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 143-44 (2008) (stating that "[p]rivity is generally

not required for liability on an *express* warranty because it is deemed fair to impose responsibility on

one who makes affirmative claims as to the merits of the product, upon which the remote consumer

presumably relies") (emphasis added).

(ii)      Pre-Litigation Notice Requirement

Ubiquiti correctly contends that some states require notice for a claim of breach of express

warranty while others do not.  *Compare, e.g.*, *Tasion Communs., Inc. v. Ubiquiti Networks, Inc.*, No.

C-13-1803 EMC, 2014 U.S. Dist. LEXIS 35455, at *14-15 (N.D. Cal. Mar. 14, 2014) (noting that,

under California law, notice of a breach is required within a reasonable time), *with Kolarik v. Cory*

*Int'l Corp.*, 721 N.W.2d 159, 163 (Iowa 2006) (stating that, for express warranty claim, remote

buyers are not required to give notice to seller).  Furthermore, for those jurisdictions that do require

notice, some require pre-litigation notice while others do not.  *Compare, e.g.*, *Tasion*, 2014 U.S.

Dist. LEXIS 35455, at *14-15 (noting that, under California law, "notice must be provided before

the lawsuit – notice that is after, or contemporaneous with, the filing of the lawsuit is insufficient"),

*with Pace v. Sagebrush Sales Co.*, 114 Ariz. 271, 274 (1977) ("agree[ing] with the defendant that the

requirement of notice may indeed be fulfilled by the pleadings themselves").

United States District Court

For the Northern District of California

(iii)    Reliance Requirement

Finally, as Ubiquiti asserts, some jurisdictions require reliance (or something similar) for a claim of breach of express warranty while others do not.  *Compare, e.g.*, *Tasion*, 2014 U.S. Dist. LEXIS 88055, at *33 (based on "basis of the bargain" language in the California Commercial Code, stating that a plaintiff in an express warranty case must at least allege that he or she read or was otherwise exposed to the representation at issue, especially absent privity)[5]; *Compaq Comp. Corp. v. Lapray*, 135 S.W.3d 657, 676 (Tex. 2004) (concluding that the Uniform Commercial Code's use of the "basis of the bargain" language reflects a reliance requirement of some kind), *with Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App. 3d 594, 601 (2003) (evaluating "basis of the bargain" language in the Uniform Commercial Code; indicating agreement with the "majority of courts that . . . have reached the . . . conclusion that reliance is not an element in a claim for breach of an express written warranty"); *Samuel Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 411-12 (2011) (stating that the class not was required to prove reliance in order to recover on express warranty claim; "[a] written express warranty that is part of the sales contract is the seller's promise which relates to goods, and it is part of the basis of the bargain[;] [t]his statement of law is not qualified by whether the buyer has read the warranty clause and relied on its in seeking its application").

b.    Step 2: Interests of Each Jurisdiction

As with step one, Plaintiffs do not contest step two of the governmental interest test.  *See* Reply at 2 (stating that "Plaintiffs differ with Ubiquiti's characterizations in this second step of the analysis, but nevertheless do not challenge it").  However, as above, the Court briefly addresses step two in the interest of ensuring accuracy.

As discussed above, in *Mazza*, the Ninth Circuit took into account that (1) a jurisdiction has an interest in having its own law apply to its residents and that (2) a jurisdiction also has an interest

---

[5] *But see In re Conagra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), 2015 U.S. Dist. LEXIS 24971, at *128-32 & n.198 (C.D. Cal. Feb. 23, 2015) (stating that, for an express warranty claim, "[p]roof of reliance on specific promises or representations is not required"; acknowledging some case law to the contrary but finding such case law unpersuasive, especially because the Uniform Commercial Code commentary provides that reliance is not required).

United States District Court

For the Northern District of California

in regulating conduct that takes place within its own borders.  In the instant case, these considerations are equally applicable.

First, for the case at hand, states other than California have an interest in having their own laws apply to the extent their own residents purchased the TC product (*i.e.*, not everyone who purchased the TC product resides in California).

Second, states other than California also have an interest in having their own laws apply to the extent critical conduct took place within their borders.  For example, representations about TC's suitability for outdoor use were received within their borders by residents who purchased the TC product.  Also, the contracts to purchase the TC product were formed within their borders.  *See Ledbetter Erection Corp. v. Workers' Comp. Appeals Bd.*, 156 Cal. App. 3d 1097, 1103 (1984) (taking note of "the well-established principle of contract law that a contract is formed at the time and place the offeree accepts and communicates his or her acceptance to the offer"); Rest. 2d Contracts § 64, cmt. c (stating that "the contract is created at the place where the acceptor speaks or otherwise completes his manifestation of assent").  Although Plaintiffs fairly point out that they have sued for breach of express warranty, and not for breach of contract, that does not make the place of contracting irrelevant.  The warranty was extended only when a person or entity entered into a contract to purchase the TC product.

   c.  <u>Step 3: Weighing Interests</u>

Step three is where Plaintiffs make their challenge.  Plaintiffs do not dispute that a jurisdiction has an interest in having its own law apply to its residents, *see also Mazza*, 666 F.3d at 594 (indicating that California had a limited interest "in applying its law to residents of foreign states"), but argues that, as reflected in *Mazza*, "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'  California considers 'the place of the wrong' to be the state where the last event necessary to make the actor liable occurred."  *Id.* at 593.  According to Plaintiffs, in the case at hand, the place of wrong was California because "[b]reach of express warranty has three elements to establish liability" (at least under California law) and "the 'place' of each of these elements was in California":

**United States District Court**
For the Northern District of California

1        (1) Ubiquiti's representations and promises with respect to
2    TOUGHCable were effectuated in California [where Ubiquiti's
     principal place of business is located]; (2) the statements became part
     of the basis of the bargain in California; and (3) the "breach" was the
3    TOUGHCable itself (the defective TOUGHCable *was* the injury).

4    Reply at 2-3 (emphasis in original).

5        For purposes of this opinion, the Court assumes that Plaintiffs are correct in looking to

6    California law on breach of express warranty in assessing place of wrong.  The problem for

7    Plaintiffs is that, even with this assumption, the place of wrong is not always California but rather is

8    the jurisdiction where the purchaser resided (which could be in California or outside of California).

9        In *Mazza*, the Ninth Circuit noted that, in a fraud case, California law provides that "the

10   place of the wrong was the state where the misrepresentations were communicated to the plaintiffs,

11   *not the state where the intention to misrepresent was formed or where the misrepresented acts took*

12   *place*."  *Mazza*, 666 F.3d at 593-94 (emphasis added).  Although the Court is dealing here with a

13   warranty claim, and not a fraud claim, California law – as the Court previously held in this case –

14   has a reliance-type requirement.  *See Tasion*, 2014 U.S. Dist. LEXIS 88055, at *33 (stating that,

15   based on "basis of the bargain" language in the California Commercial Code, a plaintiff in an

16   express warranty case must at least allege that he or she read or was otherwise exposed to the

17   representation at issue, especially absent privity).  That being the case, then the warranty claim is

18   analogous to a fraud claim, and the critical wrong is where the misrepresentation was *received* by

19   the purchaser.

20       Plaintiffs focus on TC being defective at the outset.  *See, e.g.*, Reply at 3-4 (arguing that

21   "there was no action or circumstance needed on the part of the purchaser that would alter the fact

22   that the TOUGHCable was already defective and in breach of the warranty before the product was

23   even shipped") (emphasis in original).  But contrary to what Plaintiffs argue, TC being "defective"

24   at the outset is not the real problem.  There was only problematic conduct on the part of Ubiquiti

25   when it *communicated* (or had others communicate on its behalf) to purchasers that the TC product

26   was something that it was not.  As noted above, this communication *was received* by purchasers in

27   the jurisdictions *where they resided*.

28

United States District Court

For the Northern District of California

1    Finally, the Court notes that, even if an express warranty claim were evaluated more along

2  the lines of a contract claim, *cf., e.g.*, Cal. U. Com. Code § 2725 (including a breach of warranty as a

3  breach of contract for sale); *Williamson v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 U.S. Dist.

4  LEXIS 125368, at *21-22 (N.D. Cal. Sept. 4, 2012) (noting that, "[s]ince liability for breach of

5  express warranty sounds in contract, '[a] manufacturer's liability for breach of an express warranty

6  derives from, and is measured by, the terms of that warranty'"), Plaintiffs would fare no better.  As

7  indicated above, the place of contracting is where the TC purchasers ultimately bought the product

8  (which came with the express warranty); this is where the offeree accepted the offer – presumably

9  where the offeree/purchaser resided.

10    d.    <u>Summary</u>

11    For the foregoing reasons, the Court concludes that there is a true conflict as there are

12  material differences amongst the jurisdictions with respect to a claim for breach of express warranty,

13  and that the jurisdiction with the strongest interest (*i.e.*, whose interest would be most impaired if its

14  law were not applied) is variable, depending on where the purchaser of the TC product resided.

15  Under these circumstances, California law does not uniformly apply to the entire class; rather the

16  governing law for the express warranty claim will be based on where the purchaser of the TC

17  product resided.  And because the laws of multiple jurisdictions is thereby implicated, Ubiquiti

18  correctly contends that there is a predominance/manageability problem that precludes certification of

19  a Rule 23(b)(3) class.

20  C.    <u>Rule 23(c)(4) Classes and Subclasses – Fraudulent Inducement and Breach of Express</u>

21    <u>Warranty</u>

22    Plaintiffs argue that, even if the Court does not certify a nationwide Rule 23(b)(3) class for

23  the express warranty claim, it should still certify seven issues classes pursuant to Rule 23(c)(4) to

24  assist in resolution of the claim.  Plaintiffs also contend that the same issues classes would be used

25  for the fraudulent inducement claim.  Subclasses would then be created to address differences in

26  state law with respect to both the express warranty and fraudulent inducement claims.  According to

27  Plaintiffs, the issues classes and subclasses would cover 49 states.

28    Plaintiffs identify the following seven issues as issues appropriate for class treatment.

13

(1)     The falsity of the representation regarding TC's suitability for outdoor use.

(2)     The materiality of the representation regarding TC's suitability for outdoor use

(3)     Whether the representation regarding TC's suitability for outdoor use was part of the basis of the bargain for the purchase of TC.

(4)     Ubiquiti's state of mind regarding the representation regarding TC's suitability for outdoor use.

(5)     TC purchasers' reliance on the representation regarding the product's suitability for outdoor use.

(6)     Whether TC purchasers are entitled to consequential damages – more specifically, labor costs to replace the TC product.

(7)     Whether TC purchasers are entitled to punitive damages

*See* Reply at 14.

   Plaintiffs' proposal is problematic for multiple reasons.  First, even assuming Rule 23(c)(4) may, in essence, obviate a predominance problem under Rule 23(b)(3) with respect to particular issues identified for issue certification, *see Valentino*, 97 F.3d at 1234 (stating that, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the *entire action* is warranted, Rule 23[(c)(4)] authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues") (emphasis added), Plaintiffs appear to be stretching the rule beyond its intended application.  That is, Plaintiffs are basically asking the Court to have every element of a claim for fraudulent inducement and/or breach of express warranty subject to class treatment – *i.e.*, in effect, the entire action.  *Compare, e.g.*, *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 109 (2d Cir. 2007) (stating that, "[o]n remand, if the district court concludes that the action ought not to be certified in its entirety because it does not meet the predominance requirement of Rule 23(b)(3), Cordes and Creditors Trust may seek certification of a class to litigate the *first element* of their antitrust claim – the existence of a Sherman Act violation – pursuant to Rule 23(c)(4)(A) and Nassau County") (emphasis added).  Plaintiffs cite no precedent in which a court has allowed a comprehensive

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    division of multiple issues for certification under Rule 23(c)(4) where the aggregation of those

2    issues would otherwise not be certifiable under Rule 23(b)(3).

3          Second, several of the issues Plaintiffs posit for certification pose commonality problems.

4    Plaintiffs have not explained, for instance, how reliance or benefit of the bargain will not require

5    individualized inquiries as to each TC purchaser where reliance is not presumed.[6]  *See generally In*

6    *re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011) (noting that "[c]laims

7    requiring individual proof of reliance are generally not amenable to class certification because

8    common evidence could not 'suffice to make out a prima facie case for the class'"); *see also* Wright

9    *et al.*, Fed. Prac. & Proc. § 1790 (stating that "[c]ourts have applied subdivision (c)(4)(A) to allow a

10   partial class action to go forward, leaving questions of reliance, damages, and other issues to be

11   adjudicated on an individual basis"); *cf.* Fed. R. Civ. P. 23(b)(3), 1966 advisory committee notes

12   (noting that, "although having some common core, a fraud case may be unsuited for treatment as a

13   class action if there was material variation . . . in the kinds or degrees of reliance by the persons to

14   whom they were addressed").  In their reply brief, Plaintiffs suggest that, for the express warranty

15   claim at least, subclasses could be established: "Subclass 2A for states with a reliance requirement

16   and Subclass 2B for those states that *do not have* a reliance requirement."  Reply at 20 (emphasis

17   added).  But this proposal still seems problematic because at least for Subclass 2A individualized

18   inquiries would still need to be made.

19         Individualized inquiries would also appear to be needed for the damages-related issues

20   Plaintiffs seek to certify.  Plaintiffs contend that there not be individualized inquiries because (1)

21   they are limiting their damages to the labor cost to replace the TC product and (2) the labor cost can

22   be determined based on the "average amount of time to install 'X' number of feet of cable."  Mot. at

23   23; *see also* Reply at 11 (asking "what is a reasonable minimum amount of time to install 1,000 feet

24   (one box) of cable").  Putting aside, for the moment, Plaintiffs' abandonment of damages other than

25

26         [6] Plaintiffs point out that reliance can be presumed under California law.  *See, e.g., Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997) (addressing claim for fraud in the

27   inducement of an arbitration agreement; stating that "[a] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material").  But they have

28   made no demonstration in their papers that all or even most jurisdictions have such a presumption. *See, e.g.*, Mot. at 15.

United States District Court

For the Northern District of California

1   labor cost (which is problematic for the reasons discussed *infra*), it is highly questionable that, as

2   Plaintiffs maintain, "the amount of time [to install] per foot will remain relatively consistent."  Mot.

3   at 23.  As Ubiquiti argues, Plaintiffs' position that "it takes the same amount of time to install thirty

4   feet of cable on a tower in a jungle as it does to install on a suburban home" strains credulity.  Opp'n

5   at 14; *cf. Doster Lighting, Inc. v. E-Conolight LLC*, No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499,

6   at *52-53 (E.D. Wisc. June 17, 2015) (in case involving allegedly defective LED bulb arrays and

7   fixtures, noting that "[l]abor costs for each class member could differ based on labor rates in the

8   particular geographic area and where the light fixtures are located (indoors or outdoors, on a garage

9   or in a tree, etc."; therefore, "[i]ndividualized inquiries will be required to determine whether the

10  labor costs are reasonable for each plaintiff").

11         To be sure, Issue Number 1 (falsity) may be amenable to common analysis with a resolution

12  that applies to all class members.  It is one issue that may commonly be adjudicated assuming the

13  laws of the various states all apply the same legal test of falsity.  However, resolution of Issue

14  Number 1 would leave many other issues to be adjudicated, as evidenced by the six other issues

15  Plaintiffs have identified.  This is problematic because Rule 23(b)(3) requires consideration of

16  superiority and manageability.  Unlike the typical Rule 23(c)(4) case where there is certification of

17  liability, leaving only damages to be litigated on an individual bases (*see*, *e.g.*, *Nassau*, 461 F.3d at

18  226 (noting that Rule 23(c)(4) may be used "to separate the issue of liability from damages"),

19  certification here of an issue would resolve only one of many issues necessary to establish only

20  liability.  *Cf. McLaughlin*, 522 F.3d at 234 (denying request for issue certification because, "in this

21  case, given the number of questions that would remain for individual adjudication, issue certification

22  would not 'reduce the range of issues in dispute and promote judicial economy'[;] [c]ertifying, for

23  example, the issue of defendants' scheme to defraud, would not materially advance the litigation

24  because it would not dispose of larger issues such as reliance, injury, and damages").  Thus,

25  resolving the question of falsity would only slightly, not substantially or materially, advance the

26  litigation.  Weighed against the limited utility of such an adjudication is the fact that there is no

27  showing that class members do not have an incentive to prosecute their own claims or lack the

28  wherewithal to protect their individual interests, and that a class mechanism is essential to

vindicating class members' rights; as discussed below, there is a substantial amount of money potentially at stake for each class member (many thousands of dollars) who is likely a business and not a consumer or employee.  *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (noting that "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights[;] [a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor"); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 176 n.10 (3d Cir. 2015) (indicating that, "'where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits'"); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (stating that "the class action device, at its very core, is designed for cases like this where a large number of consumers have [allegedly] been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit").  Nor is this a case where vindication of important public policy interests (as embodied, for instance, in a statute) may be jeopardized in the absence of class certification.  Thus, in this case, the Court is doubtful that Plaintiffs have failed to establish the superiority and manageability requirements of Rule 23(b) to justify Rule 23(c)(4) certification.

Even assuming an issue such as falsity could be certified under Rule 23(c)(4), there is an adequacy problem.[7]  As noted above, Plaintiffs have asked for just one kind of damage – *i.e.*, direct labor costs to replace TC.  Plaintiffs have chosen to forgo all other possible elements of damages. Plaintiffs have failed to give any real explanation as to why they are willing to abandon other kinds of compensable damages, such as replacement cable and cable connectors, damaged radios, travel-related costs, downtime, lost connectivity, compensation to customers, lost profits, and lost customers, where such damages are likely to exceed by many times the direct replacement labor cost

---

[7] The Court notes that there also appears to be an adequacy problem specific to Tasion. Tasion does not reside in any of the forty-nine states at issue, but rather in Canada, and Plaintiffs have made no showing that Canadian law is comparable to any state law on breach of express warranty or fraudulent inducement.

United States District Court

For the Northern District of California

Plaintiffs now seek.  In fact, these kinds of damages were all highlighted extensively in the operative complaint.  For example:

- Plaintiffs repeatedly allege in the complaint that the problem with the TC product "often destroy[s]" the "*expensive*" radio equipment to which TC is connected. 5AC ¶¶ 7, 12, 50, 52, 57 (emphasis added).  If the radio equipment is so expensive, then that begs the question of why Plaintiffs are willing to give up their pursuit of that damages component.

- Plaintiffs repeatedly allege that it is necessary to "completely replace[]" TC with new product because "its installation poses an unreasonable and completely foreseeable risk of harm to the expensive radio transceiver equipment it is connected to."[8]  5AC ¶ 12; *see also* 5AC ¶ 57 ("Wherever it has been installed, it must be completely replaced.  Not replacing the TOUGHCable subjects delicate and expensive radio and transmission equipment to certain and inevitable failure.  Broadcasters risk complete cessation of broadcast capacity.  Each customer's location must be completely rewired – all of the defective TOUGHCable completely removed and replaced – to protect the equipment at each location where the TOUGHCable was used.").  Again, if it is necessary to *completely* replace TC with brand new cable, then that begs the question of why that damages component is not being pursued.

- Plaintiffs indicate that Ubiquiti's wireless products are particularly useful in rural and remote areas but then, where a Ubiquiti customer must investigate and resolve a problem in such an area, significant travel time is incurred. *See, e.g.*, 5AC ¶¶ 28, 83, 89.  If significant travel time is incurred, then implicitly there are significant costs, and Plaintiffs should explain why it is not necessary to include that damages component.

Even beyond Plaintiffs' complaint, there is evidence in the record that the abandoned damages could be significant.  *See, e.g.*, Himmelfarb Reply Decl., Ex. 48 (e-mail from Ubiquiti customer from approximately 2012) (stating that "our company is experiencing a significantly

---

[8] Even if a customer did not seek the cost of replacement cable and simply wanted a refund of the money it paid for TC, that would not be an insignificant amount either. *See, e.g.*, 5AC ¶¶ 75-76 (indicating that Tasion paid approximately $100 per box for approximately 25 boxes).

1   increased expense in operations costs due to this cable defect that merely providing a replacement of

2   the cable does not cure").[9]

3          Plaintiffs' conduct in this litigation is thus comparable to that of the plaintiff in *Drimmer v.*

4   *WD-40 Co.*, No. 06-CV-900 W (AJB), 2007 U.S. Dist. LEXIS 62582 (S.D. Cal. Aug. 24, 2007),

5   where the district court found an adequacy problem based on the plaintiff's abandonment of

6   damages:

7                   In an apparent attempt to limit unique questions of fact, [plaintiff]
                 seeks only the purchase price and an injunction prohibiting the
8                language on the Flush packaging.  But [plaintiff] cannot plausibly
                 claim that every class member would forfeit damages from replacing
9                the tank parts, paying higher water bills, or even hiring a plumber to
                 find the lead (as [plaintiff] did).  "A class representative is not an
10               adequate representative when the class representative abandons
                 particular remedies to the detriment of the class."  [Plaintiff] cannot
11               maintain a class action without seeking all available remedies for the
                 class members, yet he refuses to seek all available remedies even for
12               himself.  Accordingly, [plaintiff's] own conduct militates against
                 finding that he adequately represents the class.  Assuming for the sake
13               of argument that res judicata would not bar the class members from
                 obtaining further relief, the court cannot ignore the inference that
14               [plaintiff] holds different priorities and litigation incentives than a
                 typical class member.

15

16   *Id.* at *7-8.

17          Plaintiffs' argument in reply is not convincing.  Plaintiffs rely on *Murray v. GMAC*

18   *Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), to argue that it is appropriate for a class

19   representative to forego damages in order to achieve class certification.  But *Murray*, a case where

20   the plaintiff alleged a violation of the Fair Credit Reporting Act, must be taken in context.  The

21   relevant text from *Murray* is as follows:

22                         The district court's second reason – that Murray should have
                 sought compensatory damages for herself and all class members rather
23               than relying on the statutory-damages remedy – would make consumer
                 class actions impossible.  What each person's injury may be is a
24               question that must be resolved one consumer at a time.  Although
                 compensatory damages may be awarded to redress negligence, while
25               statutory damages require wilful conduct, introducing the "easier"
                 negligence theory would preclude class treatment.  Common questions
26               no longer would predominate, and an effort to determine a million
                 consumers' individual losses would make the suit unmanageable.  *Yet*

27

28   _____
        [9] Although Exhibit 48 is sealed, the Court finds that, because the customer's identity is not
     being disclosed, it is not necessary to seal the excerpt quoted above.

*individual losses, if any, are likely to be small* – a modest concern about privacy, a slight chance that information would leak out and lead to identity theft.  That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.

Rule 23(b)(3) was designed for situations such as this, *in which the potential recovery is too slight to support* individual suits, but injury is substantial in the aggregate.  Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect of financial awards.  The practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims.

Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment.  *Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification.*  When a few class members' injuries prove to be substantial, they may opt out and litigate independently.  Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.

*Id.* at 953 (emphasis added).  Plaintiffs have failed to make any showing that this case is similar to *Murray* where the abandoned damages would be small or insignificant such that it would be fair for Plaintiffs to forego them in order to prosecute a class action.  To the contrary, as noted above, Plaintiffs' own allegations in the operative complaint establish that the abandoned damages here are likely to be significant.  This case is thus entirely distinguishable from *Murray* and other consumer class action suits.  The need to forego damage claims in an effort ultimately to protect the class through certification is diminished by the fact that it appears that the typical class members here, as represented by the named Plaintiffs, are businesses, not individual consumers, who made substantial purchases from Ubiquiti – Plaintiffs conceded at the hearing that each box of TC cost $5,000 to $10,000.

To the extent Plaintiffs argue that a putative class member can simply opt out to protect its interests, that may be true, but it is then possible that a large number of putative class members would opt out, which could result in a numerosity problem.  And regardless of how many class members would or would not opt out, the opt-out option does not obviate the question as to whether Plaintiffs and their counsel are willing to drive this case towards certification to the potential and

United States District Court

For the Northern District of California

1   substantial detriment of the putative class.  This adequacy problem obtains even if some of the Rule

2   23(c)(4) issues posited by Plaintiffs are not directly affected by the waiver of damages; Plaintiffs

3   have demonstrated they are generally inadequate to represent the class because the choices they have

4   already made in this case vis-a-vis the class.  Plaintiffs' failure to address the problem of

5   abandonment of damages claims compels the Court to conclude that they are not adequate

6   representatives in this case.

7                                        **III.   <u>CONCLUSION</u>**

8           For the foregoing reasons, the Court denies Plaintiffs' motion for class certification in its

9   entirety.  The proposed Rule 23(b)(3) class for the express warranty claim cannot be certified

10  because of the predominance/manageability problem conceded by Plaintiffs were the Court to rule,

11  as it does, that various laws of multiple states, rather than the laws of California above, apply.[10]  The

12  proposed Rule 23(c)(4) issue classes and subclasses shall not be certified because there are

13  substantial problems of commonality, typicality, superiority, manageability, and adequacy of

14  representation.

15  ///

16  ///

17  ///

18  ─────────────────────

          [10] Plaintiffs do not seek to certify a class confined to any particular state such as where a
19  named Plaintiff resides.  Instead, they seek only a nationwide class, and do so predicated on the
    uniform approach of California law.  The Court does not suggest that classes and subclasses may
20  never be certified where multiple state laws are involved.  *Cf. In re Carrier IQ, Inc., Consumer
    Privacy Litig.*, No. C-12-md-2330 EMC, 2015 U.S. Dist. LEXIS 7123 (N.D. Cal. Jan. 21, 2015)
21  (claims brought under various state laws); *see also Mazza*, 666 F.3d at 594 ("express[ing] no view
    whether on remand it would be correct to certify a smaller class containing only those who
22  purchased or leased Acura RLs in California, or to certify a class with members more broadly but
    with subclasses for class members in different states, with different jury instruction for materially
23  different bodies of state law."); *Ellsworth v. U.S. Bank, N.A.*, No. 12-02506 LB, 2014 U.S. Dist.
    LEXIS 81646, at *69 (N.D. Cal. June 13, 2014) (granting class certification where the relevant
24  "laws of the various states [were] capable of being organized into groups with similar legal
    regimes"); *In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
25  No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *257 (C.D. Cal. July 24, 2013)
    (noting that, in the absence of a settlement class, defendant would likely oppose any motion for class
26  certification and, "as noted by the Court in a previous Order, the laws of different states would likely
    apply, necessitating multiple classes or subclasses of Plaintiffs"); *Forcellati v. Hyland's, Inc.*, 876 F.
27  Supp. 2d 1155, 1159 (C.D. Cal. 2012) (stating that, "should choice-of-law analysis appear to pose
    problems at the class certification stage, Plaintiff could seek to certify subclasses of putative class
28  members from individual states or subclasses of class members from groups of states with consumer
    protection laws that are not materially different").

1    Accordingly, the case shall proceed as an individual, and not a class, action.  Plaintiffs'

2    motion for class certification is **DENIED**.

3    A case management conference is set for August 20, 2015 at 10:30 a.m.  A joint case

4    management conference statement shall be filed by August 13, 2015.

5    This order disposes of Docket No. 142.

6

7    IT IS SO ORDERED.

8

9    Dated:  August 10, 2015

10

11                                                                              _____
                                                                              EDWARD M. CHEN

12                                                                              United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California